UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, et al., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil No. 1:07-cv-00102-RBW CLASS ACTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) | |
| Defendants. | ) ) | |
| FIRST NEW YORK SECURITIES, L.L.C., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | Civil No. 1:07-cv-00294-RBW CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 –
RETAIL FOOD EMPLOYERS JOINT PENSION FUND AND UNITED FOOD
AND COMMERCIAL WORKERS UNION-EMPLOYER PENSION FUND'S MOTION
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF
AND APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

TO:  ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that United Food and Commercial Workers Union Local 880 –

Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-

Employer Pension Fund will and hereby do move this Court on a date and at such time as may be

designated by the Court, at Courtroom 5 of the E. Barrett Prettyman United States Courthouse, 333

Constitution Ave., N.W. Washington, D.C. 2001, for an order: (1) appointing United Food and

Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United

Food and Commercial Workers Union-Employer Pension Fund as lead plaintiff pursuant to

§21D(a)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities

Litigation Reform Act of 1995; (2) approving their selection of Lerach Coughlin Stoia Geller

Rudman & Robbins LLP as lead counsel and Cuneo Gilbert & LaDuca, LLP as liaison counsel; and

(3) consolidating the above-captioned actions.  In support of this Motion, United Food and

Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United

Food And Commercial Workers Union-Employer Pension Fund submit the accompanying

memorandum of law and the Affidavit of Jonathan W. Cuneo.

DATED:  March  16, 2007                CUNEO GILBERT & LaDUCA, LLP
                                       JONATHAN W. CUNEO (DC Bar # 939389)
                                       PAMELA GILBERT (DC Bar # 418207)


                                              s/ Jonathan W. Cuneo
                                       _____
                                          JONATHAN W. CUNEO

                                       507 C Street, N.E.
                                       Washington, DC  20002
                                       Telephone:  202/789-3960
                                       202/789-0489 (fax)

                                       [Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sunrise Senior\NOT00040143-LP.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 19, 2007.

s/ Jonathan W. Cuneo
JONATHAN W. CUNEO

CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-0489 (fax)
E-mail:jonc@cuneolaw.com

# Mailing Information for a Case 1:07-cv-00102-RBW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **George Henry Mernick , III**
  ghmernick@hhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, et al., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil No. 1:07-cv-00102-RBW <br><br> CLASS ACTION |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| FIRST NEW YORK SECURITIES, L.L.C., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | Civil No. 1:07-cv-00294-RBW <br><br> CLASS ACTION |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

MEMORANDUM OF LAW IN SUPPORT OF UNITED FOOD AND COMMERCIAL
WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION
FUND AND UNITED FOOD AND COMMERCIAL WORKERS UNION-EMPLOYER
PENSION FUND'S MOTION FOR CONSOLIDATION OF RELATED ACTIONS,
APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF
SELECTION OF LEAD AND LIAISON COUNSEL

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  FACTUAL BACKGROUND ...............................................................................2

III.  ARGUMENT .......................................................................................................9

    A.  The UFCW 880 Funds Should Be Appointed Lead Plaintiff .................................9

        1.  The UFCW 880 Funds Have the Largest Financial Interest in the Relief Sought by the Class.........................................................................10

        2.  The UFCW 880 Funds Otherwise Satisfy Rule 23 of the Federal Rules of Civil Procedure...........................................................................11

    B.  The Court Should Approve the UFCW 880 Funds' Selection of Lead and Liaison Counsel ...................................................................................................12

    C.  This Court Should Consolidate Related Actions ...................................................13

IV.  CONCLUSION...................................................................................................14

# TABLE OF AUTHORITIES

Page

*Babcock v. Computer Assocs. Int'l,*
212 F.R.D. 126 (E.D.N.Y. 2003) ......................................................................................12

*In re Crayfish Co. Sec. Litig.,*
No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134
(S.D.N.Y. June 6, 2002) ....................................................................................................11

*In re XM Satellite Radio Holdings Sec. Litig.,*
237 F.R.D. 13 (D.D.C. 2006) ..................................................................................1, 10, 13

*Johnson v. Celotex Corp.,*
899 F.2d 1281 (2d Cir. 1990) ............................................................................................13

*Rossini v. Ogilvy & Mather, Inc.,*
798 F.2d 590 (2d Cir. 1986) ..............................................................................................11

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(1) ..........................................................................................................9
§78u-4(a)(3)(A) ..................................................................................................10
§78u-4(a)(3)(A)(i)(II) ...........................................................................................9
§78u-4(a)(3)(B) ...............................................................................................1, 10
§78u-4 (a)(3)(B)(i) ...........................................................................................9, 10
§78u-4(a)(3)(B)(ii) ..............................................................................................13
§78u-4(a)(3)(B)(iii)(I) .........................................................................................10
§78u-4(a)(3)(B)(iii)(I)(cc) ...................................................................................11
§78u-4(a)(3)(B)(iii)(II)(aa) ..................................................................................12
§78u-4(a)(3)(B)(v) ..............................................................................................12

Federal Rule of Civil Procedure 42(a) ......................................................................1, 12
Rule 23 ...............................................................................................................1, 10
Rule 23(a) ..............................................................................................................11
Rule 23(a)(3) ..........................................................................................................11
Rule 23(a)(4) ..........................................................................................................12
Rule 42(a) ..............................................................................................................13

## I.    INTRODUCTION

United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund (the "UFCW 880 Funds"), in connection with their transactions in the publicly-traded securities of Sunrise Senior Living, Inc. ("Sunrise" or the "Company") between August 4, 2005 through and including June 15, 2006 (the "Class Period"), submit this memorandum of law in support of their motion pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §78u-4(a)(3)(B), for entry of an order: (1) appointing the UFCW 880 Funds as lead plaintiff for the class pursuant to §21D(a)(3)(B) of the Exchange Act (15 U.S.C. §78u-4(a)(3)(B)); (2) approving Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") as lead counsel and Cuneo Gilbert & LaDuca, LLP ("Cuneo Gilbert") as liaison counsel; and (3) consolidating the related actions.

The UFCW 880 Funds are the "most adequate plaintiff," as defined by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), because they have the greatest financial interest of any moving class member or plaintiff who has brought suit or filed an application to serve as lead plaintiff in these related actions.[1]  In addition, the UFCW 880 Funds satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure because their claims are typical and because they will fairly and adequately represent the interests of the class.  *See generally In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13 (D.D.C. 2006) (Huvelle, J.).[2]

---

[1]    *See* Affidavit of Jonathan A. Cuneo in Support of United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Selection of Lead and Liaison Counsel ("Cuneo Aff."), Exs. A and B.

[2]    The Court must consolidate the related actions pursuant to Federal Rule of Civil Procedure 42(a) before appointing a lead plaintiff.  *See* §III.C, *infra*.

## II.    FACTUAL BACKGROUND

This securities class action is brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of Sunrise during the Class Period, including those who owned Sunrise common stock from 2000 through 2006 at the time Sunrise's 2000-2006 Proxy Statements were circulated to shareholders to solicit their votes on various matters. The defendants are Sunrise, certain of its officers and all of its directors.

Sunrise provides residential and other services to retirees and elderly persons through facilities it develops and constructs and then manages, often through joint ventures. Sunrise makes profits from these activities and also by selling real estate, often to its joint ventures. For the last several years, Sunrise has been pursuing a vigorous expansion program. However, because Sunrise's access to the capital necessary to fund this expansion program was limited, it has been forced to pursue various strategies, including utilizing joint venture arrangements (normally 20% owned by Sunrise and 80% owned by other investors), to raise the capital needed to fund its expansion program.

For Sunrise's expansion program to succeed and for its top executives and other insiders to obtain the types of personal economic gains they wanted to obtain from the enterprise, it was critical that Sunrise appear to be achieving strong profits even during this expansionary – and capital intensive – phase of its business. However, Sunrise learned early on that because its business model was not yet proven and its facilities normally suffered losses during their start-up phase and period of early operations, frequently it could not attract joint venture partners to participate in ventures to construct new residential facilities unless it gave to those partners preferential returns from the joint venture. These entities, the joint venture partner(s), were to receive guarantees of preferential distributions from the operations of the joint ventures or upon the sale of the facility. Sunrise also

discovered early on that to sell certain of its real estate or facilities it was necessary to provide financial guarantees to the entity financing the sale.

This created a problem for Sunrise. It could not obtain the capital it needed through the joint venture arrangements or sell real estate assets or completed facilities without providing these preferential distribution and guarantee arrangements. However, under applicable accounting rules, if Sunrise structured its joint ventures with preferential guarantees and distributions to its partners, Sunrise, as the managing entity in the joint venture, was required to ***absorb 100% of the early period or start-up losses of the new facilities***, rather than just its 20% share, and was allowed to recoup those early period losses only later on when the joint venture's facility was operating successfully and profitably and/or was sold. And Sunrise could not record profits on sales of facilities if it provided financial guarantees in connection with the sale. Accounting for its joint venture operations or real estate sales in this manner – which was required by Generally Accepting Accounting Principles ("GAAP") and principles of fair presentation – would heavily penalize Sunrise's reported financial results, depriving it of real estate sales profits, while requiring it to recognize millions and millions of dollars of current period losses from the joint venture operations. This would prevent it from showing the kind of strong profitable growth which was indispensable for the success of its business plan and necessary to allow its insiders to personally profit from large annual bonuses and to push its stock price to the high levels they desired so they could sell off their Sunrise stock at inflated – and very profitable – prices.

Thus, to achieve the ends they desired, Sunrise and the other defendants cheated, pursuing a scheme to defraud and a course of business that operated as a fraud or deceit on purchasers of Sunrise's publicly traded securities. Instead of following the required accounting rules and principles, Sunrise's top managers and directors, including the members of its Audit Committee, falsified Sunrise's reported profits from at least 1999-2005, falsely reporting over $100 million in

profits and concealing significant joint venture losses, which falsification enabled Sunrise insiders to pocket large and unjustified cash bonuses and to personally profit by insider trading to take advantage of the artificially inflated price of Sunrise's common stock.

Beginning on May 9, 2006, a series of revelations caused the scheme to unravel and the truth about Sunrise's prior false representations and its accounting irregularities to enter the market. Sunrise first disclosed a "delay" in reporting its first quarter 2006 results to allow a "review" of its financial statements, making it appear that Sunrise was "changing" accounting methods to adopt a more preferable method, which might or might not impact its prior financial reports. However, under pressure from the Securities and Exchange Commission ("SEC") – which questioned Sunrise's accounting and the accuracy of these statements – on July 31, 2006, Sunrise revealed it would be forced to *restate*[3] its financial statements going back several years – at least to 1999 – because its prior accounting was false and its prior financial statements could no longer be relied upon, and it would discontinue doing business with joint ventures with preferential returns and engaging in real estate sales with guarantees. Sunrise also admitted it could not file current period financial statements for the first, second and third quarters of 2006, and that when it restated its financial results, at least $100 million of previously reported profits from its joint ventures and real estate sales would be eliminated – and that, contrary to prior representations, Sunrise had serious weaknesses in its internal controls. As these revelations unfolded, Sunrise's stock fell from $39.62 on May 8, 2006 to as low as $24.40 on July 31, 2006.

Sunrise's fraudulent accounting manipulations and contrivances had an enormous impact on Sunrise's publicly issued financial statements. For instance, in a joint venture in which Sunrise had a 20% interest and its partner an 80% interest, where the venture suffered $1 million in losses during

---

[3]     Under GAAP, a restatement of prior period financial statements is an admission of the falsity of those financial statements when issued.

its start-up and early operations phase, GAAP required Sunrise to recognize and report 100% of these losses, or $1 million. However, by falsifying its accounting and acting as if the joint venture did not have a distribution preference, Sunrise recognized and reported losses of only $200,000. This tricky falsification over 1999-2005, when combined with Sunrise's phony real estate accounting to improperly recognize profits on sales where Sunrise provided guarantees, overstated Sunrise's reported profits by at least $100 million.

This case also concerns defendants' manipulation of Sunrise's stock option program, including grants to enrich themselves in a secret and inherently deceptive manner, which manipulation also caused the Company's financial statements to be false and misleading. A stock option allows the corporate officer to purchase the specified number of shares of company stock at a specified price – referred to as the "exercise price" or "strike price" – for a specified period of time. Stock options are granted by public companies as compensation for executives – supposedly to create incentives for them to boost long-term corporate performance and profitability by good, honest management efforts. When the executive exercises the option, he or she purchases the stock from the company at the exercise price, regardless of the stock's market price at the time the option is exercised. The exercise price of stock options is the market price on the date of grant – *so if the stock goes up over time, the executive makes a profit*.

If the system is abused by "backdating," which refers to picking an option-grant date earlier than the actual date the option was granted – a date when the stock price was lower than the actual grant date – or by "spring-loading," *i.e.*, granting the stock option just before the company is going to issue positive news which will push the stock price up, the executive gets an instant, guaranteed and riskless profit. The company is also hurt, as the "spread" between the true grant exercise price and the market price is required by law to be treated as compensation expense, which reduces profits. In addition, the backdating causes the corporate stock option plan to lose its tax protection

and results in the corporation's internal non-public information being misappropriated by the executives for their personal profit. Shareholders and share purchasers are also hurt, as reported corporate profits are improperly inflated, as is the trading price of the stock (at least until the truth comes out), their ownership interest in the corporation is unfairly diluted and, since they voted to approve the stock option plan and elect the directors who proposed the plan and oversee its implementation and administration, their corporate suffrage rights are violated.

In violation of the Company's own stated policies and applicable laws, defendants engaged in or permitted "backdating" and "spring-loading" in the issuance of executive stock options for many years. All the Company's stock option plans required stock options to have an exercise price equal to the fair market value of stock on the date of the grant, and defendants regularly represented that stock options covered by the stock option plans were not granted at less than 100% of fair market value on the date of grant, but this was not true. ***Often the grants were made and were backdated to when Sunrise stock was lower in price or were granted just prior to the release of positive corporate news and a likely increase in the market price of the Company's stock, thus positioning the executives to achieve an instant, riskless profit***.

During the Class Period, defendants issued materially false and misleading statements regarding the Company's business, its stock option plans, its compensation practices and its financial results, while employing contrivances and manipulative acts in connection with Sunrise's stock option programs and financial statements. As a result of defendants' false statements, contrivances and manipulative acts, Sunrise's common stock traded at artificially inflated prices during the Class Period, reaching a high of $39.68 per share on March 29, 2006, as Sunrise reported outstanding financial results. In addition, Sunrise's stock option plans were approved and its directors were elected and re-elected by shareholder votes made pursuant to false and misleading proxy statements, thus perpetuating the directors' and their allies' hold on their positions of power, prestige and profit

at Sunrise.  The individual defendants took advantage of these falsified financial results, the artificial inflation of Sunrise's stock and the manipulation of its stock option plans by selling shares of their Sunrise stock for illegal insider trading proceeds of over $34 million – ill-gotten gains that were enhanced due to the improper "backdating" and "spring-loading" of their options to purchase Sunrise stock – while Sunrise's top officers pocketed millions more in unjustified bonus payments enhanced in part by Sunrise's falsified profits.

Sunrise's top insiders personally profited from their illegal behavior in several ways.  First of all, top executives received large cash bonuses which were based in significant part on Sunrise's purported profitably which was falsified.  In addition, in order to maximize their personal profit from their illegal conduct, these top insiders secured the approval of Sunrise's shareholders of executive compensation programs, which not only authorized or ratified these types of performance bonuses, but also of a stock option plan which supposedly was to be administered by a committee of independent directors (the Compensation/Stock Option Committee) who would honestly run the stock option program, granting options that were exercisable only at the closing price of Sunrise stock on the date that the option was actually granted.

However, these stockholder approvals were obtained in violation of the Exchange Act's proxy provisions and rules – including by way of false and misleading proxy statements that did not disclose the ongoing accounting fraud, which was inflating Sunrise's reported profits, and the bonuses being granted the executives, or that the top insiders at Sunrise were manipulating Sunrise's stock option plans to backdate stock options or grant "spring-loaded" stock options to themselves and their allies so as to give the options exercise prices significantly lower than the actual closing prices of the stock options on the dates they were actually granted or to grant options at low prices before the release of corporate news, which was likely to boost the stock price, a deception which not only assured the insiders of profits, but maximized their ill-gotten gains from the scheme.

During late 2005, as Sunrise insiders learned that it would be impossible to continue the accounting fraud much longer,[4] and in early 2006,[5] as widespread revelations of a stock option backdating scandal began to sweep corporate America, the top insiders at Sunrise took advantage of the artificial inflation in Sunrise's shares to bail out of the stock, unloading almost a million shares of the stock at artificially inflated prices, obtaining almost $35 million of insider trading proceeds for themselves – a deceit some of them furthered by implementing so-called 10b5-1 executive stock sale plans, putting those stock plans in place, knowing that they were already pursuing a scheme to defraud and falsifying Sunrise's reported financial results, and establishing plan terms that did not comply with regulatory requirements, but hoping that implementing their sales through the 10b5-1 plans would give them protection from the legal liability they knew they would otherwise face for such insider trading.

The Company's failure to disclose the setting of the exercise prices to achieve maximum benefit for Sunrise's directors and executives caused the 2000-2006 Proxy Statements and 2005 Form 10-K and 2005 Form 10-Qs issued by the Company to be materially misleading in violation of the proxy rules and the Exchange Act.  As a result of defendants' false statements, Sunrise's stock traded at artificially inflated levels during the Class Period, massive stock option plans for executives were approved and all of the current Sunrise directors were elected or re-elected, perpetuating their control of Sunrise.  The improper falsification of Sunrise's financial statements, the "backdating"

---

[4]     Sunrise's CFO has admitted that Sunrise began to consider the problem with Sunrise's accounting for its joint ventures and had considered changing its accounting "late in 2005."

[5]     In early 2006, a number of incidents involving stock option "backdating" and "spring-loading" by public companies surfaced, including SEC investigations, executive resignations and financial restatements.  On March 18, 2006, *The Wall Street Journal* published an article raising questions about whether several public companies had been manipulating stock option grants to enrich executives by backdating these grants to lower prices or granting options to executives ahead of the release of positive corporate news.

and "spring-loading" of Sunrise's top insiders' stock options and the artificial inflation of Sunrise's stock allowed Sunrise's top insiders to reap millions of dollars via illegal insider trading of their Sunrise stock, while the falsification of the Company's financial statements contributed to huge bonuses for them based in part on Sunrise's inflated profits. However, the public purchasers and owners of Sunrise's stock were damaged.

The ownership of Sunrise by public stockholders was improperly diluted as Sunrise executives and directors got millions of stock options they were not entitled to or got more shares at lower option prices than they were entitled to, and class members were damaged as they purchased Sunrise stock at artificially inflated prices and then the Company's stock declined in price as the truth entered the market.

## III.    ARGUMENT

### A.    The UFCW 880 Funds Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, in connection with the filing of the first-filed action, notice was published on *BusinessWire* on January 16, 2007. *See* Cuneo Aff., Ex. C. Within 60 days of publishing the notice, any person who is a member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §78u-4(a)(3)(A)(i)(II), (B)(i).

Second, the PSLRA provides that within 90 days after publication of the notice the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class

- 9 -

members.  15 U.S.C. §78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
>> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>>
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

The time period in which class members may move to be appointed lead plaintiff in this case, under 15 U.S.C. §78u-4(a)(3)(A)-(B), expires March 19, 2007.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, the UFCW 880 Funds have timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.  In addition, the UFCW 880 Funds have selected and retained counsel experienced in the prosecution of securities class actions to represent it and the class.  *See* Cuneo Aff., Ex. D.

Accordingly, the UFCW 880 Funds satisfies the individual requirements of 15 U.S.C. §78u-4(a)(3)(B), and is entitled to have its application for appointment as lead plaintiff, and its selection of counsel approved by the Court.  *See XM Satellite*, 237 F.R.D. at 23.

### 1.    The UFCW 880 Funds Have the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the UFCW 880 Funds purchased 16,100 shares of Sunrise stock and lost approximately $77,000 in connection therewith.  *See id*. at 14; Cuneo Aff., Ex. B.  To the best of the UFCW 880 Funds' knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest.  *See* 15 U.S.C. §78u-4(a)(3)(B).

### 2. The UFCW 880 Funds Otherwise Satisfy Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  Of Rule 23(a)'s four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative.  Consequently, in deciding motions for appointment of lead plaintiff, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members.  *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).  Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical.  The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical.  *See In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766 (DAB), 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. June 6, 2002).

The UFCW 880 Funds satisfy this requirement because, just like all other class members, they: (1) purchased Sunrise securities during the Class Period; (2) purchased Sunrise securities in reliance upon the alleged materially false and misleading statements issued by defendants; and (3) suffered damages thereby.  Thus, the UFCW 880 Funds' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Federal Rule of Civil Procedure 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." Rule 23(a)(4) is met where: "(1) class counsel is 'qualified, experienced, and generally able to conduct the litigation;' and (2) class members do not have interests that are antagonistic to one another." *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (citation omitted).

Here, the UFCW 880 Funds are adequate to represent the class because their interests are aligned with the interests of the class because both suffered from artificial inflation of the price of Sunrise securities and would benefit from the same relief. Furthermore, there is no evidence of antagonism between the UFCW 880 Funds and the class. The UFCW 880 Funds has also certified their willingness to serve as representatives of the class. Cuneo Aff., Ex. A. In addition, as shown below, the UFCW 880 Funds' proposed lead counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, the UFCW 880 Funds satisfy the *prima facie* showing of the typicality and adequacy requirements of Federal Rule of Civil Procedure 23 for the purposes of this Motion.

**B.     The Court Should Approve the UFCW 880 Funds' Selection of Lead and Liaison Counsel**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Because the UFCW 880 Funds have selected and retained counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class, their choice of lead counsel should be approved.

The UFCW 880 Funds have selected the law firm of Lerach Coughlin to serve as lead counsel and Cuneo Gilbert as liaison counsel. The UFCW 880 Funds and their selected counsel bring to this action a securities litigation team consisting of attorneys, investigators and forensic

accountants who have repeatedly demonstrated their willingness to undertake the painstaking process of unraveling accounting irregularities and improper transactions, all of whom are able to devote substantial resources to the prosecution of this action. *See* Cuneo Aff., Ex. D. Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Lerach Coughlin and Cuneo Gilbert. *XM Satellite*, 237 F.R.D. at 23 (approving Lerach Coughlin as lead counsel).

### C.    This Court Should Consolidate Related Actions

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this title . . . . [is] filed," the court shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). To date, the UFCW 880 Funds is aware of two related actions in this District against defendants:

| CASE NAME | CASE NO. | DATE FILED |
|---|---|---|
| *United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund, et al. v. Sunrise Senior Living Inc.* | 1:07-cv-00102-RBW | January 16, 2007 |
| *First New York Securities, L.L.C. v. Sunrise Senior Living, Inc., et al.* | 1:07-cv-00294-RBW | February 8, 2007 |

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. Consolidation is particularly appropriate in securities class action litigations such as this. *See id*. The above referenced actions relate to the same series of false and misleading statements and arise under the Exchange Act. Therefore, consolidation is appropriate. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

**IV.     CONCLUSION**

For all the foregoing reasons, the UFCW 880 Funds respectfully requests that the Court:

(1) appoint the UFCW 880 Funds as lead plaintiff; (2) approve their selection of Lerach Coughlin

and Cuneo Gilbert to serve as lead and liaison counsel; and (3) consolidate the related actions.

DATED:  March 19, 2007                    Respectfully submitted,

                                          CUNEO GILBERT & LaDUCA, LLP
                                          JONATHAN W. CUNEO (DC Bar # 939389)
                                          PAMELA GILBERT (DC Bar # 418207)


                                          _____
                                                   s/ Jonathan W. Cuneo
                                                 JONATHAN W. CUNEO

                                          507 C Street, N.E.
                                          Washington, DC  20002
                                          Telephone:  202/789-3960
                                          202/789-0489 (fax)

                                          [Proposed] Liaison Counsel

                                          LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                          WILLIAM S. LERACH
                                          DARREN J. ROBBINS
                                          RAMZI ABADOU
                                          655 West Broadway, Suite 1900
                                          San Diego, CA  92101
                                          Telephone:  619/231-1058
                                          619/231-7423 (fax)

                                          [Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sunrise Senior\BRF00040145-LP.doc

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 19, 2007.

s/ Jonathan W. Cuneo
JONATHAN W. CUNEO

CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-0489 (fax)
E-mail:jonc@cuneolaw.com

# Mailing Information for a Case 1:07-cv-00102-RBW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **George Henry Mernick , III**
  ghmernick@hhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- `(No manual recipients)`

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, et al., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>SUNRISE SENIOR LIVING, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:07-cv-00102-RBW<br><br>CLASS ACTION |
| FIRST NEW YORK SECURITIES, L.L.C., Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUNRISE SENIOR LIVING, INC., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 1:07-cv-00294-RBW<br><br>CLASS ACTION |

STATEMENT PURSUANT TO LCvR7.1(m)

Civil Local Rule 7.1(m) requires motions to be accompanied by a statement indicating that the attorney for the moving party has conferred with the attorneys for opposing counsel to determine whether the motion is opposed.  Counsel for United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund (the "UFCW 880 Funds") respectfully submits that the conferral requirement of Local Rule 7.1(m) is inapplicable here because motions for selection of lead plaintiff and approval of lead and liaison counsel are mandated by statute.  *See* 15 U.S.C. §§78u-4, *et seq.*

Section 21D of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), sets forth the procedure that must be followed for the selection of lead plaintiff and approval of lead counsel.  *See* 15 U.S.C. §§78u-4, *et seq.*  Until after all such other lead plaintiff applicants have filed their motions pursuant to the PSLRA, counsel will remain unaware of the other entities or persons moving for appointment as Lead Plaintiff.  Under these circumstances, counsel respectfully requests that the conferral requirement of Local Rule 7.1(m) be waived.

DATED:  March 19, 2007            CUNEO GILBERT & LaDUCA, LLP
                                  JONATHAN W. CUNEO (DC Bar # 939389)
                                  PAMELA GILBERT (DC Bar # 418207)


                                  _____
                                          s/ Jonathan W. Cuneo
                                      JONATHAN W. CUNEO

                                  507 C Street, N.E.
                                  Washington, DC  20002
                                  Telephone:  202/789-3960
                                  202/789-0489 (fax)

                                  [Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
RAMZI ABADOU
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Sunrise Senior\STM00040155-LP.doc

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 19, 2007.

               s/ Jonathan W. Cuneo
               JONATHAN W. CUNEO

               CUNEO GILBERT & LaDUCA, LLP
               507 C Street, N.E.
               Washington, DC  20002
               Telephone:  202/789-3960
               202/789-0489 (fax)
               E-mail:jonc@cuneolaw.com

# Mailing Information for a Case 1:07-cv-00102-RBW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **George Henry Mernick , III**
  ghmernick@hhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, et al., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) ) | Civil No. 1:07-cv-00102-RBW<br><br>CLASS ACTION |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |
| FIRST NEW YORK SECURITIES, L.L.C., Individually and On Behalf of All Others Similarly Situated, | ) ) ) ) | Civil No. 1:07-cv-00294-RBW<br><br>CLASS ACTION |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., | ) ) ) | |
| Defendants. | ) ) ) ) | |

AFFIDAVIT OF JONATHAN W. CUNEO IN SUPPORT OF UNITED FOOD AND
COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS
JOINT PENSION FUND AND UNITED FOOD AND COMMERCIAL WORKERS
UNION-EMPLOYER PENSION FUND'S MOTION FOR CONSOLIDATION
OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

I, JONATHAN W. CUNEO, swear as follows:

1.      I am an attorney duly licensed to practice before the courts of the District of Columbia.  I am a member of the law firm of Cuneo Gilbert & LaDuca, LLP, counsel for United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund and proposed liaison counsel for the class.

2.      I make this declaration in support of United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Their Selection of Lead and Liaison Counsel.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

3.      Attached are true and correct copies of the following exhibits:

Exhibit A:      Sworn Certifications;

Exhibit B:      Chart of Purchases and Losses;

Exhibit C:      Notice of class action filed against Sunrise Senior Living, Inc. published on January 16, 2007, on *BusinessWire*; and

Exhibit D:      Lerach Coughlin Stoia Geller Rudman & Robbins LLP firm résumé.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 19th day of March, 2007, at Washington, D.C.

                                                            s/ Jonathan W. Cuneo
                                   _____
                                                            JONATHAN W. CUNEO

S:\CasesSD\Sunrise Senior\AFF00040146-LP.doc

- 1 -

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 19, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on March 19, 2007.

s/ Jonathan W. Cuneo
JONATHAN W. CUNEO

CUNEO GILBERT & LaDUCA, LLP
507 C Street, N.E.
Washington, DC  20002
Telephone:  202/789-3960
202/789-0489 (fax)
E-mail:jonc@cuneolaw.com

# Mailing Information for a Case 1:07-cv-00102-RBW

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jonathan Watson Cuneo**
  jonc@cuneolaw.com

- **George Henry Mernick , III**
  ghmernick@hhlaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

# EXHIBIT A

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

UNITED FOOD AND COMMERCIAL WORKERS UNION–EMPLOYER PENSION FUND ("Plaintiff") declares:

    1.    Plaintiff has reviewed a complaint and authorized its filing.

    2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

    3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

    4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|---|---|---|---|

*See* attached Schedule A.

    5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*Charatz v. Avaya, Inc., et al.*, No. 3:05-cv-02319-MLC-TJB (D.N.J.)

    6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 12TH day of December, 2006.

By: _Robert W. Strausey_

Its:  Trustee, United Food and Commercial Workers Union-Employer Pension Fund

- 2 -

SUNRISE SENIOR LIVING

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 09/16/2005 | 200 | $31.51 |
| 09/19/2005 | 600 | $31.67 |
| 09/20/2005 | 600 | $31.47 |
| 09/22/2005 | 400 | $31.49 |
| 09/26/2005 | 200 | $32.00 |
| 09/27/2005 | 600 | $32.01 |
| 09/28/2005 | 200 | $32.00 |
| 10/03/2005 | 400 | $33.82 |
| 10/06/2005 | 1,400 | $31.96 |
| 12/08/2005 | 800 | $35.10 |

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 –
RETAIL FOOD EMPLOYERS JOINT PENSION FUND ("Plaintiff") declares:

1.    Plaintiff has reviewed a complaint and authorized its filing.

2.    Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3.    Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action:

| Security | Transaction | Date | Price Per Share |
|----------|-------------|------|-----------------|

*See* attached Schedule A.

5.    Plaintiff has not sought to serve or served as a representative party for a class in an action filed under the federal securities laws except as detailed below during the three years prior to the date of this Certification:

*UFCW Local 880 – Retail Food v. Newmont Mining Corp., et al.*, No. 05-CV-1046-MSK-BNB
(D. Colo.)
*Charatz v. Avaya, Inc., et al.*, No. 3:05-cv-02319-MLC-TJB (D.N.J.)
*In re Cooper Companies, Inc. Sec. Litig.*, No. SACV-06-00169-CJC(RNBx) (C.D. Cal.)

6.    The Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery,

except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this _12ᵗʰ_ day of _December_, 2006.

By: _Robert W. Shannogh_

Its:    Trustee, United Food and Commercial
        Workers Union Local 880 - Retail
        Food Employers Joint Pension Fund

- 2 -

SCHEDULE A

SECURITIES TRANSACTIONS

Acquisitions

| Date Acquired | Type/Amount of Securities Acquired | Price |
|---|---|---|
| 09/16/2005 | 400 | $31.48 |
| 09/19/2005 | 1,000 | $31.64 |
| 09/20/2005 | 800 | $31.45 |
| 09/22/2005 | 800 | $31.46 |
| 09/26/2005 | 400 | $31.98 |
| 09/27/2005 | 800 | $31.99 |
| 09/28/2005 | 400 | $31.97 |
| 10/03/2005 | 400 | $33.79 |
| 10/06/2005 | 1,900 | $31.91 |
| 11/03/2005 | 2,700 | $34.67 |
| 12/08/2005 | 1,100 | $35.05 |

*Opening position of 13,600 shares.

# EXHIBIT B

Movants' Purchases and Losses

Sunrise Senior Living

| Name | Date | Shares Purchased | Share Price | Total Cost | Date | Shares Sold | Share Price | Total Proceeds | Total Gain (Loss)* |
|---|---|---|---|---|---|---|---|---|---|
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/16/2005 | 400 | $31.48 | $12,593.80 | held | 10,700 | $27.92 | $298,792.32 | ($53,244.68) |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/19/2005 | 1,000 | $31.64 | $31,641.00 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/20/2005 | 800 | $31.45 | $25,158.00 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/22/2005 | 800 | $31.46 | $25,168.40 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/26/2005 | 400 | $31.98 | $12,790.00 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/27/2005 | 800 | $31.99 | $25,589.20 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 09/28/2005 | 400 | $31.97 | $12,789.00 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 10/03/2005 | 400 | $33.79 | $13,517.80 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 10/06/2005 | 1,900 | $31.91 | $60,632.80 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 11/03/2005 | 2,700 | $34.67 | $93,600.90 | | | | | |
| United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund | 12/08/2005 | 1,100 | $35.05 | $38,556.10 | | | | | |
| **United Food and Commercial Workers Union Local 880 - Retail Food Employers Joint Pension Fund** | | **10,700** | | **$352,037.00** | **held** | **10,700** | | **$298,792.32** | **($53,244.68)** |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/16/2005 | 200 | $31.51 | $6,301.00 | held | 5,400 | $27.92 | $150,792.39 | ($24,343.61) |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/19/2005 | 600 | $31.67 | $18,999.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/20/2005 | 600 | $31.47 | $18,883.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/22/2005 | 400 | $31.49 | $12,594.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/26/2005 | 200 | $32.00 | $6,399.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/27/2005 | 600 | $32.01 | $19,206.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 09/28/2005 | 200 | $32.00 | $6,399.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 10/03/2005 | 400 | $33.82 | $13,527.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 10/06/2005 | 1,400 | $31.96 | $44,747.00 | | | | | |
| United Food and Commercial Workers Union - Employer Pension Fund | 12/08/2005 | 800 | $35.10 | $28,081.00 | | | | | |
| **United Food and Commercial Workers Union - Employer Pension Fund** | | **5,400** | | **$175,136.00** | | **5,400** | | **$150,792.39** | **($24,343.61)** |
| **Movants' Total:** | | **16,100** | | **$527,173.00** | | **16,100** | | **$449,584.71** | **($77,588.29)** |

*For shares held at the end of the class period, damages are calculated by multiplying the shares held by the average share price during the 90 calendar days after the end of the class period. The price used is $27.92 as of September 13, 2006.

EXHIBIT C

22 of 33 DOCUMENTS


Copyright 2007 Business Wire, Inc.
Business Wire

January 16, 2007 Tuesday 9:39 PM GMT

**DISTRIBUTION:** Business Editors; Financial Analysts

**LENGTH:** 742 words

**HEADLINE:** Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action Suit Against Sunrise Senior Living, Inc.

**DATELINE:** SAN DIEGO

**BODY:**

   Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") (http://www.lerachlaw.com/cases/sunrisesenior/) today announced that a class action has been commenced on behalf of two institutional investors in the United States District Court for the District of Columbia on behalf of purchasers of Sunrise Senior Living, Inc. ("Sunrise") (NYSE:SRZ) publicly traded securities during the period between August 4, 2005 and June 15, 2006 (the "Class Period"), including those who owned Sunrise common stock from 2000 through 2006 at the time Sunrise's 2000-2006 Proxy Statements were circulated to shareholders to solicit their votes on various matters.

   If you wish to serve as lead plaintiff, you must move the Court no later than 60 days from today. If you wish to discuss this action or have any questions concerning this notice or your rights or interests, please contact plaintiffs' counsel, William Lerach or Darren Robbins of Lerach Coughlin at 800/449-4900 or 619/231-1058, or via e-mail at wsl@lerachlaw.com. If you are a member of this class, you can view a copy of the complaint as filed or join this class action online at http://www.lerachlaw.com/cases/sunrisesenior/. Any member of the purported class may move the Court to serve as lead plaintiff through counsel of their choice, or may choose to do nothing and remain an absent class member.

   The complaint charges Sunrise and certain of its officers and directors with violations of the Securities Exchange Act of 1934. Sunrise provides residential and other services to retirees and elderly persons through facilities it develops and constructs and then manages, often through joint ventures.

   The complaint alleges that during the Class Period, defendants issued materially false and misleading statements regarding the Company's business, its stock option plans, its compensation practices and its financial results. As a result of these false statements, Sunrise's common stock traded at artificially inflated prices during the Class Period, reaching a high of $39.68 per share on March 29, 2006. The individual defendants took advantage of Sunrise's falsified financial results, the artificial inflation of Sunrise's stock and the manipulation of its stock option plans by selling shares of their Sunrise stock for illegal insider trading proceeds of over $34 million, while Sunrise's top officers pocketed millions more in unjustified bonus payments enhanced in part by Sunrise's falsified profits. The complaint alleges that defendants had previously manipulated the Company's stock option plans so as to enrich themselves by "backdating" or "spring-loading" the stock options they were granted.

   Then on May 9, 2006, Sunrise disclosed a delay in reporting its first quarter 2006 results to allow a review of its financial statements, and on July 31, 2006, Sunrise revealed it would be forced to restate its financial statements going back several years - at least to 1999 - and that its prior financial statements could no longer be relied upon. Sunrise also admitted it could not file current period financial statements for the first, second and third quarters of 2006 and that when it restated its financial results, at least $100 million of previously reported profits from its joint ventures and real estate sales would be eliminated. As these revelations unfolded, Sunrise's stock fell from $39.62 on May 8, 2006 to as low as $24.40 on July 31, 2006.

Lerach Coughlin Stoia Geller Rudman & Robbins LLP Files Class Action

Plaintiffs seek to recover damages on behalf of all purchasers of Sunrise publicly traded securities during the Class Period (the "Class"). The plaintiffs are represented by Lerach Coughlin, which has expertise in prosecuting investor class actions and extensive experience in actions involving financial fraud.

Lerach Coughlin, a 180-lawyer firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle, is active in major litigations pending in federal and state courts throughout the United States and has taken a leading role in many important actions on behalf of defrauded investors, consumers, and companies, as well as victims of human rights violations. Lerach Coughlin lawyers have been responsible for more than $20 billion in aggregate recoveries. The Lerach Coughlin Web site (http://www.lerachlaw.com) has more information about the firm.

CONTACT: Lerach Coughlin Stoia Geller Rudman & Robbins LLP
William Lerach, 800-449-4900
wsl@lerachlaw.com

**URL:** http://www.businesswire.com

**LOAD-DATE:** January 17, 2007

# EXHIBIT D

# LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP

**LERACH COUGHLIN STOIA GELLER RUDMAN & ROBBINS LLP** ("Lerach Coughlin") is a 180-lawyer law firm with offices in San Diego, San Francisco, Los Angeles, New York, Boca Raton, Washington, D.C., Houston, Philadelphia and Seattle (*www.lerachlaw.com*). Lerach Coughlin is actively engaged in complex litigation, emphasizing securities, consumer, insurance, healthcare, human rights, employment discrimination and antitrust class actions. Lerach Coughlin's unparalleled experience and capabilities in these fields are based upon the talents of its attorneys who have successfully prosecuted thousands of class action lawsuits. As a result, Lerach Coughlin attorneys have been responsible for recoveries of more than $45 billion.

This successful track record stems from our experienced attorneys, including many who left partnerships at other firms or came to Lerach Coughlin from federal, state and local law enforcement and regulatory agencies, including dozens of former federal prosecutors. Lerach Coughlin also includes more than 25 former federal (circuit and district) and state judicial clerks.

Lerach Coughlin currently represents more institutional investors in securities and corporate litigation – public and multi-employer funds – than any other firm in the United States.

**William S. Lerach** is widely recognized as one of the leading securities lawyers in the United States. He has prosecuted hundreds of securities class and stockholder derivative actions, resulting in recoveries of billions of dollars. Mr. Lerach and the firm are involved in many of the largest and highest profile securities suits in recent years, including *Enron*, *Dynegy*, *AOL-TimeWarner* and *WorldCom*.

**Patrick J. Coughlin** has been lead counsel in several major securities matters, including *In re Apple Computer Sec. Litig.*, where he obtained a $100 million verdict. Prior to joining the firm's predecessor, Mr. Coughlin was a federal prosecutor in Washington, D.C. and San Diego handling complex white collar fraud matters. He helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown*, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman*. Mr. Coughlin now heads up the prosecution of the high profile *HealthSouth* and *Qwest* cases. Mr. Coughlin has handled and resolved a number of large securities cases involving such companies as 3Com, Boeing, IDB Communications Group, Unocal, Sybase, Connor, Media Vision, ADAC, Sunrise Medical, Valence, Sierra Tucson and Merisel. In addition, Mr. Coughlin spearheaded actions against the tobacco industry, resulting in the phase-out of the Joe Camel Campaign and a $12.5 billion recovery to the cities and counties of California – unique in the nation.

**John J. Stoia, Jr.** has prosecuted numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a major part of the plaintiffs' trial team which resulted in verdicts against Keating and his co-defendants in excess of $3 billion and recoveries of over $240 million. Mr. Stoia has been involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s, including, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company. Because of Mr. Stoia's efforts, victimized policyholders have recovered over

$7 billion.  Mr. Stoia also successfully litigated numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century, including serving as lead counsel in *McNeil v. Am. Gen. Life Ins. and Accident Co.*, the first major settlement involving discrimination claims ($234 million recovery).  Mr. Stoia has since resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.*, *Morris v. Life Ins. Co. of Georgia* and *Thompson v. Metro. Life*.  In late summer 2004, Mr. Stoia filed the first complaint alleging kickbacks and rigged bidding in the insurance industry and was hired by California Insurance Commissioner John Garamendi to represent the citizens of California in suits alleging these practices.

**Paul J. Geller** has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against *Hamilton Bancorp* ($8.5 million); *Prison Realty Trust* (total combined recovery of over $120 million); and *Intermedia Corp.* ($38 million).  Mr. Geller was one of the court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.*, Case No. 01 Civ 10071 (S.D.N.Y.) ($10 million settlement); *Abrams v. Van Kampen Funds, Inc.*, Case No. 01 C 7538 (N.D. Ill.) ($31.5 million settlement); and *In Re Eaton Vance Sec. Litig.*, Case No. 01-109 (D. Mass.) ($10 million settlement).  Mr. Geller has also successfully represented consumers in class action litigation.  He was one of the lead counsel in a nationally publicized consumer privacy case, *Kehoe v. Fidelity Federal Bank & Trust* ($50 million settlement).  Mr. Geller was also counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one of the nation's largest credit card companies ($11 million settlement), and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendants misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

**Samuel H. Rudman** served in the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney, where he was responsible for numerous investigations and prosecutions of violations of the federal securities laws.  Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public companies in the defense of securities class actions and also handled several white collar criminal defense matters.

Since joining the firm, Mr. Rudman has been responsible for the investigation and initiation of securities and shareholder class actions.  In addition, Mr. Rudman developed a concentration in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in that area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**Darren J. Robbins** has extensive experience in federal and state securities litigation, serving as lead counsel in the *In re Dollar Gen. Sec. Litig.*, *In re Prison Realty Sec. Litig.,* and *In re Hanover Compressor Sec. Litig*.  Mr. Robbins currently represents numerous pension funds in state and federal courts across the country and concentrates his practice in the structuring of corporate governance enhancements in connection with the resolution of shareholder class and derivative litigations.  Mr. Robbins was

recognized as *California Lawyer* Attorney of the Year for 2003 as a result of his participation as lead counsel in *Hanover Compressor*, where plaintiffs recovered approximately $85 million and obtained numerous groundbreaking corporate governance changes, including direct shareholder nomination of board members and the mandatory rotation of the company's outside audit firm.

## PRACTICE AREAS AND CURRENT CASES

### Securities

As recent corporate scandals clearly demonstrate, it has become all too common for companies and their executives to manipulate the market price of their securities by misleading the public about the company's financial condition or prospects for the future. This misleading information has the effect of artificially inflating the price of the company's securities above their true value. When the underlying truth is eventually revealed, the prices of these securities plummet, harming those innocent investors who relied upon the company's misrepresentations.

Lerach Coughlin is the leader in the fight to provide investors with relief from corporate securities fraud. Lerach Coughlin utilizes a wide range of federal and state laws to provide investors with remedies, either by bringing a class action on behalf of all affected investors or, where appropriate, by bringing individual cases on behalf of large institutional investors.

The firm's reputation for excellence has been repeatedly noted by courts and has resulted in the appointment of Lerach Coughlin attorneys to lead roles in hundreds of complex class action securities and other cases. In the securities area alone, the firm's attorneys have been responsible for a number of outstanding recoveries on behalf of investors which, in the aggregate, exceed $45 billion. Currently, Lerach Coughlin is lead or named counsel in approximately 500 securities class action or large institutional investor cases, including:

- Enron securities class action
- AOL/Time Warner individual institutional investor private actions
- Cisco Systems securities class action
- Coke securities class action
- Oracle securities class action
- WorldCom Bond individual institutional investor private actions
- HealthSouth securities class action

One of the reasons for Lerach Coughlin's dominance stems from the firm's unparalleled dedication of resources towards investor recovery. For example, the firm has approximately 125 attorneys dedicated to investigating and prosecuting securities fraud class action and derivative cases on behalf of hundreds of institutional investors. In addition to ample human resources, Lerach Coughlin is also well capitalized to meet the demands of prosecuting complex cases.

Lerach Coughlin's securities department includes dozens of former federal and state prosecutors and trial attorneys. The firm's securities practice is also strengthened by the existence of a strong Appellate Department, whose collective work has resulted in numerous legal precedents. The securities department also utilizes an extensive group of in-house economic and damage analysts, investigators and forensic accountants to aid in the prosecution of complex securities issues.

While obtaining recoveries for our clients is our primary focus, Lerach Coughlin attorneys have also been at the forefront of securities fraud **prevention**.  The firm's prevention efforts are focused on creating important changes in corporate governance, either as part of the global settlements of derivative and class cases or through court orders.  Recent cases in which such changes were made include: *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.*, Case No. H-02-0410 (S.D. Tex.) (groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; creation and appointment of lead independent director with authority to set up board meetings); *In re Sprint Shareholder Lit., Case* No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) (in connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions which, among other things, established a truly independent Board of Directors and narrowly defines "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis); *Teachers' Ret. Sys. of Louisiana v. Occidental Petroleum Corp.*, Case No. BC185009 (Cal. Super. Ct. 1998) (as part of the settlement, corporate governance changes were made to the composition of the company's Board of Directors, the company's Nominating Committee, Compensation Committee and Audit Committee); and *Barry v. E*Trade Group, Inc.*, Case No. CIV419804 (Cal. Super. Ct., San Mateo County) (in connection with settlement of derivative suit, excessive compensation of CEO eliminated (reduced salary from $800,000 to zero; bonuses reduced and to be repaid if company restates earnings; reduction of stock option grant, and elimination of future stock option grants) and important governance enhancements obtained, including the appointment of a new unaffiliated outside director as chair of board's compensation committee).  Through these efforts, Lerach Coughlin has been able to create substantial shareholder guarantees to prevent future securities fraud.

The firm works exclusively with noted corporate governance consultant Robert Monks and his firm, LENS Governance Advisors, to shape corporate governance remedies for the benefit of investors.

**Insurance**

Fraud in the insurance industry by industry executives, agents, brokers, lenders and others is one of the most costly crimes in America.  Driving up everyone's insurance prices, some experts estimate the annual cost of this rising tide of white collar crime to be $120 billion nationally.  Lerach Coughlin stands at the forefront in protecting the rights of consumers and state and federal entities against insurance fraud and unfair business practices in the insurance industry.

Beginning in August 2004, Lerach Coughlin was the first to expose the illegal and improper bid-rigging and kickback scandal between insurance companies and their brokers.  The firm is currently one of the lead firms representing businesses, individuals, school districts, counties and the State of California in numerous actions in state and federal courts nationwide.

Our attorneys prosecute claims relating to the fraudulent and improper sale and servicing of insurance policies to recoup losses for victimized policyowners.  For example, Lerach Coughlin attorneys have represented and continue to represent policyowners against insurance companies who made misrepresentations at the point of sale concerning how the policy will perform, the amount of

money the policy will cost, and whether premiums will "vanish." Claims also include allegations that purchasers were misled concerning the financing of a new policy, falling victim to a "replacement" or "churning" sales scheme where they were convinced to use loans, partial surrenders or withdrawals of cash values from an existing permanent life insurance policy to purchase a new policy. To date, Lerach Coughlin has been responsible for over $4 billion in recoveries for defrauded policyholders.

Lerach attorneys have long been at the forefront of race discrimination litigation against life insurance companies for their practice of intentionally charging African-Americans and other minorities more for life insurance than similarly situated Caucasians. Our attorneys have recovered over $400 million for African-Americans and other minority class members as redress for the civil rights abuses they were subjected to, including landmark recoveries in *McNeil v. Am. Gen. Life & Accident Ins. Co.*, *Thompson v. Metro. Life Ins. Co.* and *Williams v. United Ins. Co. of Am*.

## Antitrust

Lerach Coughlin's antitrust practice focuses on representing plaintiffs in complex litigation, such as small businesses and individuals who have been the victims of price-fixing, unfair trade practices or other anticompetitive conduct. The firm has taken a leading role in many of the largest federal price-fixing and price discrimination cases throughout the United States.

For example, Lerach Coughlin attorneys played a lead role in *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.), serving as Court-appointed co-lead counsel for a class of investors. The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry-wide conspiracy in one of the largest and most important antitrust cases in recent history. After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever. An excerpt from the Court's opinion reads:

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country. It is difficult to conceive of better representation than the parties to this action achieved.

*See In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998).

One of the most significant opinions in the case was Judge Sweet's decision to certify the class of millions of investors over the strenuous objections of defendants. *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493 (S.D.N.Y. 1996). Oral argument on behalf of plaintiffs on the class certification motion was presented by Leonard B. Simon, Of Counsel to Lerach Coughlin.

Other cases include:

- ***Hall v. NCAA*** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). Lerach Coughlin attorneys served as lead counsel and lead trial counsel for one of three classes of coaches who alleged that the National Collegiate Athletic Association illegally fixed their compensation by instituting the "restricted earnings coach" rule. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $67 million. Trial counsel included the firm's attorney Bonny E. Sweeney.

- ***In re Disposable Contact Lens Antitrust Litig.***, MDL No. 1030 (M.D. Fla.).  Lerach Coughlin attorneys served as co-lead counsel for a class of contact lens wearers alleging that the principal manufacturers of disposable contact lenses conspired with the leadership of the American Optometric Association and other eye care practitioners to boycott alternative channels of contact lens distribution, including pharmacies and mail order suppliers.  The case settled for $89 million five weeks into a jury trial, shortly after plaintiffs' trial counsel, including Lerach Coughlin attorney Christopher M. Burke, defeated defendants' motion for a directed verdict.

- ***Microsoft I-V Cases***, J.C.C.P. Case No. 4106 (San Francisco Super. Ct.).  Lerach Coughlin attorneys served on the executive committee in these consolidated cases, in which California indirect purchasers challenged Microsoft's illegal exercise of monopoly power in the operating system, word processing and spreadsheet markets.  In a settlement approved by the Court, class counsel obtained an unprecedented $1.1 billion worth of relief for the business and consumer class members who purchased the Microsoft products.

Current cases include:

- ***In re Currency Conversion Antitrust Litig.***, MDL No. 1409 (S.D.N.Y.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this multi-district litigation, in which a class of general purpose VISA and MasterCard cardholders allege that VISA and MasterCard, and certain leading member banks of Visa and MasterCard, conspired to fix and maintain the foreign currency conversion fee charged to U.S. cardholders.  Plaintiffs also allege that defendants failed to adequately disclose the fee in violation of federal law.  Discovery continues, and the plaintiffs' motion for class certification is fully briefed.

- ***Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives and Composites, Inc.*** (the ***Carbon Fiber Antitrust Litig.***), Case No. CV-99-7796 (C.D. Cal.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this consolidated class action, in which a class of purchasers alleges that the major producers of carbon fiber fixed the price of carbon fiber from 1993 to 1999.  The trial Court denied defendants' motions to dismiss and granted plaintiffs' motion to certify the class, and the Ninth Circuit Court of Appeals has rejected defendants' challenge to the Court's class certification Order.  Discovery is continuing.

- ***In re Carbon Black Antitrust Litig.***, MDL No. 1543 (D. Mass.).  Lerach Coughlin attorneys serve as co-lead counsel for a class of businesses that allege that the major producers of carbon black unlawfully conspired to fix the price of carbon black, which is used in the manufacture of tires, rubber and plastic products, inks and other products, from 1999 through the present.  The parties are currently engaged in discovery.

- ***In re DRAM Antitrust Litig.***, MDL No. 1486 (N.D. Cal.).  Lerach Coughlin attorneys serve on the executive committee in this multi-district class action, in which a class of purchasers of high density low-cost-per-bit, random access memory chips, known as DRAM, allege that the leading manufactures of semiconductor products fixed the price

of DRAM from the fall of 2001 through at least the end of June 2002.  Lerach Coughlin attorneys took the lead in briefing and successfully opposing defendant's motion to dismiss, which was denied.  The parties are engaged in discovery.

- ***In re Medical Waste Services Antitrust Litig.***, MDL No. 1546 (D. Utah).  Lerach Coughlin attorneys are co-lead counsel in this multi-district antitrust class action litigation involving two separate cases.  In the first (the *Tri-State Class Action*), plaintiffs allege defendants illegally conspired to allocate customers and territories in the market for the collection, transportation and disposal of medical waste in three mountain states.  In the second case (the *Stoll Action*), the firm is co-lead counsel for a California class of plaintiffs who allege that Stericycle, the largest provider of medical waste collection and disposal services in the United States, unlawfully monopolized the market for these services in California.  Discovery is ongoing, and plaintiffs expect to move for certification of the class in July 2004.

- ***In re Microsoft Antitrust Litig.***, MDL No. 1332 - D. Md.  Lerach Coughlin attorneys have served as lead counsel, co-lead counsel and on the executive committees of more than 15 indirect purchaser actions against Microsoft brought in both state and federal courts alleging Microsoft illegally exercised its monopoly power in the operating system, word processing and spreadsheet markets.  Plaintiffs successfully defeated motions to dismiss, challenges to class certification and motions for summary judgment in many state cases.  Plaintiffs also engaged in a massive discovery effort in order to defeat Microsoft's challenges regarding its unlawful acts, and to prepare for trials in California and Minnesota, both of which ultimately resolved before the cases reached a jury.  In many states, the parties are currently in the process of finalizing settlements and/or achieving Court approval in settlements which provide an unprecedented result for indirect purchaser class members.

- ***The California Wholesale Electricity Antitrust Litig.***, Case No. 02-CV-990 (S.D. Cal.).  Lerach Coughlin attorneys are co-lead counsel (with one other firm) in this litigation, which alleges buyers and sellers in markets operated by the California Power Exchange and California ISO manipulated markets during the period May 1, 2000 to June 19, 2001.  The culmination of several years of litigation, review of company documents and investigation have led to the determination of widespread market manipulation of the California and Western energy markets during 2000 and 2001.  The findings show the trading strategies and withholding of power, employed by Enron and other companies, were undertaken in an effort to manipulate the California energy market which led to increased energy prices for consumers.  Plaintiffs reached a landmark settlement in the litigation with the Williams Companies worth an estimated $400 million.  The case is currently before the Ninth Circuit Court of Appeals awaiting oral argument on several issues.

## Consumer

Lerach Coughlin's attorneys represent plaintiffs nationwide in a variety of important, complex consumer class actions.  Lerach Coughlin attorneys have taken a leading role in many of the largest state and federal consumer fraud, human rights, environmental, public health and tobacco-related cases throughout the United States.  Lerach Coughlin is also actively involved in numerous cases

relating to the financial services industry, pursuing claims on behalf of individuals victimized by abusive mortgage lending practices, including violations of the Real Estate Settlement Procedures Act, market timing violations in connection with the sale of variable annuities and deceptive consumer credit lending practices in violation of the Truth-In-Lending Act.

Current consumer cases include:

- ***Dell's Bait and Switch Scheme.*** Plaintiffs have sued Dell, Inc. and its financing partners, Dell Financial Services and CIT Bank, in connection with their bait and switch sales and financing practices. The class action complaint alleges that Dell uses its advertisements to lure customers in, promising low-price computers. At the point of sale, Dell engages in one of several bait and switch schemes, including substituting lesser quality computer components for those ordered and paid for by customers, increasing the purchase price without adequate notice to customers, and canceling orders when Dell does not want to honor advertised deals. This class action also alleges illegal financing behavior, including Dell switching or failing to adequately disclose the terms of Dell's financing agreement, including less favorable financing plans, hidden charges and fees, and much higher interest rates.

- ***eBay Shill Bidding Litigation.*** Lerach Coughlin attorneys represent a plaintiff and class members in litigation against auction company eBay. The class action alleges unlawful shill bidding by eBay in its online auctions. Plaintiff alleges that eBay's practice of increasing winning bids, when an eBay customer uses eBay's proxy bidding tool, violates numerous California auction and consumer laws.

- ***Illegal Internet Gambling Advertisements***. Lerach Coughlin represents the general public and a class of California residents who have been harmed by the illegal online advertising for gambling casinos. In a complaint upheld by Judge Kramer of the San Francisco complex litigation department, plaintiffs have alleged that the numerous online search engines have violated California Law by taking payment in exchange for advertising illegal gambling websites.

- ***Cellphone Termination Fee Cases.*** Lerach Coughlin attorneys are co-lead counsel in a lawsuit against the six major wireless telephone service providers in California. The plaintiffs allege that the early termination fee provisions in defendants' contracts are illegal penalties under California Law, designed to unfairly tether consumers to long-term contracts and prevent customers from changing their wireless service providers.

- ***Tenet Healthcare Cases.*** Lerach Coughlin attorneys are co-lead counsel in a class action alleging a fraudulent scheme of corporate misconduct, resulting in the overcharging of uninsured patients by the Tenet chain of hospitals. The firm's attorneys represent uninsured patients of Tenet hospitals nationwide who were overcharged by Tenet's admittedly "aggressive pricing strategy" which resulted in price gouging of the uninsured. Judge McCoy of the Los Angeles Superior Court granted preliminary approval of a settlement between plaintiffs and Tenet.

- ***AT&T Wireless Coverage Maps.*** Lerach Coughlin attorneys represent consumers in a Los Angeles action that alleges false and misleading advertising by AT&T Wireless.

Plaintiffs claim that AT&T Wireless's coverage maps are deceptive because they fail to disclose that defendants' service area is riddled with coverage gaps and holes. Plaintiffs seek injunctive relief from the court requiring AT&T Wireless to publish accurate coverage maps indicating where consumers are actually able to place wireless telephone calls throughout the Los Angeles region. AT&T Wireless was acquired by Cingular Wireless.

Prior consumer cases include:

- ***Schwartz v. Visa.*** After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States. In *Schwartz v. Visa Int'l, et al.*, Case No. 822404-4 (Cal. Super. Ct., Alameda County), California consumers sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders. The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest. In addition, the Court ordered full disclosure of the hidden fee.

- ***In re Lifescan, Inc. Consumer Litig.***, Case No. CV-98-20321-JF (N.D. Cal.). Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood-glucose monitoring system for diabetics. The Lifescan settlement was noted by the District Court for the Northern District of California as providing "exceptional results" for members of the class.

## Human Rights, Labor Practices and Public Policy

Lerach Coughlin attorneys have a long tradition of representing the victims of wrongdoing, ranging from unfair labor practices to the violation of human rights. These include:

- ***Does I, et al. v. The Gap, Inc., et al.***, Case No. 01 0031 (D. N. Mariana Islands). In this groundbreaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: ***Does I, et al. v. Advance Textile Corp., et al.***, Case No. 99 0002 (D. N. Mariana Islands), which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and ***UNITE, et al. v. The Gap, Inc., et al.***, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for

Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003). The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising. The Court rejected defense contentions that any misconduct was protected by the First Amendment. The Court found the heightened constitutional protection afforded to noncommercial speech was inappropriate in such a circumstance.

- ***The Cintas Litigation***. Brought against one of the nation's largest commercial laundries for violations of the Fair Labor Standards Act for misclassifying truck drivers as salesmen to avoid payment of overtime.

Shareholder derivative litigation brought by Lerach Coughlin at times also involves anti-union activities, including:

- ***Southern Pacific/Overnite***. A shareholder action stemming from several hundred million dollars in loss of value in the company due to systematic violations by Overnite of U.S. labor laws.

- ***Massey Energy***. A shareholder action against an anti-union employer for flagrant violations of environmental laws resulting in multi-million dollar penalties.

- ***Crown Petroleum***. A shareholder action against a Texas-based oil company for self-dealing and breach of fiduciary duty while also involved in a union lockout.

Lerach Coughlin attorneys also represented over 2,300 Taco Bell workers who were denied thousands of hours of overtime pay because, among other reasons, they were improperly classified as overtime exempt employees. Currently, the firm's attorneys represent CINTAS workers with similar claims of violation of federal and state labor laws.

**Environment & Public Health**

Lerach Coughlin attorneys have also represented plaintiffs in class actions related to environmental law. The firm's attorneys represented, on a *pro bono* basis, the Sierra Club and the National Economic Development and Law Center as *amici curiae* in a federal suit designed to uphold the state and federal use of project labor agreements ("PLAs"). The suit represented a legal challenge to President Bush's Executive Order 13202, which prohibits the use of project labor agreements on construction projects receiving federal funds. Our Amici Brief in the matter outlined and stressed the significant environmental and socio-economic benefits associated with the use of PLAs on large scale construction projects.

Attorneys with Lerach Coughlin have been involved in several other significant environmental cases, including:

- ***Public Citizen v. US DOT.*** Lerach Coughlin represented a coalition of labor, environmental, industry and public health organizations including Public Citizen, The

International Brotherhood of Teamsters, California AFL-CIO and California Trucking Industry in a challenge to a decision by the Bush Administration to lift a congressionally-imposed "moratorium" on cross-border trucking from Mexico on the basis that such trucks do not conform to emission controls under the Clean Air Act, and further, that the Administration did not first complete a comprehensive environmental impact analysis as required by the National Environmental Policy Act. The suit was dismissed by the Supreme Court, the Court holding that because the DOT lacked discretion to prevent cross-border trucking, an environmental assessment was not required.

- ***Sierra Club v. AK Steel.*** Brought on behalf of the Sierra Club for massive emissions of air and water pollution by a steel mill, including homes of workers living in the adjacent communities, in violation of the Federal Clean Air Act, RCRA and the Clean Water Act.

- ***MTBE Litigation.*** Brought on behalf of various water districts for befouling public drinking water with MTBE, a gasoline additive linked to cancer.

- ***Exxon Valdez.*** Brought on behalf of fisherman and of Alaska residents for billions of dollars in damages resulting from the greatest oil spill in U.S. history.

- ***Avilla Beach.*** A citizens' suit against UNOCAL for leakage from the oil company pipeline so severe it literally destroyed the town of Avilla Beach, California.

Federal laws such as the Clean Water Act, the Clean Air Act, the Resource Conservation and Recovery Act and state laws such as California Proposition 65 exist to protect the environment and the public from abuses by corporate and government organizations. Companies can be found liable for negligence, trespass or intentional environmental damage and be forced to pay for reparations and to come into compliance with existing laws.

Prominent cases litigated by Lerach Coughlin attorneys include representing more than 4,000 individuals suing for personal injury and property damage related to the Stringfellow Dump Site in Southern California, participation in the Exxon Valdez oil spill litigation, and the toxic spill arising from a Southern Pacific train derailment near Dunsmuir, California.

**The Fight Against Big Tobacco**

Lerach Coughlin attorneys have led the fight against Big Tobacco since 1991. As an example, Lerach Coughlin attorneys filed the case that helped get rid of Joe Camel representing various public and private plaintiffs, including the State of Arkansas, the general public in California, the cities of San Francisco, Los Angeles and Birmingham, 14 counties in California, and the working men and women of this country in the Union Pension and Welfare Fund cases that have been filed in 40 states. In 1992, Lerach Coughlin attorneys filed the first case in the country that alleged a conspiracy by the Big Tobacco companies.

**Pro Bono**

Lerach Coughlin attorneys have a long history of engaging in *pro bono* cases and have been recognized for their demonstrated commitment to providing *pro bono* services to the poor and

disenfranchised.  In 2003, Lerach Coughlin attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were nominated for the prestigious 2003 California State Bar President's *Pro Bono* Law Firm of the Year award, based in large part on their efforts with the ACLU in *Sanchez v. County of San Diego*. The San Diego office received a commendation from the State Bar President for its "dedication to the provision of *pro bono* legal services to the poor and for the significant contribution [the firm] made to extending legal services to underserved communities."  In recommending the firm for the award, Carl Poirot of the San Diego Volunteer Lawyer Program praised the firm for its "extraordinary efforts" in the case, stating that the "legal team generously gave of their time in the vigorous representation of a class of individuals who clearly do not have the financial resources nor wherewithal to retain legal counsel.  The County's questionable conduct would have gone unchallenged but for the intervention" of the legal team.

*Sanchez* is a class action brought on behalf of welfare applicants against the County of San Diego seeking an injunction requiring the County to discontinue its "Project 100%" program.  Under Project 100%, investigators from the San Diego D.A.'s office, Public Assistance Fraud Division, enter and search the home of every person who applies for welfare benefits, even though there is no suspicion of fraud or wrongdoing, and despite the fact that every individual is required to undergo an extensive application process with numerous verifications.  Plaintiffs contend that these searches by law enforcement officers, performed without cause or suspicion, violate state and federal statutes and the Fourth Amendment of the U.S. Constitution.

The Court certified a class of all present and future applicants for CalWORKs cash aid and food stamps in San Diego County who are subject to a search of their home under Project 100%.  Defendants have since admitted that the use of home visits to determine eligibility for food stamps violates California state regulations and has agreed to settle these claims.  Although defendants were granted summary judgment on the remaining claims, plaintiffs are currently in the process of filing an appeal with the Ninth Circuit Court of Appeals and are optimistic about the prospects for success there.  Due to the substantial number of hours dedicated to this important case, lead attorneys Eric Isaacson, Bonny Sweeney and Amber Eck were awarded the SDVLP Distinguished Service Award.

The San Diego office was also named as one of three finalists for the 1999 *Pro Bono* Law Firm of the Year award by the SDVLP, based in part for its work on the *Badua v. City of San Diego* case.  *Badua* was a case brought on behalf of Jenny Badua against the City of San Diego.  After working for the City for 15 years, she was placed on Long Term Disability ("LTD") leave due to severe manic depression.  Under the City's LTD Plan, which is similar to many other LTD plans, individuals with physical disabilities receive benefits until age 65 or older, but individuals with mental disabilities receive benefits for only two years.  We alleged that this differential treatment of persons with mental disabilities violated the Americans with Disabilities Act and federal and state disability nondiscrimination statutes.  Unfortunately, after three years of working on the case, the Ninth Circuit Court of Appeals issued an Opinion upholding the constitutionality of an LTD plan nearly identical to the one at issue, and plaintiffs settled the case for a nominal award to the plaintiff.  However, the Disability Rights Education & Defense Fund ("DREDF") and the ACLU commended our efforts and described this as one of the most important issues of the year.

Our co-counsel, Linda Kilb of the DREDF, said in recommending us for the award: "The talent, effort and commitment of [Lerach Coughlin attorneys have] been invaluable, and it is difficult to imagine how the case could proceed without them.  DREDF is enormously appreciative of [Lerach Coughlin

attorneys'] continuing role in this case, and of SDVLP's assistance in finding us co-counsel of this caliber."

## JUDICIAL COMMENDATIONS

Lerach Coughlin attorneys have been commended by countless judges all over the country for the quality of representation in class action lawsuits.

When Judge Harmon appointed Lerach Coughlin attorneys as lead counsel for Enron securities purchasers, she commented:

> In reviewing the extensive briefing submitted regarding the Lead Plaintiff/Lead Counsel selection, the Court has found that the submissions of [Lerach Coughlin attorneys] stand out in the breadth and depth of its research and insight. Furthermore, Mr. Lerach has justifiably "beat his own drum" in demonstrating the role his firm has played thus far in zealously prosecuting this litigation on Plaintiffs' behalf.

Later, in a preliminary class certification order discussing the issues of Enron, Judge Harmon had this to say about our firm:

> The firm is comprised of probably the most prominent securities class action attorneys in the country. It is not surprising that Defendants have not argued that counsel is not adequate. Counsel's conduct in zealously and efficiently prosecuting this litigation with commitment of substantial resources to that goal evidences those qualities.... Since the beginning they have propelled the Newby litigation forward. They have established the website by which attorneys serve and communicate with each other, established the central depository for discovery materials, negotiated an agreed, organized, nonduplicative, and pared-down discovery schedule, and negotiated complex settlements with a number of defendants.

*See In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S.D. Tex. 2002).

*In Stanley v. Safeskin Corp.*, Case No. 99 CV 454-BTM (S.D. Cal. May 25, 2004), where Lerach Coughlin obtained $55 million for the class of investors, Judge Moskowitz stated:

> I said this once before, and I'll say it again. I thought the way that your firm handled this case was outstanding. This was not an easy case. It was a complicated case, and every step of the way, I thought they did a very professional job.

In *Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999), Judge Chesler noted in his Opinion on class certification that:

> The firm of [Lerach Coughlin], which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the Prudential case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the [Lerach Coughlin] firm has helped to secure for the plaintiff classes in both this case and the Prudential case are a testament to counsel's vigorous pursuit of the class interests.

In a November 9, 1998 Order approving settlements totaling over $1.027 billion, the Court in *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998), commented of Lerach Coughlin attorneys, including Len Simon;

> Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties in this action achieved.

In approving a recovery in excess of $200 million in *Transamerica*, Judge Danielson of the California Superior Court made it a point to comment on the professionalism of Lerach Coughlin's lawyers:

> It would be hard to imagine what question I could come up with that I haven't already seen the information that I needed in the submissions that have been made to this Court.  I can't remember anything so thoroughly and professionally handled in the 20-some odd years that I've been involved in the law.  It is interesting to see law practiced honorably.  And I think all of the lawyers who have involved themselves in this case can be very proud of their profession.

*See Natal v. Transamerica Occidental Life Ins. Co.*, Case No. 694829, Hearing Transcript dated June  26, 1997, at 39:3-12.

Similarly, in *Prudential*, in approving the settlement of a nationwide class action against a life insurer for deceptive sales practices, Judge Wolin observed:

> [T]he results achieved by plaintiffs' counsel in this case in the face of significant legal, factual and logistical obstacles and formidable opposing counsel, are nothing short of remarkable....  Finally, the standing and professional skill of plaintiffs' counsel, in particular Co-Lead Counsel, is high and undoubtedly furthered their ability to negotiate a valuable settlement and argue its merits before this Court.  Several members of plaintiffs' counsel are leading attorneys in the area of class action litigation.

*See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 572, 585-86 (D.N.J. 1997), *vacated on other grounds*, 148 F.3d 283 (3d Cir. 1998).  Lerach Coughlin attorneys were co-lead counsel in this litigation.  At the Fairness Hearing in *Prudential*, Judge Wolin stated that "there is **no doubt** that Class Counsel have prosecuted the interests of the class members with the utmost vigor and expertise."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 519 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998) (emphasis added).

In approving a $100 million settlement in *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996), for which Lerach Coughlin attorneys were part of the lead counsel, Judge Pollack noted that he had "the opportunity at first hand to observe the quality of plaintiffs' class counsel's representation, both here and in prior complex litigation, and [was] impressed with the quality of plaintiffs' class counsel."  In his Opinion on class certification, Judge Chesler elaborated that:

The firm which is co-lead counsel for the plaintiff, was also counsel for the plaintiff class in the *Prudential* case. Thus, the adequacy of the plaintiff's representation is beyond reproach. Furthermore, the tremendous and unprecedented settlements which the firm has helped to secure for the plaintiff classes in both this case and the *Prudential* case are a testament to counsel's vigorous pursuit of the class interests.

*See Roy v. The Independent Order of Foresters*, Case No. 97-6225 (SRC), slip op. at 32 (D.N.J. Aug. 3, 1999).

At the Settlement Hearing in the *Chipcom* litigation, for which Lerach Coughlin attorneys were counsel, Judge Woodlock remarked:

[I]t seems to me that the level of legal services, the quality of legal services, the attention to the case on behalf of the plaintiffs, and ultimately plaintiffs' class, was really very high quality and ought to be recognized by an appropriately high percentage figure here.

Of course, I disagree on the merits of the case. That is not, however, to say that I disagree with the quality of the lawyering or disregarded the quality of the lawyering or thought that the quality of the lawyering was not at the highest level. To the contrary, I thought it was at the highest level and that ought also to be reflected here.

*See Nappo v. Chipcom Corp.*, Case No. CA-95-11114-WD (D. Mass.), Settlement Hearing Transcript dated June 26, 1997, at 13-14.

## NOTABLE CLIENTS

## Public Fund Clients

- **Alaska Permanent Fund Corporation.**

- **Alaska State Pension Investment Board.**

- **California Public Employees' Retirement System.**

- **California State Teachers' Retirement System.**

- **City of Birmingham Retirement and Relief System (Ala.).**

- **Teachers' Retirement System of the State of Illinois, Illinois Municipal Retirement Fund, Illinois State Board of Investment.**

- **Los Angeles County Employees Retirement Association (LACERA).**

- **Maine State Retirement System.**

- **The Maryland-National Capital Park & Planning Commission Employees' Retirement System.**

- **Milwaukee Employees' Retirement System.**

- **Minnesota State Board of Investment.**

- **New Hampshire Retirement System.**

- **Pompano Beach Police & Firefighters Retirement System.**

- **The Regents of the University of California.**

- **State Universities Retirement System of Illinois.**

- **State of Wisconsin Investment Board.**

- **Tennessee Consolidated Retirement System.**

- **Washington State Investment Board.**

- **Wayne County Employees' Retirement System.**

- **West Virginia Investment Management Board.**

## Multi-Employer Clients

- **Alaska Electrical Pension Fund.**

- **Alaska Hotel & Restaurant Employees Pension Trust Fund.**

- **Alaska Ironworkers Pension Trust.**

- **Alaska Laborers Employers Retirement Fund.**

- **Alaska U.F.C.W. Pension Trust.**

- **Chemical Valley Pension Fund of West Virginia**.

- **Carpenters Health & Welfare Fund of Philadelphia & Vicinity.**

- **Carpenters Pension Fund of Baltimore, Maryland**.

- **Carpenters Pension Fund of Illinois**.

- **Carpenters Pension & Annuity Fund of Philadelphia & Vicinity**.

- **Southwest Carpenters Pension Trust (f/k/a Carpenters Pension Trust for Southern California)**.

- **Central States, Southeast and Southwest Areas Pension Fund.**

- **Construction Industry and Carpenters Joint Pension Trust for Southern Nevada**.

- **Employer-Teamsters Local Nos. 175 & 505 Pension Trust Fund**.

- **Heavy & General Laborers' Local 472 & 172 Pension & Annuity Funds**.

- **UNITE Family of Funds**.

- **1199 SEIU Greater New York Pension Fund**.

- **Massachusetts State Carpenters Pension Fund**.

- **Massachusetts State Guaranteed Annuity Fund**.

- **New England Health Care Employees Pension Fund**.

- **PACE Industry Union-Management Pension Fund**.

- **Rocky Mountain UFCW Unions & Employers Pension Plan**.

- **SEIU Staff Fund**.

- **Southern California Lathing Industry Pension Fund**.

- **United Brotherhood of Carpenters Pension Fund**.

## Additional Institutional Investors

- **The Dot.Com Fund**.

- **Northwestern Mutual Life Insurance Company**.

- **Standard Life Investments**.

## PROMINENT CASES AND PRECEDENT-SETTING DECISIONS

### Prominent Cases

- ***In re Enron Sec. Litig.***, Case No. H-01-3624 (S.D. Tex.).  In appointing Lerach Coughlin lawyers as sole lead counsel to represent the interests of Enron investors, the Court found that the firm's zealous prosecution and level of "insight" set it apart from its peers.  Ever since, Lerach Coughlin and lead plaintiff The Regents of the University of California have aggressively pursued numerous defendants, including many of Wall Street's biggest banks and law firms.  Despite each defendant's claim that as a matter of law it could not be found liable for plaintiffs' losses, Lerach Coughlin and The Regents have thus far obtained settlements in excess of $7.1 billion for the benefit of investors.  Lerach Coughlin continues to press substantial and sizable claims against numerous defendants, including Enron's senior-most officers and several large international banks, with every intention of winning further large recoveries at trial for the victims of this corporate catastrophe.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, MDL No. 1023 (S.D.N.Y.).  Lerach Coughlin attorneys served as Court-appointed co-lead counsel for a class of investors.  The class alleged that the NASDAQ market-makers set and maintained wide spreads pursuant to an industry wide conspiracy in one of the largest and most important antitrust cases in recent history.  After three and one half years of intense litigation, the case was settled for a total of $1.027 billion, the largest antitrust settlement ever.  An excerpt from the Court's Opinion reads:

  > Counsel for the Plaintiffs are preeminent in the field of class action litigation, and the roster of counsel for the Defendants includes some of the largest, most successful and well regarded law firms in the country.  It is difficult to conceive of better representation than the parties to this action achieved.

- ***In re Dynegy Sec. Litig.***, Case No. H-02-1571 (S.D. Tex.).  As sole lead counsel representing The Regents of the University of California and the class of Dynegy investors, Lerach Coughlin obtained a combined settlement of $474 million from Dynegy Inc., Citigroup, Inc. and Arthur Andersen LLP for their involvement in a clandestine financing scheme known as Project Alpha.  Given Dynegy's limited ability to pay, Lerach Coughlin structured a settlement (reached shortly before the commencement of trial) that maximized plaintiffs' recovery without bankrupting the company.  Most notably, the settlement agreement provides that Dynegy will appoint two board members to be nominated by the Regents, which Lerach Coughlin and the Regents believe will result in benefits to all of Dynegy's stockholders.

- ***In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.***, MDL No. 834 (D. Ariz.).  Lerach Coughlin attorneys served as the Court-appointed co-lead counsel for a class of persons who purchased debentures and/or stock in American Continental Corp., the parent company of the now infamous Lincoln Savings & Loan.  The suit charged Charles Keating, other insiders, three major accounting firms, three major law firms, Drexel Burnham, Michael Milken and others with racketeering and violations of securities laws.  Recoveries totaled $240 million on $288 million in losses.  A jury also rendered verdicts of more than $1 billion against Keating and others.

- ***In re 3Com, Inc. Sec. Litig.***, Case No. C-97-21083-JW (N.D. Cal.).  A hard-fought class action alleging violations of the federal securities laws in which Lerach Coughlin attorneys served as lead counsel for the class and obtained a recovery totaling $259 million.

- **Mangini v. R.J. Reynolds Tobacco Co.**, Case No. 939359 (Cal. Super. Ct., San Francisco County). In this case, R.J. Reynolds admitted, "the *Mangini* action, and the way that it was vigorously litigated, was an early, significant and unique driver of the overall legal and social controversy regarding underage smoking that led to the decision to phase out the Joe Camel Campaign."

- **Cordova v. Liggett Group, Inc., et al.**, Case No. 651824 (Cal. Super. Ct., San Diego County), and **People v. Philip Morris, Inc., et al.**, Case No. 980864 (Cal. Super. Ct., San Francisco County). Lerach Coughlin attorneys, as lead counsel in both these actions, played a key role in these cases which were settled with the Attorneys General global agreement with the tobacco industry, bringing $26 billion to the State of California as a whole and $12.5 billion to the cities and counties within California.

- **Does I, et al. v. The Gap, Inc., et al.**, Case No. 01 0031 (D. N. Mariana Islands). In this ground-breaking case, Lerach Coughlin attorneys represented a class of 30,000 garment workers who alleged that they had worked under sweatshop conditions in garment factories in Saipan that produced clothing for top U.S. retailers such as The Gap, Target and J.C. Penney. In the first action of its kind, Lerach Coughlin attorneys pursued claims against the factories and the retailers alleging violations of RICO, the Alien Tort Claims Act and the Law of Nations based on the alleged systemic labor and human rights abuses occurring in Saipan. This case was a companion to two other actions: **Does I, et al. v. Advance Textile Corp., et al.**, Case No. 99 0002 (D. N. Mariana Islands) – which alleged overtime violations by the garment factories under the Fair Labor Standards Act, and **UNITE, et al. v. The Gap, Inc., et al.**, Case No. 300474 (Cal. Super. Ct., San Francisco County), which alleged violations of California's Unfair Practices Law by the U.S. retailers. These actions resulted in a settlement of approximately $20 million that included a comprehensive Monitoring Program to address past violations by the factories and prevent future ones. The members of the litigation team were honored as Trial Lawyers of the Year by the Trial Lawyers for Public Justice in recognition of the team's efforts at bringing about the precedent-setting settlement of the actions.

- **In re Exxon Valdez**, Case No. A89 095 Civ. (D. Alaska), and **In re Exxon Valdez Oil Spill Litig.**, Case No. 3 AN 89 2533 (Alaska Super. Ct., 3d Jud. Dist.). Lerach Coughlin attorneys served on the Plaintiffs' Coordinating Committee and Plaintiffs' Law Committee in the massive litigation resulting from the Exxon Valdez oil spill in Alaska in March 1989. A jury verdict of $5 billion was obtained and is currently on appeal.

- **In re Washington Public Power Supply Sys. Sec. Litig.**, MDL No. 551 (D. Ariz.). A massive litigation in which Lerach Coughlin attorneys served as co-lead counsel for a class that obtained recoveries totaling $775 million after several months of trial.

- **Hall v. NCAA** (Restricted Earnings Coach Antitrust Litigation), Case No. 94-2392-KHV (D. Kan.). The firm was lead counsel and lead trial counsel for one of three classes of coaches in consolidated price fixing actions against the National Collegiate Athletic Association. On May 4, 1998, the jury returned verdicts in favor of the three classes for more than $54.5 million.

- **Newman v. Stringfellow** (Stringfellow Dump Site Litigation), Case No. 165994 MF (Cal. Super. Ct., Riverside County). Lerach Coughlin attorneys represented more than 4,000 individuals suing for personal injury and property damage arising from their claims that contact with the Stringfellow Dump Site may have caused them toxic poisoning. Recovery totaled approximately $109 million.

- ***In re Prison Realty Sec. Litig.***, Case No. 3:99-0452 (M.D. Tenn.).  Lerach Coughlin attorneys served as lead counsel for the class, obtaining a $105 million recovery.

- ***In re Honeywell Int'l, Inc. Sec. Litig.,*** Case No. 00-cv-03605 (DRD) (D. N.J.).  Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased Honeywell's common stock.  The case charged defendants Honeywell and its top officers with violations of the federal securities laws, alleging defendants made false public statements concerning Honeywell's merger with Allied Signal, Inc., and also alleging that defendants falsified Honeywell's financial statements.   After extensive discovery, Lerach Coughlin attorneys obtained a $100 million settlement for the class.

- ***In re AT&T Corp. Sec. Litig.,*** MDL No. 1399 (N.J.).  Lerach Coughlin attorneys served as lead counsel for a class of investors that purchased AT&T common stock.  The case charged defendants AT&T Corporation and its former Chairman and Chief Executive Officer, C. Michael Armstrong, with violations of the federal securities laws in connection with AT&T's April 2000 initial public offering of its wireless tracking stock, the largest IPO in American history.  After two weeks of trial, and on the eve of scheduled testimony by Armstrong and infamous telecom analyst Jack Grubman, defendants agreed to settle the case for $100 million.  In granting approval of the settlement, the Court stated the following about Lerach Coughlin:

   Lead Counsel are highly skilled attorneys with great experience in prosecuting complex securities action[s], and their professionalism and diligence displayed during litigation substantiates this characterization.  The Court notes that Lead Counsel displayed excellent lawyering skills through their consistent preparedness during court proceedings, arguments and the trial, and their well-written and thoroughly researched submissions to the Court.  Undoubtedly, the attentive and persistent effort of Lead Counsel was integral in achieving the excellent result for the Class.

- ***City of San Jose v. PaineWebber***, Case No. C-84-20601(RFP) (N.D. Cal.).  Lerach Coughlin attorneys filed a lawsuit on behalf of the City of San Jose to recover speculative trading losses from its former auditors and 13 brokerage firms.  In June 1990, following a six-month trial, the jury returned a verdict for the City, awarding over $18 million in damages plus pre-judgment interest.  The City also recovered an additional $12 million in settlements prior to and during the trial.

- ***Hicks v. Nationwide***, Case No. 602469 (Cal. Super. Ct., San Diego County).  Lerach Coughlin attorneys represented a class of consumers alleging fraud involving military purchasers of life insurance, in which a jury trial resulted in a full recovery for the class, plus punitive damages.

- ***In re Nat'l Health Labs. Sec. Litig.***, Case No. CV-92-1949-RBB (S.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a pretrial recovery of $64 million in this securities fraud class action.

- ***In re Informix Corp. Sec. Litig.***, Case No. C-97-1289-CRB (N.D. Cal.).  Lerach Coughlin attorneys served as co-lead counsel for the class and obtained a recovery of $137.5 million.

- ***In re Apple Computer Sec. Litig.***, Case No. C-84-20148(A)-JW (N.D. Cal.).  Lerach Coughlin attorneys served as lead counsel and after several years of litigation obtained a $100 million jury verdict in this securities fraud class action.  The verdict was later upset on post-trial motions, but the case was settled favorably to the class.

- ***In re Nat'l Med. Enters. Sec. Litig.***, Case No. CV-91-5452-TJH (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and recovered $60.75 million in this securities fraud class action.

- ***In re Nucorp Energy Sec. Litig.***, MDL No. 514 (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this consolidated class action and recovered $55 million.

- ***In re U.S. Fin. Sec. Litig.***, MDL No. 161 (S.D. Cal.). Lerach Coughlin attorneys acted as chairman of the Plaintiffs' Steering Committee and achieved a pretrial recovery of over $50 million.

- ***Barr v. United Methodist Church***, Case No. 404611 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as lead and trial counsel in this class action on behalf of elderly persons who lost their life savings when a church-sponsored retirement home that had sold them prepaid life-care contracts went bankrupt. After four years of intensive litigation – three trips to the U.S. Supreme Court and five months of trial – plaintiffs obtained a settlement providing over $40 million in benefits to the class members. In approving that settlement, Judge James Foucht praised the result as "a most extraordinary accomplishment" and noted that it was the "product of the skill, effort and determination of plaintiffs' counsel."

- ***Grobow v. Dingman*** (The Henley Group Litigation), Case No. 575076 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel and obtained $42 million derivatively on behalf of The Henley Group, Inc.

- ***In re Itel Sec. Litig.***, Case No. C-79-2168A-RPA (N.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this securities class action that recovered $40 million.

- ***In re Fin. Corp. of Am.***, Case No. CV-84-6050-TJH(Bx) (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $41 million.

- ***In re Oak Indus. Sec. Litig.***, Case No. 83-0537-G(M) (S.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a recovery of $33 million.

- ***In re Wickes Cos. Sec. Litig.***, MDL No. 513 (S.D. Cal.). Lerach Coughlin attorneys served as liaison counsel in this consolidated securities law class action that recovered $32 million.

- ***Weinberger v. Shumway*** (The Signal Companies, Inc.), Case No. 547586 (Cal. Super. Ct., San Diego County). Lerach Coughlin attorneys served as co-lead counsel in this derivative litigation challenging executive "golden parachute" contracts, and obtained a recovery of approximately $23 million.

- ***In re Seafirst Sec. Litig.***, Case No. C-83-771-R (W.D. Wash.). Lerach Coughlin attorneys served as co-lead counsel in this class action and obtained a pretrial recovery of $13.6 million.

- ***In re Waste Mgmt. Sec. Litig.***, Case No. 83-C2167 (N.D. Ill.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $11.5 million.

- ***In re IDB Commc'ns Group, Inc. Sec. Litig.***, Case No. CV-94-3618 (C.D. Cal.). Lerach Coughlin attorneys served as co-lead counsel in this case and obtained a pretrial recovery of $75 million.

- ***In re Boeing Sec. Litig.***, Case No. C97-1715Z (W.D. Wash.).  A securities class action in which Lerach Coughlin attorneys served as co-lead counsel for the class obtaining a recovery in the amount of $92.5 million.

- ***Thurber v. Mattel, Inc., et al.***, Case No. CV-99-10368-MRP (C.D. Cal.).  Lerach Coughlin attorneys served as Chair of the Executive Committee of Plaintiffs' Counsel and obtained a recovery of $122 million.

- ***In re Dollar Gen. Sec. Litig.,***  Case No. 3:01-0388 (M.D. Tenn.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $172.5 million.

- ***Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.).  Lerach Coughlin attorneys served as lead counsel and obtained a recovery of $85 million.

- ***In re Reliance Acceptance Group, Inc. Sec. Litig.***, MDL No. 1304 (D. Del.).  Lerach Coughlin attorneys served as co-lead counsel and obtained a recovery of $39 million.

- ***Schwartz v. Visa Int'l, et al.***, Case No. 822404-4 (Cal. Super. Ct., Alameda County).  After years of litigation and a six month trial, Lerach Coughlin attorneys won one of the largest consumer protection verdicts ever awarded in the United States.  Lerach Coughlin attorneys represented California consumers who sued Visa and MasterCard for intentionally imposing and concealing a fee from their cardholders.  The Court ordered Visa and MasterCard to return $800,000,000 in cardholder losses, which represented 100% of the amount illegally taken, plus 2% interest.  In addition, the Court ordered full disclosure of the hidden fee.

- ***Morris v. Lifescan, Inc.***, Case No. CV-98-20321-JF (N.D. Cal.).  Lerach Coughlin attorneys were responsible for achieving a $45 million all-cash settlement with Johnson & Johnson and its wholly-owned subsidiary, Lifescan, Inc., over claims that Lifescan deceptively marketed and sold a defective blood glucose monitoring system for diabetics.  The Lifescan settlement was noted by the U.S. District Court for the Northern District of California as providing "exceptional results" for members of the class.

- ***Thompson v. Metro. Life Ins. Co.***, 216 F.R.D. 55 (S.D.N.Y. 2003).  Lerach Coughlin attorneys served as lead counsel and obtained $145 million for the class in a settlement involving racial discrimination claims in the sale of life insurance.

- ***In re Prudential Ins. Co. of Am. Sales Practices Litig.***, 962 F. Supp. 450 (D. N.J. 1997).  In one of the first cases of its kind, Lerach Coughlin attorneys obtained a settlement of over $1.2 billion for deceptive sales practices in connection with the sale of life insurance involving the "vanishing premium" sales scheme.

- ***Brody v. Hellman***, Case No. 00-CV-4142 (D. Colo.).  Lerach Coughlin was Court-appointed counsel for a class of former stockholders of US West, Inc. who sought to recover a dividend declared by US West before its merger with Qwest.  The merger closed before the record and payment dates for the dividend, which Qwest did not pay following the merger.  The case was hard fought, and the plaintiffs survived a motion to dismiss, two motions for summary judgment and successfully certified the class over vigorous opposition from defendants.  In certifying the class, the Court commented,

"Defendants do not contest that Plaintiffs' attorneys are extremely well qualified to represent the putative class.  This litigation has been ongoing for four years; in that time Plaintiffs' counsel has proven that they are more than adequate in ability, determination, and resources to represent the putative class."  The case settled for $50 million, an outstanding settlement for the class given the novel and difficult legal questions raised in the case.

# Precedent-Setting Decisions

## Investor and Shareholder Rights

- ***Dura Pharm., Inc. v. Broudo***, __ U.S. __, 125 S. Ct. 1627; 161 L. Ed. 2d 577 (2005).  Resolving a conflict among the circuits on pleading and proving loss causation, the Supreme Court adopted a rule that investors may proceed by pleading and proving that securities they purchased declined in value because of the fraud alleged – as, for example, by alleging that the securities' market price fell when news of the issuer's true financial state began to leak out.

- ***In re Daou Systems Inc. Sec. Litig.***, 411 F.3d 1006 (9th Cir. 2005).  The Ninth Circuit sustained investors' allegations of accounting fraud and ruled that loss causation was adequately alleged by pleading that the value of the stock they purchased declined when the issuer's true financial condition was revealed.

- ***Barrie v. Intervoice-Brite, Inc.***, 409 F.3d 653 (5th Cir. 2005).  The Fifth Circuit held that where corporate officers made public statements together, an investor's allegations of the false statements meets the heightened pleading requirements for federal securities claims, and that the corporate officer who stood by silently while false statements were made – failing to correct them – may be liable along with the officer who actually made them.

- ***Newby v. Enron Corp.***, 394 F.3d 296 (5th Cir. 2004).  The Fifth Circuit upheld a partial settlement in a complex case that was structured to support further litigation of that case in order to maximize recovery against the remaining defendants.

- ***Illinois Municipal Retirement Fund v. Citigroup, Inc.***, 391 F.3d 844 (7th Cir. 2004).  The Seventh Circuit upheld a district court's decision that the Illinois Municipal Retirement Fund was entitled to litigate its claims under the federal Securities Act of 1933 against WorldCom's underwriters before a state court rather than before the federal forum sought by the defendants.

- ***City of Monroe Employees Retirement System v. Bridgestone Corp.***, 387 F.3d 468 (6th Cir. 2005).  The Sixth Circuit held that a statement regarding objective data supposedly supporting a corporation's belief that its tires were safe was actionable, where jurors could have found a reasonable basis to believe the corporation was aware of undisclosed facts seriously undermining the statement's accuracy.

- ***Nursing Home Pension Fund, Local 144 v. Oracle Corp.***, 380 F.3d 1226 (9th Cir. 2004).  The Ninth Circuit ruled that defendants' fraudulent intent could be inferred from allegations concerning their false representations, insider stock sales and improper accounting methods.

- ***Southland Sec. Corp. v. INSpire Ins. Solutions Inc.***, 365 F.3d 353 (5th Cir. 2004).  The Fifth Circuit sustained allegations that an issuer's CEO made fraudulent statements in connection with a contract announcement.

- ***No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. W. Holding Corp.***, 320 F.3d 920 (9th Cir. 2003).  *America West* is a landmark Ninth Circuit decision holding that investors pleaded with particularity facts raising a strong inference of corporate defendants' fraudulent intent under heightened pleading standards of the Private Securities Litigation Reform Act of 1995.

- ***Pirraglia v. Novell, Inc.***, 339 F.3d 1182 (10th Cir. 2003).  In *Pirraglia*, the Tenth Circuit upheld investors' accounting-fraud claims, concluding that their complaint presented with particularity facts raising a strong inference of the defendants' fraudulent intent, and that absence of insider trading by individual defendants did not mean they lacked a motive to commit fraud.

- ***In re Cavanaugh***, 306 F.3d 726 (9th Cir. 2002).  In *Cavanaugh*, the Ninth Circuit disallowed judicial auctions to select lead plaintiffs in securities class actions, and protected lead plaintiffs' right to select the lead counsel they desire to represent them.

- ***Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.***, 238 F.3d 363 (5th Cir. 2001).  In *Lone Star Ladies*, the Fifth Circuit upheld investors' claims that securities-offering documents were incomplete and misleading, reversing a district court Order that had  applied inappropriate pleading standards to dismiss the case.

- ***Bryant v. Dupree***, 252 F.3d 1161 (11th Cir. 2001).  The Eleventh Circuit held that investors were entitled to amend their securities-fraud complaint to reflect further developments in the case, reversing a contrary district court Order.

- ***Bryant v. Avado Brands***, 187 F.3d 1271 (11th Cir. 1999).  Interpreting the Private Securities Litigation Reform Act of 1995, the Eleventh Circuit held that its provision requiring investors to plead facts raising a strong inference of scienter does not abrogate the principle that recklessness suffices to establish liability for violations of §10(b) of the Securities Exchange Act of 1934.

- ***Berry v. Valence Tech., Inc.***, 175 F.3d 699 (9th Cir. 1999).  The Ninth Circuit held that negative articles in the financial press do not cause the one-year "inquiry notice" statute of limitations to run, and indicated possible acceptance of an "actual knowledge" standard that would greatly extend the statute of limitations for victims of securities fraud.

- ***Hertzberg v. Dignity Partners, Inc.***, 191 F.3d 1076 (9th Cir. 1999).  The Ninth Circuit reversed dismissal of investors' claims that securities-offering documents were misleading, holding purchasers who bought shares in the aftermarket had standing to bring claims under the Securities Act of 1933 where a material fact is misstated or omitted from a registration statement.

- ***StorMedia, Inc. v. Superior Court***, 20 Cal. 4th 449 (1999).  Interpreting the anti-manipulation provisions of California's state securities laws, the California Supreme Court held that a corporation engages in the offer or sale of securities when it maintains an employee stock option or stock purchase plan, and thus may be liable under the statute for disseminating false or misleading public statements.

- ***Diamond Multimedia Sys., Inc. v. Superior Court***, 19 Cal. 4th 1036 (1999).  The California Supreme Court held that the California State securities laws' broad anti-manipulation provisions provide a remedy for out-of-state investors damaged by manipulative acts committed within the State of California.

- ***Cooper v. Pickett***, 137 F.3d 616 (9th Cir. 1998).  *Cooper* is the leading Ninth Circuit precedent on pleading accounting fraud with particularity.  The Court held that plaintiffs stated claims against a company, its independent auditors and its underwriters, for engaging in a scheme to defraud involving improper revenue recognition.

- ***McGann v. Ernst & Young***, 102 F.3d 390 (9th Cir. 1996).  *McGann* is a leading federal appellate precedent interpreting Securities Exchange Act of 1934 §10(b)'s provision prohibiting manipulative or deceptive conduct "in connection with" the purchase or sale of a security.  The Court rejected contentions that auditors could not be liable for a recklessly misleading audit opinion if they directly participated in no securities transactions.  Rather, an accounting firm is subject to liability if it prepares a fraudulent audit report knowing that its client will include the report in an SEC filing.

- ***Provenz v. Miller***, 102 F.3d 1478 (9th Cir. 1996).  In *Provenz*, the Ninth Circuit reversed a district court's entry of summary judgment for defendants in an accounting fraud case.  The decision is a leading federal appellate precedent on the evidence required to prove fraudulent revenue recognition.

- ***Knapp v. Ernst & Whinney***, 90 F.3d 1431 (9th Cir. 1996).  The Ninth Circuit affirmed a jury verdict entered for stock purchasers against a major accounting firm.

- ***Warshaw v. Xoma Corp.***, 74 F.3d 955 (9th Cir. 1996).  *Warshaw* is a leading federal appellate precedent on pleading falsity in securities class actions, sustaining allegations that a pharmaceutical company misled securities analysts and investors regarding the efficacy of a new drug and the likelihood of FDA approval.  The Court also held that a company may be liable to investors if it misled securities analysts.

- ***Gohler v. Wood***, 919 P.2d 561 (Utah 1996).  The Utah Supreme Court held that investors need not plead or prove "reliance" on false or misleading statements in order to recover under a state law prohibiting misleading statements in connection with the sale of a security.

- ***Fecht v. Price Co.***, 70 F.3d 1078 (9th Cir. 1995).  *Fecht* is another leading precedent on pleading falsity with particularity.  It sustained allegations that a retail chain's positive portrayal of its expansion program was misleading in light of undisclosed problems that caused the program to be curtailed.  The Ninth Circuit held that investors may draw on contemporaneous conditions – such as disappointing results and losses in new stores – to explain why a company's optimistic statements were false and misleading.  It also clarified the narrow scope of the so-called "bespeaks caution" defense.

- ***In re Software Toolworks Sec. Litig.***, 50 F.3d 615 (9th Cir. 1995).  In *Software Toolworks*, the Ninth Circuit reversed the summary judgment entered for defendants, including a company and its top insiders, independent auditors and underwriters.  Among other things, the Court held that auditors and underwriters could be liable for their role in drafting a misleading letter sent to the SEC on the corporate defendant's attorneys' letterhead.

- *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373 (9th Cir. 1995). The Ninth Circuit approved shareholders' settlement of a derivative suit as fair, reasonable, and adequate.

- *Kaplan v. Rose*, 49 F.3d 1363 (9th Cir. 1994). The Court reversed entry of summary judgment for defendants because investors presented sufficient evidence for a jury to conclude that a medical device did not work as well as defendants claimed.

- *In re Wells Fargo Sec. Litig.*, 12 F.3d 922 (9th Cir. 1993). *Wells Fargo* is a leading federal appellate decision on pleading accounting fraud, sustaining investors' allegations that a bank misrepresented the adequacy of its loan-loss reserves.

- *Krangel v. Gen. Dynamics Corp.*, 968 F.2d 914 (9th Cir. 1992). The Ninth Circuit dismissed defendants' appeal from a district court's Order upholding plaintiff investors' choice of forum by remanding the matter to the state court.

- *Colan v. Mesa Petroleum, Co.*, 951 F.2d 1512 (9th Cir. 1991). In a shareholder derivative action, the Ninth Circuit held that exchange of common stock for debt securities was a "sale" subject to the Securities Exchange Act of 1934's regulation of short-swing profits.

- *In re Apple Computer Sec. Litig.*, 886 F.2d 1109 (9th Cir. 1989). The Ninth Circuit reversed summary judgment for defendants, holding that investors could proceed to trial on claims that a company's representations about its new disk drive were misleading because they failed to disclose serious technical problems.

- *Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988). The Ninth Circuit reversed a district court's dismissal of claims for fraud brought against a corporation's directors and its lawyers.

- *Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873 (9th Cir. 1984). The Ninth Circuit upheld an investor's right to pursue a class action against an accounting firm, adopting statute of limitation rules for §10(b) suits that are favorable to investors.

ADDITIONALLY, IN THE CONTEXT OF SHAREHOLDER DERIVATIVE ACTIONS, Lerach Coughlin attorneys have been at the forefront of protecting shareholders' investments by causing important changes in corporate governance as part of the global settlement of such cases. Three recent cases in which such changes were made include:

- *Teachers' Retirement Sys. of Louisiana v. Occidental Petroleum Corp.*, Case No. BC185009 (Cal. Super. Ct.). As part of the settlement, corporate governance changes were made to the composition of the company's board of directors, the company's nominating committee, compensation committee and audit committee.

- *In re Sprint Shareholder Litig.*, Case No. 00-CV-230077 (Circuit Ct. Jackson County, Mo.) In connection with the settlement of a derivative action involving Sprint Corporation, the company adopted over 60 new corporate governance provisions, which, among other things, established a truly independent Board of Directors and narrowly defined "independence" to eliminate cronyism between the board and top executives; required outside board directors to meet at least twice a year without management present; created an independent director who will hold the authority to set the agenda, a power previously reserved for the CEO; and imposed new rules to prevent directors and officers from vesting their stock on an accelerated basis.

- ***Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Hanover Compressor Co.***, Case No. H-02-0410 (S.D. Tex.). Groundbreaking corporate governance changes obtained include: direct shareholder nomination of two directors; mandatory rotation of the outside audit firm; two-thirds of the board required to be independent; audit and other key committees to be filled only by independent directors; and creation and appointment of lead independent director with authority to set up board meetings.

## Insurance

- ***Lebrilla v. Farmers Group, Inc.***, 119 Cal. App. 4th 1070 (2004). Reversing the trial court, the California Court of Appeal ordered class certification of a suit against Farmers, one of the largest automobile insurers in California. The case involves Farmers' practice of using inferior imitation parts when repairing insureds' vehicles.

- ***Dehoyos v. Allstate Corp.***, 345 F.3d 290 (5th Cir. 2003), *cert. denied*, 2004 U.S. LEXIS 3088 (Apr. 26, 2004). The Fifth Circuit Court of Appeals held that claims under federal civil rights statutes involving the sale of racially discriminatory insurance policies based upon the use of credit scoring did not interfere with state insurance statutes or regulatory goals and were not preempted under the McCarran-Ferguson Act. Specifically, the Appellate Court affirmed the district court's ruling that the McCarran-Ferguson Act does not preempt civil-rights claims under the Civil Rights Act of 1866 and the Fair Housing Act for racially discriminatory business practices in the sale of automobile and homeowners insurance. The U.S. Supreme Court denied defendants' petition for certiorari and plaintiffs can now proceed with their challenge of defendants' allegedly discriminatory credit scoring system used in pricing of automobile and homeowners insurance policies.

- ***In re Monumental Life Ins. Co.***, 345 F.3d 408, (5th Cir. 2004). The Fifth Circuit Court of Appeals reversed a district court's denial of class certification in a case filed by African-Americans seeking to remedy racially discriminatory insurance practices. The Fifth Circuit held that a monetary relief claim is viable in a Rule 23(b)(2) class if it flows directly from liability to the class as a whole and is capable of classwide "computation by means of objective standards and not dependent in any significant way on the intangible, subjective differences of each class member's circumstances."

- ***Moore v. Liberty Nat'l Life Ins. Co.***, 267 F.3d 1209 (11th Cir. 2001). The Eleventh Circuit affirmed the district court's denial of the defendant's motion for judgment on the pleadings, rejecting contentions that insurance policyholders' claims of racial discrimination were barred by Alabama's common law doctrine of repose. The Eleventh Circuit also rejected the insurer's argument that the McCarran-Ferguson Act mandated preemption of plaintiffs' federal civil rights claims under 42 U.S.C. §§1981 and 1982.

- ***Massachusetts Mutual Life Ins. Co. v. Superior Court***, 97 Cal. App. 4th 1282 (2002). The California Court of Appeal affirmed a trial court's Order certifying a class in an action by purchasers of so-called "vanishing premium" life-insurance policies who claimed violations of California's consumer-protection statutes. The Court held that common issues predominate where plaintiffs allege a uniform failure to disclose material information about policy dividend rates.

## Consumer Protection

- ***Kasky v. Nike, Inc.***, 27 Cal. 4th 939 (2002), *cert. dismissed*, 539 U.S. 654 (2003).  The California Supreme Court upheld claims that an apparel manufacturer misled the public regarding its exploitative labor practices, thereby violating California statutes prohibiting unfair competition and false advertising.  The Court rejected defense contentions that such misconduct was protected by the First Amendment.

- ***West Corp. v. Superior Court***, 116 Cal. App. 4th 1167 (2004).  The California Court of Appeal upheld the trial court's finding that jurisdiction in California was appropriate over the out-of-state corporate defendant whose telemarketing was aimed at California residents.  Exercise of jurisdiction was found to be in keeping with considerations of fair play and substantial justice.

- ***Spielholz v. Superior Court***, 86 Cal. App. 4th 1366 (2d Dist. 2001).  The California Court of Appeal held that false advertising claims against a wireless communications provider are not preempted by the Federal Communications Act of 1934.

- ***Day v. AT & T Corp.***, 63 Cal. App. 4th 325 (1998).  The California Court of Appeal held that an action which seeks only to enjoin misleading or deceptive practices in the advertising of telephone rates does not implicate the federal filed-rate doctrine, and can proceed under Cal. Bus. & Prof. Code §§17200 and 17500.  The Court also held that the claims were not preempted by the Federal Communications Act, that the California Public Utilities Commission does not have exclusive jurisdiction, that the doctrine of primary jurisdiction did not compel dismissal or stay of the action, and that the plaintiffs were not required to exhaust their administrative remedies.

- ***Mangini v. R.J. Reynolds Tobacco Co.***, 7 Cal. 4th 1057 (1994).  The California Supreme Court upheld allegations that a cigarette manufacturer committed an unlawful business practice by targeting minors with its advertising.  It flatly rejected the manufacturer's contention that the action was preempted by federal cigarette labeling laws.

- ***Jordan v. Dep't of Motor Vehicles***, 75 Cal. App. 4th 449 (1999).  The California Court of Appeal invalidated a non-resident vehicle "smog impact" fee imposed on out-of-state autos being registered for the first time in California, finding that the fee violated the Interstate Commerce Clause of the U.S. Constitution.

- ***Clothesrigger, Inc. v. GTE Corp.***, 191 Cal. App. 3d 605 (1987).  The California Court of Appeal reversed the trial court's decision refusing to apply California Law to the claims of nonresident plaintiffs.  In reversing the lower court's ruling, the Court found that California Law may constitutionally apply to the claims of proposed nationwide class members who are not residents of California, provided there are significant contacts to the claims asserted by each member.

- ***Lazar v. Hertz Corp.***, 143 Cal. App. 3d 128 (1983).  The California Court of Appeal ordered a consumer class certified in an Opinion that significantly broadened the right of injured consumers to bring class actions.

- ***Barr v. United Methodist Church***, 90 Cal. App. 3d 259 (1979).  The California Court of Appeal rejected constitutional defenses to an action for civil fraud and breach of contract committed by religiously affiliated defendants.

## Antitrust

- ***Law v. NCAA***, 134 F.3d 1010 (10th Cir. 1998).  The Tenth Circuit upheld summary judgment on liability for plaintiffs in college coaches' antitrust action against the National Collegiate Athletic Association on the issue of antitrust liability under §1 of the Sherman Antitrust Act, 15 U.S.C. §1 (plaintiffs subsequently prevailed on a damages trial).  It also upheld the district court's Order permanently enjoining the NCAA from enforcing the "restricted earnings coach" rule, through which NCAA member institutions limited the salary of certain coaches to $12,000 during the academic year.

- ***In re NASDAQ Market-Makers Antitrust Litig.***, 172 F.R.D. 119 (S.D.N.Y. 1997).  In a case where plaintiffs alleged that approximately 30 NASDAQ market-makers engaged in a conspiracy to restrain or eliminate price competition, the District Court certified a class of millions of investors – including institutional investors to be represented by five public pension funds.

- ***In re Disposable Contact Lens Antitrust Litig.***, 170 F.R.D. 524 (M.D. Fla. 1996).  Plaintiff contact lens purchasers alleged that defendant manufacturers conspired on a nationwide basis to eliminate competition and maintain artificially inflated prices for replacement contact lenses.  The District Court denied defendant manufacturers' motion to dismiss plaintiffs' Clayton Act claims and granted their motion for class certification, finding that plaintiffs' vertical–conspiracy evidence was general to the class and provided a colorable method of proving impact on the class at trial.

- ***In re Currency Conversion Fee Antitrust Litig.***, 265 F. Supp. 2d 385 (S.D.N.Y. 2003).  In a case consolidating more than 20 putative class actions, plaintiff credit card holders alleged that two credit-card networks, Visa and MasterCard, and their member banks, conspired to fix the foreign-currency conversion fees they charged.  The District Court found that plaintiffs pleaded facts sufficient to permit the inference of an antitrust conspiracy, denying defendants' motion to dismiss the antitrust allegations.

- ***Pharmacare v. Caremark***, 965 F. Supp. 1411 (D. Haw. 1996).  The District Court denied defendant's motion to dismiss plaintiffs' Robinson-Patman Act claim in a case where the largest company in the alternate-site infusion therapy industry had pleaded guilty to mail fraud for making improper payments to physicians in exchange for their referrals of patients.  Plaintiffs, defendant's competitors, alleged that they suffered injury as a result of defendant's agreements, which violated the anti-kickback provisions of the Clayton Act, §2(c) as amended by the Robinson-Patman Act, 15 U.S.C. §13(c).

# THE FIRM'S PARTNERS

**WILLIAM S. LERACH** is widely recognized as one of the leading securities lawyers in the United States. He has headed the prosecution of hundreds of securities class and stockholder derivative actions resulting in recoveries for defrauded shareholders amounting to billions of dollars. Mr. Lerach has been the subject of considerable media attention and is a frequent commentator on securities and corporate law, as well as a frequent lecturer. He represents numerous public and multi-employer pension funds in corporate securities matters.

He is the author of *Plundering America: How American Investors Got Taken for Trillions by Corporate Insiders - The Rise of the New Corporate Kleptocracy*, 8 Stanford J. of Law, Bus. and Fin. 1 (2002); *Why Insiders Get Rich, and the Little Guy Loses*, L.A. Times, Jan. 20, 2002; *The Chickens Have Come Home to Roost: How Wall Street, the Big Accounting Firms and Corporate Interests Chloroformed Congress and Cost America's Investors Trillions; Achieving Corporate Governance Enhancements Through Litigation*, keynote address to Council of Institutional Investors spring meeting, Mar. 27, 2001; *The Private Securities Litigation Reform Act of 1995 - 27 Months Later: Securities Class Action Litigation Under The Private Securities Litigation Reform Act's Brave New World*, Washington U. L. Rev., Vol. 76, No. 2 (1998); *An Alarming Decline In the Quality of Financial Reporting* (unpublished paper presented to 7th Annual BusinessWeek CFO Forum (June 1998); co author of *Civil RICO in Shareholders Suits Involving Defense Contractors* in Civil RICO Practice: Causes of Action, published by John Wiley & Sons, Inc. (1991); *The Incorporation Trap: How Delaware Has Destroyed Corporate Governance* (unpublished paper presented to the Council of Institutional Investors (1990)); *Securities Class Actions and Derivative Litigations Involving Public Companies: A Plaintiff's Perspective*, ALI/ABI, Civil Practice and Litigation in Federal and State Courts

(1985), ABA Fall Meeting (1985) and PLI Securities Litigation, Prosecution and Defense Strategies (1985); *Alternative Approaches for Awarding Attorneys' Fees in Federal Court Litigation: It's Time to Unload the Lodestar* (unpublished paper presented to the Ninth Circuit Judicial Conference (1984)); *Class Action and Derivative Suits in the Aftermath of Control Contests, Mergers and Acquisitions: Choice of Forum and Remedies; Attorney/Client Privilege in Class and Derivative Cases*, ABA 1984 Annual Meeting (1984); *Class Actions: Plaintiffs' Perspectives, Tactics and Problems*, ALI/ABA, Civil Practice and Litigation in Federal and State Courts (1984); *Life After Huddleston: Streamlining and Simplification of the Securities Class Action*, 7 Class Action Reports 318 (1982). He is also the author of *Termination of Class Actions: The Judicial Role*, McGough & Lerach, 33 U. Pitt L. Rev. 446 (1972); *Class and Derivative Actions Under the Federal Securities Laws* (1980 Regents of the University of California).

Mr. Lerach is chief counsel in many of the largest and highest profile securities class action and corporate derivative suits in recent years, including *Enron*, *Dynegy*, *Qwest* and *WorldCom*. He is listed in the "Best Lawyers in America" and is a Master of the American Inns of Court. Mr. Lerach has been the President of the National Association of Securities and Commercial Lawyers (NASCAT), a national group of attorneys concentrating in commercial and securities litigation. Mr. Lerach is a member of the Editorial Board of Class Action Reports and frequently lectures on class and derivative actions, accountants' liability, and attorneys' fees, and has been a guest lecturer at Stanford University, University of California at Los Angeles and San Diego, University of Pittsburgh, San Diego State University and at the Council of Institutional Investors and the International Corporate Governance Network. He is also a member of

the American Law Institute faculty on Federal and State Class Action Litigation.

Mr. Lerach received his Bachelor of Arts degree from the University of Pittsburgh in 1967 and his Juris Doctor degree in 1970 where he graduated second in his class, *magna cum laude*, and was a member of the Order of the Coif. The University recently bestowed one of its highest awards on Mr. Lerach, designating him a "*Legacy Laureate*" as one of the University's most outstanding graduates. Mr. Lerach was admitted to the Pennsylvania Bar in 1970 and to the California Bar in 1976. Mr. Lerach was a partner with Pittsburgh firm Reed Smith Shaw & McClay before moving to California. Mr. Lerach serves as Chairman of Lerach Coughlin. He is a member of the Pennsylvania and California Bar Associations and has been admitted to practice before numerous federal and state courts. He is a member of the ABA Litigation Section's Committee on Class Actions and Derivative Skills.

Mr. Lerach has testified before federal and state legislative committees concerning corporate governance and securities matters and is frequently quoted in the national media regarding corporate issues.

Mr. Lerach was honored by President Clinton who appointed him to be a member of the United States Holocaust Memorial Council.

**PATRICK J. COUGHLIN** is the firm's Chief Trial Counsel, and has been lead counsel for several major securities matters, including one of the largest class action securities cases to go to trial, *In re Apple Computer Sec. Litig.*, Case No. C-84-20148(A)-JW (N.D. Cal.). Mr. Coughlin has argued in the United States Supreme Court on behalf of shareholders, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005), in which an important decision was issued by the high court concerning loss causation in securities cases. Although the Court overruled established 9th Circuit precedent, the decision

is widely regarded as a favorable one for investors alleging fraud.

Formerly, Mr. Coughlin was an Assistant United States Attorney in the District of Columbia and the Southern District of California, handling complex white collar fraud matters. During this time, Mr. Coughlin helped try one of the largest criminal RICO cases ever prosecuted by the United States, *United States v. Brown, et al.*, Case No. 86-3056-SWR, as well as an infamous oil fraud scheme resulting in a complex murder-for-hire trial, *United States v. Boeckman, et al.*, Case No. 87-0676-K.

Mr. Coughlin's recent trials involving securities violations include cases against Wells Fargo and California Amplifier. Cases that settled on the eve of trial include cases against Alcatel and America West. Throughout his career, Mr. Coughlin has tried more than 50 jury and non-jury trials. Mr. Coughlin tried one of the largest private RICO trials against the major tobacco companies on behalf of hundreds of thousands of Ohio Taft-Hartley health and welfare fund participants. Mr. Coughlin also helped end the Joe Camel ad campaign, a cartoon ad campaign that targeted children and secured a $12.5 billion recovery for the Cities and Counties of California in the landmark 1998 state settlement with the tobacco companies.

**JOHN J. STOIA, JR.** received his Bachelor of Science degree from the University of Tulsa in 1983. While working on his degree, Mr. Stoia was elected President of the National Political Science Honor Society and graduated with highest honors. In 1986, Mr. Stoia received his Juris Doctor degree from the University of Tulsa and graduated in the top of his class.

In 1987, Mr. Stoia graduated from the Georgetown University Law Center in Washington, D.C., receiving his Masters of Law in Securities Regulation. Thereafter, Mr. Stoia served as an enforcement attorney with the

U.S. Securities and Exchange Commission. Mr. Stoia is one of the founding partners of Lerach Coughlin.

Mr. Stoia worked on numerous nationwide complex securities class actions, including *In re Am. Cont. Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.), which arose out of the collapse of Lincoln Savings & Loan and Charles Keating's empire. Mr. Stoia was a member of plaintiffs' trial team which obtained verdicts against Mr. Keating and his co-defendants in excess of $3 billion and settlements of over $240 million.

Mr. Stoia was involved in over 40 nationwide class actions brought by policyholders against U.S. and Canadian life insurance companies seeking redress for deceptive sales practices during the 1980s and 1990s. Mr. Stoia was actively involved in cases against, among others, Prudential, New York Life, Transamerica Life Insurance Company, General American Life Insurance Company, Manufacturer's Life, Metropolitan Life, American General, US Life, Allianz, Principal Life and Pacific Life Insurance Company.

Mr. Stoia was also involved in numerous cases brought against life insurance companies for racial discrimination involving the sale of small value or "industrial life" insurance policies during the 20th century. Mr. Stoia was lead counsel in *McNeil, et al., v. Am. Gen. Life Ins. and Accident Ins. Co.*, the first major settlement involving discrimination claims which resulted in a $234 million recovery for class members. Mr. Stoia resolved other race-based insurance cases, including *Brown v. United Life Ins. Co.* ($40 million), *Morris v. Life Ins. Co. of Georgia* ($55 million) and *Thompson v. Metropolitan Life* ($145 million).

Mr. Stoia currently represents numerous large institutional investors who suffered hundreds of millions of dollars in losses as a result of the major financial scandals, including WorldCom and AOL-Time Warner.

Mr. Stoia is a frequent lecturer at ALI-ABA, Practicing Law Institute and American Trial Lawyers Association seminars and conferences: Speaker: *ALI-ABA Program: Life and Health Insurance Litigation*; Co-chair, *ALI-ABA Program: Financial Services and Insurance Industry Litigation*; Speaker, *ATLA Winter Convention – Securities Fraud: Rights and Remedies of Shareholders*; Speaker, *ATLA* Annual Convention – Insurance Law Section, Panel: Broker/Dealer Liability; Speaker, *ACI Consumer Finance Class Actions Conference*; Speaker, Barreau du Quebec Class Action Seminar.

UPCOMING SPEAKING ENGAGEMENTS

March 18, 2005
New York: ALI-ABA Program: Financial Services and Insurance Industry Litigation

July 24, 2005
Toronto: ATLA Annual Convention – Insurance Law Section, Panel: Broker/Dealer Liability

September 26, 2005
New York: ACI Consumer Finance Class Actions Conference

October 21, 2005
Quebec: Barreau du Quebec Class Action Seminar

March 30-31, 2006
DC: ALI-ABA Conference on Life Insurance and Financial Services Industry Litigation

May 1, 2006
Kona: IBA West Blue Ribbon Conference

May 10-11, 2007
Chicago: Conference on Insurance Industry Litigation 2007 (ALI-ABA)

June 6-8, 2007
Bermuda: 2007 International Reinsurance Summit

**PAUL J. GELLER** received his Bachelor of Science degree in Psychology from the University of Florida, where he was a member of the University Honors Program.  Mr. Geller then earned his Juris Doctor degree, with highest honors, from Emory University School of Law. At Emory, Mr. Geller was an Editor of the *Law Review*, was inducted into the Order of the Coif legal honor society, and was awarded multiple American Jurisprudence Book Awards for earning the highest grade in the school in a dozen courses.

After spending several years representing blue chip companies in class action lawsuits at one of the largest corporate defense firms in the world, Mr. Geller became a founding partner and head of the Boca Raton offices of the national class action boutiques Cauley Geller Bowman & Rudman, LLP and Geller Rudman, PLLC.   In June 2004, through a merger of Lerach Coughlin Stoia & Robbins, LLP and Geller Rudman, PLLC, Mr. Geller opened the Boca Raton, Florida office of the firm.

In May 2005, Mr. Geller was selected by *The National Law Journal* as one of the nation's top "40 Under 40" – an honor bestowed upon 40 of the country's top lawyers under the age of 40. The *NLJ* had previously compiled its "40 Under 40" list in July 2002; Mr. Geller is the only lawyer in the country that was selected for inclusion both in 2002 and again in 2005. In July 2006, as well as July 2003, Mr. Geller was featured in *Florida Trend* magazine as one of Florida's "Legal Elite." Mr. Geller has also been featured in the *South Florida Business Journal* as one of Florida's top lawyers, and was named one of the nation's top 500 lawyers by Lawdragon in August 2006.

Mr. Geller is rated AV by Martindale-Hubbell (the highest rating available) and has served as lead or co-lead counsel in a majority of the securities class actions that have been filed in the southeastern United States in the past several years, including cases against Hamilton Bancorp ($8.5 million settlement),

Prison Realty Trust (co-lead derivative counsel; total combined settlement of over $120 million); and Intermedia Corp. ($38 million settlement). Mr. Geller recently served as one of the court-appointed lead counsel in cases involving the alleged manipulation of the asset value of some of the nation's largest mutual funds, including *Hicks v. Morgan Stanley & Co.* ($10 million settlement); *Abrams v. Van Kampen Funds, Inc.* ($31.5 million settlement); and *In Re Eaton Vance Sec. Litig.*  ($10 million settlement).

Mr. Geller is also heavily involved in corporate governance litigation. For example, Mr. Geller recently represented a shareholder of Applica Inc. who was concerned with allegedly reckless acquisitions made by the company. Mr. Geller and his partners secured a settlement that required Applica to establish a new independent Acquisitions Committee charged with conducting due diligence and approving future acquisitions, even though such a committee is not required by SEC regulations. In another corporate governance lawsuit, Mr. Geller and his co-counsel challenged the independence of certain members of a Special Committee empaneled by Oracle Corp. to look into certain stock sales made by its Chairman and CEO, Larry Ellison. After Delaware Chancery Court Vice Chancellor Leo E. Strine issued an Order agreeing that the Special Committee was "fraught with conflicts," *The Wall Street Journal* called the decision "one of the most far-reaching ever on corporate governance."

Mr. Geller has also successfully represented consumers in class action litigation. He recently settled *Kehoe and Neilsen v. Fidelity Federal,* a consumer class action alleging privacy violations filed in the Southern District of Florida, for $50 million. He was personal counsel to the lead plaintiff in *Stoddard v. Advanta*, a case that challenged the adequacies of interest rate disclosures by one

of the nation's largest credit card companies ($11 million settlement), and was personal counsel to one of the lead plaintiffs in the American Family Publishers sweepstakes litigation, which alleged that the defendant misled consumers into thinking they would win a lottery if they purchased magazine subscriptions ($38 million settlement).

During the past few years, several of Mr. Geller's cases have received regional and national press coverage. Mr. Geller has appeared on CNN Headline News, CNN Moneyline with Lou Dobbs, ABC, NBC and FOX network news programs. Mr. Geller is regularly quoted in the financial press, including *The New York Times*, *The Wall Street Journal*, *The Washington Post*, and *BusinessWeek*.

Mr. Geller has been or is a member of the Association of Trial Lawyers of America, the Practicing Law Institute, the American Bar Association, the Palm Beach County Bar Association (former Member of Bar Grievance Committee) and the South Palm Beach County Bar Association (former Co-Chair of Pro Bono Committee).

**SAMUEL H. RUDMAN** received his Bachelor of Arts degree in Political Science from Binghamton University in 1989 and earned his Juris Doctor degree from Brooklyn Law School in 1992. While at Brooklyn Law School, Mr. Rudman was a Dean's Merit Scholar and a member of the *Brooklyn Journal of International Law* and the Moot Court Honor Society.

Upon graduation from law school, Mr. Rudman joined the Enforcement Division of the United States Securities & Exchange Commission in its New York Regional Office as a staff attorney. In this position, Mr. Rudman was responsible for numerous investigations and prosecutions of violations of the federal securities laws. Thereafter, Mr. Rudman joined one of the largest corporate law firms in the country, where he represented public

companies in the defense of securities class actions and also handled several white-collar criminal defense matters.

Since joining the firm, Mr. Rudman has been responsible for the investigation and initiation of securities and shareholder class actions. In addition, Mr. Rudman developed a focus in the area of lead plaintiff jurisprudence and has been responsible for numerous reported decisions in this area of securities law.

Mr. Rudman continues to focus his practice in the area of investigating and initiating securities and shareholder class actions and also devotes a considerable amount of time to representing clients in ongoing securities litigation.

**DARREN J. ROBBINS** received his Bachelor of Science and Master of Arts degrees in Economics from the University of Southern California. Mr. Robbins received his Juris Doctor degree from Vanderbilt Law School, where he served as the Managing Editor of the *Vanderbilt Journal of Transnational Law*.

Mr. Robbins oversees Lerach Coughlin's merger and acquisition practice. Mr. Robbins has extensive experience in federal and state securities class action litigation. Mr. Robbins served as one of the lead counsel in the *In re Prison Realty Sec. Litig.* ($120+ million recovery), *In re Dollar Gen. Sec. Litig.* ($172.5 million recovery) and *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Hanover Compressor Co.* ($85+ million recovery). Mr. Robbins currently represents institutional and individual investors in securities actions in state and federal courts across the country, including The Regents of the University of California in the *Enron* litigation and numerous public pension funds in the *WorldCom* bond litigation.

Mr. Robbins is a frequent speaker at conferences and seminars concerning securities

matters and shareholder litigation across the country.

**KEITH F. PARK** graduated from the University of California at Santa Barbara in 1968 and from the Hastings College of Law of the University of California in 1972.

Mr. Park is responsible for the recoveries in more than 1,000 securities class actions, including actions involving: Dollar General ($162 million recovery); Mattel ($122 million recovery); Prison Realty ($105 million recovery); Honeywell (in addition to the $100 million recovery, obtained Honeywell's agreement to adopt significant corporate governance changes relating to compensation of senior executives and directors, stock trading by directors, executive officers and key employees, internal and external audit functions, and financial reporting and board independence); Sprint (in addition to $50 million recovery, obtained important governance enhancements, including creation of "Lead Independent Director" and expensing of stock options); Hanover Compressor (on top of $85 million recovery, obtained the following governance enhancements, among others: direct shareholder nomination of Board and mandatory rotation of audit firm); 3COM ($259 million recovery); Chiron ($43 million recovery); MedPartners ($56 million recovery); NME ($60.75 million recovery); and TCI ($26.5 million recovery).

He is admitted to practice in California and New York.

**HELEN J. HODGES** received her Bachelor of Science degree in accounting from Oklahoma State University in 1979. While attending Oklahoma State, Ms. Hodges obtained her private pilot's license and in 1980 was a member of Oklahoma State's flying team, which won top honors at the National Intercollegiate Flying Association competition. Ms. Hodges became a certified public accountant in 1982 and received her Juris

Doctor degree from the University of Oklahoma in 1983, where she was the Managing Editor of the *Law Review*. She was admitted to the State Bars of Oklahoma in 1983 and California in 1987.

Ms. Hodges was a staff accountant with Arthur Andersen & Co. and served as the law clerk for the *Penn Square* cases in the Western District of Oklahoma. Ms. Hodges has been involved in numerous securities class actions, including: *Knapp v. Gomez*, Civ. No. 87-0067-H(M) (S.D. Cal.), in which a plaintiffs' verdict was returned in a Rule 10b-5 class action; *National Health Labs*, which was settled for $64 million; and *Thurber v. Mattel*, which was settled for $122 million.

**REED R. KATHREIN** is a partner in the San Francisco office of Lerach Coughlin. Mr. Kathrein received his Bachelor of Arts degree from the University of Miami, *cum laude*, in 1974 and received his Juris Doctor degree in 1977. He served as Editor-in-Chief of the *International Law Journal.* For the past 15 years, he has focused his practice on complex and class action litigation, principally involving securities or consumer fraud. He was lead counsel in numerous state as well as federal court actions around the country, including co-lead counsel in the *In re 3Com Sec. Litig.*, which settled for $259 million.

Mr. Kathrein publishes and lectures extensively in the fields of litigation, consumer and securities law, class actions, and international law. He annually co-chairs the Executive Enterprises program for corporate officers and counsel entitled, "Dealing With Analysts and the Press." He has spoken to the American Bar Association, the American Business Trial Lawyers Association, the Consumer Attorneys of California, the Practicing Law Institute, the Securities Law Institute, the National Investor Relations Institute, state and local bar groups, private seminar organizations and corporations. He testified before the Senate Foreign Relations Committee on behalf of the

American Bar Association in favor of advice and consent to ratification of treaties on international sales, arbitration, evidence and service of process. He testified before the California Assembly and Senate Committees on Y2K litigation, the unfair trade practice act and changes in the business judgment rule. He actively fought the passage of the Private Securities Litigation Reform Act of 1995 and the Securities Litigation Uniform Standard Act of 1998. He worked behind the scenes to shape the Sarbanes–Oxley Act of 2002 on corporate responsibility and accountability.

He served as chairman of the Private International Law Committee of the American Bar Association from 1984-1990, as a director and officer of the International Business Counsel Mid-America from 1983-1988, where he also chaired the policy committee. He acted as an advisor to the U.S. State Department's Advisory Committee on Private International Law from 1984-1990. He is a member of the executive committee of the National Association of Securities and Commercial Law Attorneys, and since 1998 has been a member of the Board of Governors of the Consumer Attorneys of California.

Formerly, Mr. Kathrein was a partner in the Chicago law firm Arnstein & Lehr, where he represented national and international corporations in litigation involving antitrust, commercial, toxic tort, employment and product and public liability disputes. Mr. Kathrein graduated from the University of Miami in 1977, where he received his Bachelor of Arts degree, *cum laude*. He served as Editor-in-Chief of the *International Law Journal*. He is admitted to the Bar of the States of Illinois (1977), Florida (1978) and California (1989).

**ERIC ALAN ISAACSON** received his A.B. *summa cum laude* from Ohio University in 1982. He earned his Juris Doctor with high honors from the Duke University School of Law in 1985 and was elected to the Order of the Coif. Mr.

Isaacson served as a Note and Comment Editor for the *Duke Law Journal*, and in his third year of law school became a member of the Moot Court Board. After graduation, Mr. Isaacson clerked for the Honorable J. Clifford Wallace of the United States Court of Appeals for the Ninth Circuit.

In 1986, Mr. Isaacson joined the litigation department of O'Melveny & Myers, where his practice included cases involving allegations of trademark infringement, unfair business practices and securities fraud. He served as a member of the trial team that successfully prosecuted a major trademark infringement action.

Mr. Isaacson has taken part in prosecuting many securities fraud class actions. He was a member of the plaintiffs' trial team in *In re Apple Computer Sec. Litig.*, Case No. C 84-20198(A)-JW (N.D. Cal.).

Since the early 1990s, his practice has focused on appellate matters in cases before the California Courts of Appeal, the California Supreme Court, the United States Court of Appeals and the United States Supreme Court. *See, e.g., In re Daou Sys., Inc., Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005); *Illinois Municipal Retirement Fund v. CitiGroup, Inc.*, 391 F.3d 844 (7th Cir. 2004); *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363 (5th Cir. 2001); *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999); *Warshaw v. Xoma Corp.*, 74 F.3d 955 (9th Cir. 1996); *Fecht v. Price Co.*, 70 F.3d 1078 (9th Cir. 1995); *Mangini v. R.J. Reynolds Tobacco Co.*, 7 Cal. 4th 1057 (1994).

Mr. Isaacson's publications include: *What's Brewing in Dura?* (coauthored with Patrick J. Coughlin and Joseph D. Daley), Loyola University Chicago Law Journal (publication forthcoming in 2005); *Duped Investors See "Dura" as Diamond in the Rough*, (coauthored with Patrick J. Coughlin and Joseph D. Daley), Los Angeles Daily Journal, July 5, 2005, p. 8; *Pleading Scienter Under Section 21D(b)(2) of*

the Securities Exchange Act of 1934: Motive, Opportunity, Recklessness and the Private Securities Litigation Reform Act of 1995 (co-authored with William S. Lerach), 33 San Diego Law Rev. 893 (1996); Securities Class Actions in the United States (co-authored with Patrick J. Coughlin), in William G. Horton & Gerhard Wegen, editors, Litigation Issues in the Distribution of Securities: An International Perspective 399 (Kluwer International/ International Bar Association, 1997); Pleading Standards Under the Private Securities Litigation Reform Act of 1995: The Central District of California's Chantal Decision (co-authored with Alan Schulman & Jennifer Wells), Class Action & Derivative Suits, Summer 1996, at 14; Commencing Litigation Under the Private Securities Litigation Reform Act of 1995 (co-authored with Patrick J. Coughlin), in Jay B. Kasner & Bruce G. Vanyo, editors, Securities Litigation 1996, 9-22 (Practicing Law Institute 1996); The Flag Burning Issue: A Legal Analysis and Comment, 23 Loyola of Los Angeles Law Rev. 535 (1990).

Mr. Isaacson also has received awards for pro bono work from the California Star Bar and the San Diego Volunteer Lawyer Program. He has filed amicus curiae briefs on behalf of a variety of organizations, including the Social Justice Committee and Board of Trustees of the First Unitarian Universalist Church of San Diego. Since January 2004, Mr. Isaacson has served as a member of the Board of Directors – and since March 2005 as Board President – of the San Diego Foundation for Change, an organization dedicated to funding and supporting community-led efforts that promote social equality, economic justice, and environmental sustainability. Its grantees have included groups as diverse as Activist San Diego, the Interfaith Committee for Worker Justice, and the San Diego Audubon Society.

Mr. Isaacson has been a member of the California Bar since 1985. He is also admitted to practice before the United States Supreme Court, the United States Courts of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, and before all federal district courts in the State of California.

**MARK SOLOMON** earned his law degrees at Trinity College, Cambridge University, England (1985), Harvard Law School (1986), and the Inns of Court School of Law, England (1987). He is admitted to the Bar of England and Wales (Barrister), Ohio and California, as well as to various U.S. Federal District and Appellate Courts. Mr. Solomon regularly represents both U.S. - and U.K. - based pension funds and asset managers in class and non-class securities litigation. Mr. Solomon is a founding partner of Lerach Coughlin.

Before studying law in England, Mr. Solomon served as a British police officer. After qualifying as a barrister, he first practiced at the international firm Jones Day in Cleveland, Ohio (1987-1990), followed by practice at the Los Angeles office of New York's Stroock & Stroock & Lavan (1990-1993). At those firms, Mr. Solomon's representations included the defense of securities fraud and other white-collar crimes, antitrust, copyright, commercial and real estate litigation and reinsurance arbitration. While practicing in Los Angeles, acting for plaintiffs, Mr. Solomon took to trial and won complex commercial contract and real estate actions in the Orange County and Los Angeles Superior Courts, respectively.

Since 1993, Mr. Solomon has spearheaded the prosecution of many significant cases. He has obtained substantial recoveries and judgments for plaintiffs through settlement, summary adjudications and trial. He litigated, through trial, In re Helionetics, where he and his trial partner, Paul Howes, won a unanimous $15.4 million jury verdict in November 2000. He has successfully led many other cases, among them: Schwartz v. TXU et al. ($150 million recovery plus significant corporate governance reforms); In re Informix Corp. Sec. Litig. ($142 million recovery); Rosen, et al. v. Macromedia,

*Inc.* ($48 million recovery); *In re Community Psychiatric Ctrs Sec. Litig.* ($42.5 million recovery); *In re Advanced Micro Devices Sec. Litig.* ($34 million recovery); *In re Tele-Communications, Inc. Sec. Litig.* ($33 million recovery); *In re Home Theater Sec. Litig.* ($22.5 million judgment); *In re Diamond Multimedia Sec. Litig.* ($18 million recovery); *Hayley, et al. v. Parker, et al.* ($16.4 million recovery); *In re Gupta Corp. Sec. Litig.* ($15 million recovery); *In re Radius Sec. Litig.*; *In re SuperMac Tech., Inc. Sec. Litig.* (combined recovery of $14 million); *Markus, et al. v. The North Face, et al.* ($12.5 million recovery); *In re Brothers Gourmet Coffees, Inc. Sec. Litig.* ($9 million recovery); *Anderson, et al. v. EFTC, et al.* ($9 million recovery); *In re Flir Sys. Inc. Sec. Litig.* ($6 million recovery); *In re Nike, Inc. Sec. Litig.* ($8.9 million recovery); *Sharma v. Insignia* ($8 million recovery); and *In re Medeva Sec. Litig.* ($6.75 million recovery).

Mr. Solomon chaired the American Bar Association Directors and Officers Liability Sub-Committee and the Accountants Liability Sub-Committee between 1996 and 2001.

**RANDI D. BANDMAN** is a partner at Lerach Coughlin whose responsibilities include the management of the Los Angeles office and the firm's Institutional Investor Department. Ms. Bandman received her Juris Doctor degree from the University of Southern California in and her Bachelor of Arts degree in English from the University of California at Los Angeles. Ms. Bandman's practice at Lerach Coughlin has focused on securities and consumer class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as aircraft manufacturing, battery technology, and computer software. These cases, which yielded significant recoveries for the plaintiffs, were against such companies as: WorldCom ($650 million); National Health Labs ($64 million); Sybase ($28.5 million) and Unocal ($47.5 million). Ms. Bandman was responsible for running one of the largest class actions in

the country over a four-year period against the Boeing Company, which settled for more than $90 million. Ms. Bandman was also an early member of the team that directed the prosecution of the cases against the tobacco companies.

Using her extensive experience in asserting claims for injured investors, Ms. Bandman lectures and advises public and union funds both domestically and internationally on their options for seeking redress for losses due to fraud sustained in their portfolios. Ms. Bandman is currently interfacing with numerous public and Taft-Hartley pension funds, including those workers for various States and Municipalities, the Entertainment Industry, Sheetmetal Workers, Construction, Air Conditioning, Food and Hospitality, and Plumbers and Teamsters.

Ms. Bandman has served as a lecturer on numerous matters concerning securities litigation to attorneys for continuing legal education, as well as a panelist for the Practicing Law Institute.

**THEODORE J. PINTAR** received his Bachelor of Arts degree from the University of California at Berkeley in 1984 where he studied Political Economies of Industrial Societies. Mr. Pintar received his Juris Doctor degree from the University of Utah College of Law in 1987, where he was Note and Comment Editor of the *Journal of Contemporary Law* and the *Journal of Energy Law and Policy*. Formerly, Mr. Pintar was associated with the firm of McKenna, Conner & Cuneo in Los Angeles, California, where he focused in commercial and government contracts defense litigation. Mr. Pintar is co-author of *Assuring Corporate Compliance with Federal Contract Laws and Regulations*, Corporate Criminal Liability Reporter, Vol. 2 (Spring 1988).

Mr. Pintar participated in the successful prosecution of numerous securities fraud class actions and derivative actions, including

participation on the trial team in *Knapp v. Gomez*, Case No. 87-0067-H(M) (S.D. Cal.), which resulted in a plaintiff's verdict. Mr. Pintar also participated in the successful prosecution of numerous consumer class actions, including: (i) actions against major life insurance companies such as Manulife ($555 million settlement value) and Principal Life Insurance Company ($379 million settlement value); (ii) actions against major homeowners insurance companies such as Allstate ($50 million settlement) and Prudential Property and Casualty Co. ($7 million settlement); and (iii) actions against Columbia House ($55 million settlement value) and BMG ($10 million settlement value), a direct marketer of CDs and cassettes.

Mr. Pintar is a member of the State Bar of California and the San Diego County Bar Association.

**JOY ANN BULL** received her Juris Doctor degree, *magna cum laude*, from the University of San Diego in 1988. She was a member of the University of San Diego National Trial Competition Team and the *San Diego Law Review*. Ms. Bull focuses on the litigation of complex securities and consumer class actions. For nine years, Ms. Bull has concentrated her practice in negotiating and documenting complex settlement agreements and obtaining the required court approval of the settlements and payment of attorneys' fees. These settlements include: *In re Dole Shareholders' Litig.*, Case No. BC281949 (Cal. Super. Ct., Los Angeles County) ($172 million recovery plus injunctive relief); *Lindmark v. Am. Express*, Case No. 00-8658-JFW(CWx) (C.D. Cal.) ($38 million cash payment plus injunctive relief); *In re Disposable Contact Lens Antitrust Litig.*, MDL No. 1030 (M.D. Fla.) (cash and benefits package over $90 million plus injunctive relief); *In re LifeScan, Inc. Consumer Litig.*, Case No. C-98-20321-JF(EAI) (N.D. Cal.) ($45 million cash recovery); *In re Bergen Brunswig Corp. Sec. Litig.*, Case No. SACV-99-1305-AHS(ANx) (C.D. Cal.) ($27.9 million cash recovery); *Hall v.*

*NCAA*, Case No. 94-2392-KHV (D. Kan.) ($54.4 million cash recovery); *In re Glen Ivy Resorts, Inc.*, Case No. SD92-16083MG (Banker. Ct. C.D. Cal.) ($31 million cash recovery); and *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) (N.D. Cal.) ($34 million cash recovery).

**BONNY E. SWEENEY** is a partner in the San Diego office of Lerach Coughlin Stoia Geller Rudman & Robbins LLP, where she specializes in antitrust and unfair competition class action litigation. She is currently Chair of the Antitrust and Unfair Competition Law Section of the State Bar of California, and has served on the Executive Committee of the Section since 2002.

Bonny is co-lead counsel in several multi-district antitrust class actions pending in federal courts around the country, including *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation* (Eastern District of New York), *In re Carbon Black Antitrust Litigation* (District of Massachusetts), and *In re Currency Conversion Fee Antitrust Litigation* (Southern District of New York), and serves on the Plaintiffs' Executive Committee in *In re Dynamic Random Access Memory (DRAM) Antitrust Litigation* (Northern District of California). In *Currency Conversion*, Bonny helped recover $336 million for class members through a proposed settlement that is awaiting approval from the federal court. In *DRAM*, the federal court recently approved a partial settlement of more than $160 million.

Bonny was one of the trial lawyers in *Law v. NCAA/Hall v. NCAA/Schreiber v. NCAA* (District of Kansas), in which the jury awarded $67 million to three classes of college coaches. She has participated in the successful prosecution and settlement of numerous other antitrust and unfair competition cases, including *In re LifeScan, Inc. Consumer Litigation* (Northern District of California), which settled for $45 million; the Bank Privacy Cases (San Francisco

Superior Court), which resulted in better bank privacy policies, funding to non-profit groups advocating for privacy rights, and benefits to credit cardholders, *In re NASDAQ Market-Makers Antitrust Litigation* (Southern District of New York), which settled for $1.027 billion, and *In re Airline Ticket Commission Antitrust Litigation* (District of Minnesota), which settled for more than $85 million.

In 2003, Bonny was honored with the Wiley M. Manuel Pro Bono Services Award and the San Diego Volunteer Lawyer Program Distinguished Service Award.  In addition to her service for the Antitrust and Unfair Competition Law Section, Bonny contributes to legal education by speaking on antitrust topics, California's unfair competition law, and complex litigation matters.

Bonny graduated *summa cum laude* from Case Western Reserve University School of Law in 1988, where she served as editor of the *Law Review* and was elected to the Order of the Coif.  She earned a Master of Arts degree from Cornell University in 1985, a Chinese Language Certificate from the Beijing Language Institute in 1982, and a Bachelor of Arts degree from Whittier College in 1981.

A litigator since 1988, Bonny is admitted to practice in California and Massachusetts, and is a member of the Antitrust Section of the American Bar Association and the Antitrust and Unfair Competition Law Section of the California Bar Association.

**TRAVIS E. DOWNS III** received his Bachelor of Arts degree in History, *cum laude*, from Whitworth College in 1985, and received his Juris Doctor degree from University of Washington School of Law in 1990.  Mr. Downs concentrates his practice in securities class actions and shareholders' derivative actions.

Mr. Downs is responsible for the prosecution and recovery of significant settlements in the following cases: *In re Informix Corp. Sec. Litig.*, Case No. C-97-1289-CRB (N.D. Cal.) ($137.5 million recovery); *In re MP3.com, Inc. Sec. Litig.*, Case No. 00-CV-1873-K(NLS) (S.D. Cal.) ($36 million recovery); *In re Conner Peripherals, Inc. Sec. Litig.*, Case No. C-95-2244-MHP (N.D. Cal.) ($26 million recovery); *In re Silicon Graphics, Inc. II Sec. Litig.*, Case No. 97-4362-SI (N.D. Cal.) ($20.3 million recovery); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.) ($15 million recovery); *In re Sony Corp. Sec. Litig.*, Case No. CV-96-1326-JGD(JGx) (C.D. Cal.) ($12.5 million recovery); *In re Veterinary Ctrs. of Am., Inc. Sec. Litig.*, Case No. 97-4244-CBM(MCx) (C.D. Cal.) ($6.75 million recovery); *In re JDN Realty Corp. Derivative Litig.*, Case No. 00-CV-1853 (N.D. Ga.) (obtained extensive corporate governance enhancements); *In re Hollywood Entertainment Corp. Sec. Litig.*, Case No. 95-1926-MA (D. Or.) ($15 million recovery); *In re Legato Sys., Inc. Derivative Litig.*, Case No. 413050 (Cal. Super. Ct., San Mateo Cty.) (obtained extensive corporate governance enhancements); and *In re Flagstar Cos., Inc. Derivative Litig.*, Case No. 736748-7 (Cal. Super. Ct., Alameda County) (obtained extensive corporate governance enhancements).

Mr. Downs is a member of the Bar of the State of California and is also admitted to practice before the district courts of the Central, Northern and Southern Districts of California.  He is also a member of the American Bar Association and the San Diego County Bar Association.   Mr. Downs lectures and participates in professional education programs.

**G. PAUL HOWES**, after Marine Corps Vietnam service, received his Bachelor of Arts degree with distinction from the University of New Mexico, was elected to Phi Beta Kappa and Phi Kappa Phi, and was the tympanist for the New Mexico Symphony Orchestra.  He received his Juris Doctor degree and Masters in Public Administration from the University of Virginia.  He served as a Special Assistant to the Director of the FBI, Judge William H. Webster, and then

as a law clerk to Judge Roger Robb, United States Circuit Court of Appeals for the District of Columbia Circuit. He was an ABC News correspondent for the Washington Bureau and then served for 11 years as an Assistant U.S. Attorney for the District of Columbia, primarily prosecuting complex drug organization homicides. He is a member of the New Mexico, District of Columbia and California Bars.

**SPENCER A. BURKHOLZ** received his Bachelor of Arts degree in Economics, *cum laude*, from Clark University in 1985, where he was elected to Phi Beta Kappa, and received his Juris Doctor degree from University of Virginia School of Law in 1989. Mr. Burkholz concentrates his practice in securities class actions, and has recovered settlements in the following cases: *3Com* ($259 million); *Vesta Ins.* ($78 million); *Samsonite* ($24 million); *Emulex* ($39 million); *Mossimo* ($13 million); *Triteal* ($13.8 million); *Price Co.* ($15 million); *Stratosphere Corp.* ($9 million); and *IMP* ($9.5 million).

Mr. Burkholz was also on the trial team in *Long v. Wells Fargo*. Mr. Burkholz is currently representing large public and multi-employer pension funds seeking to recover for their investments in WorldCom bonds. Mr. Burkholz is a member of the California Bar and has been admitted to practice in numerous federal courts throughout the country.

**TIMOTHY G. BLOOD** graduated *cum laude* and with honors in Economics from Hobart College in 1987 and the National Law Center of George Washington University in 1990. He was elected to Phi Beta Kappa, Omicron Delta Epsilon (Economics) and the Moot Court Board (first year honors).

Mr. Blood focuses on consumer fraud and unfair competition litigation with a focus on actions brought by policyholders against life and property and casualty insurers for deceptive sales practices, racial discrimination and systematic failures in claims adjustment.

Mr. Blood has been involved in a number of cases that have resulted in significant settlements, including *McNeil v. Am. Gen. Life & Accident Ins. Co.* ($234 million), *Lee v. USLife Corp.* ($148 million), *Garst v. Franklin Life Ins. Co.* ($90.1 million), *In re Gen. Am. Sales Practices Litig.* ($67 million), *Williams v. United Ins. Co. of Am.* ($51.4 million); and *Sternberg v. Apple Computer, Inc.* ($50 million).

Mr. Blood is also responsible for several precedent-setting appellate decisions, including *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004). Mr. Blood is a frequent lecturer on class action procedure and consumer fraud issues and is a member of the Board of Governors of the Consumer Attorneys of California.

Mr. Blood is admitted to practice in California and in the U.S. Courts of Appeals for the Fifth, Sixth, Eighth, Ninth and Eleventh Circuits and the U.S. District Courts for the Southern, Central, Eastern and Northern Districts of California. He is a member of the San Diego County and American Bar Associations, the State Bar of California, the Association of Business Trial Lawyers, the Association of Trial Lawyers of America and the Consumer Attorneys of California.

**ARTHUR C. LEAHY** graduated with a Bachelor of Arts degree in Business from Point Loma College in 1987. In 1990, Mr. Leahy graduated *cum laude* and received a Juris Doctor degree from the University of San Diego School of Law, where he served as Managing Editor of the Law Review. While in law school, Mr. Leahy authored an article published in the *San Diego Law Review* and other articles published in another law journal. In addition, he served as a judicial extern for the Honorable J. Clifford Wallace of the U.S. Court of Appeals for the Ninth Circuit. After law school, Mr. Leahy served as a judicial law clerk for the Honorable Alan C. Kay of the U.S. District Court for the District of Hawaii.

For eight years, Mr. Leahy has worked on securities fraud and consumer class actions in which his clients recovered millions of dollars. Mr. Leahy is a member of the California Bar and has been admitted in numerous federal courts throughout the country.

**FRANK J. JANECEK, JR.** received his Bachelor of Science degree in Psychology from the University of California at Davis in 1987, and his Juris Doctor degree from Loyola Law School in 1991. He is admitted to the Bar of the State of California, the district courts for all districts California, and to the U.S. Court of Appeals for the Sixth, Ninth and Eleventh Circuits. For 11 years, Mr. Janecek has practiced in the area of consumer, Proposition 65, taxpayer and tobacco litigation. He has participated as a panelist and a speaker in continuing legal education programs relating to California's Unfair Competition laws, public enforcement tobacco litigation and challenging unconstitutional taxation schemes.

Mr. Janecek litigated several Proposition 65 actions, including *People ex. rel. Lungren v. Superior Court*, 14 Cal. 4th 294 (1996), which was jointly prosecuted with the Attorney General's office. These actions resulted in the recovery of more than $10 million in disgorgement and/or civil penalties and warnings to consumers of their exposure to cancer-causing agents and reproductive toxins. Mr. Janecek chaired several of the litigation committees in California's tobacco litigation, which resulted in the $25.5 billion recovery for California and its local entities. Mr. Janecek also handled a constitutional challenge to the State of California's Smog Impact Fee, in the case *Ramos v. Dep't of Motor Vehicles*, Case No. 95AS00532 (Sacramento Super. Ct.). As a result of the *Ramos* litigation, more than a million California residents received full refunds, plus interest, totaling $665 million.

Mr. Janecek is the co-author with Patrick J. Coughlin of "A Review of R.J. Reynolds' Internal Documents Produced in *Mangini v. R.J.*

*Reynolds Tobacco Co*., No. 939359 - The Case that Rid California and the American Landscape of 'Joe Camel'" (January 1998), which, along with more than 60,000 internal industry documents, was released to the public through Congressman Henry Waxman. He is also the author of *California's Unfair Competition Act and Its Role in the Tobacco Wars* (Fall 1997). Mr. Janecek is a member of the American Bar Association, the California Bar Association, the San Diego County Bar Association and the Consumer Attorneys of California and San Diego.

**DAVID J. GEORGE** earned his Bachelor of Arts degree in Political Science from the University of Rhode Island, *summa cum laude*. Mr. George then graduated at the top of his class at the University of Richmond School of Law. At the University of Richmond, Mr. George was a member of *Law Review*, was the President of the McNeill Law Society/Order of the Coif, and earned numerous academic awards, including outstanding academic performance in each of his three years there and outstanding graduate.

Before joining Lerach Coughlin, he was a partner in the Boca Raton office of Geller Rudman, PLLC. While at Geller Rudman, Mr. George, a zealous advocate of shareholder rights, has been lead and/or co-lead counsel with respect to various securities class action matters, including: *In re Cryo Cell Int'l, Inc. Sec. Litig.* (M.D. Fla.); *In Re Shaw Group Sec. Litig.* (E.D. La.); *In Re Teco Energy Sec. Litig.* (M.D. Fla.); and *In Re Mannatech, Inc. Sec. Litig.*, (D. N.M.). Mr. George has also acted as lead counsel in numerous consumer class actions, including *Lewis v. Labor Ready, Inc.* (S.D. Fla.), and *Flaxman v. Geico* (S.D. Fla.), among many others. Before joining Geller Rudman, Mr. George spent more than a decade as a commercial litigator with two of the largest corporate law firms in the United States. During that time, Mr. George aggressively prosecuted and defended a wide array of complex commercial litigation matters,

including securities class action matters, non-compete litigation, fraud claims, and real estate-based litigation matters.

Mr. George is licensed to practice law in the state courts of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida. He is currently or has been a member of the American Bar Association, the Academy of Florida Trial Lawyers, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**SANFORD SVETCOV** is a partner with the Appellate Practice Group of Lerach Coughlin. He has briefed and argued more than 300 appeals in state and federal court, including: *Braxton v. Mun. Court*, 10 Cal. 3d 138 (1973) (First Amendment); *Procunier v. Navarette*, 434 U.S. 555 (1978) (civil rights); *Parker Plaza West Partners v. UNUM Pension & Ins. Co.*, 941 F.2d 349 (5th Cir. 1991) (real estate); *Catellus Dev. Corp. v. United States*, 34 F.3d 748 (9th Cir. 1994) (CERCLA); *United States. v. Hove*, 52 F.3d 233 (9th Cir. 1995) (criminal law); *Kelly v. City of Oakland*, 198 F.3d 779 (9th Cir. 1999) (employment law, same gender sexual harassment); *United States v. Henke*, 222 F.3d 633 (9th Cir. 2000) (securities fraud); *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209 (11th Cir. 2001) (civil rights); and *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002) (securities fraud).

Mr. Svetcov's professional appellate litigation experience includes securities fraud litigation, CERCLA, CEQA, commercial litigation, Clean Water Act, Civil Rights Act litigation, toxic torts, federal criminal law, California writ practice, employment law and ERISA.

Mr. Svetcov was a partner with the firm of Landels Ripley & Diamond, LLP, in San Francisco, from 1989 to 2000. His extensive legal experience includes service as: Chief, Appellate Section, U.S. Attorney's Office, San Francisco, 1984-1989; Attorney-in-Charge, Organized Crime Strike Force, San Francisco,

1981-1984; Chief Assistant U.S. Attorney, San Francisco, 1978-1981; Deputy Attorney General, State of California, 1969-1977; Legal Officer, U.S. Navy, VT-25, Chase Field, Beeville, Texas, 1966-1969; and Deputy Legislative Counsel, Legislature of California, Sacramento, 1965-1966.

Mr. Svetcov is certified as a Specialist in Appellate Practice by the State Bar of California Board of Legal Specialization. He was selected by the Attorney General for the Department of Justice's John Marshall Award for Excellence in Appellate Advocacy in 1986 and is a member and past President (1998) of the American Academy of Appellate Lawyers, and a member of the California Academy of Appellate Lawyers.

In 1999, Chief Justice Rehnquist appointed Mr. Svetcov to a three-year term on the Federal Appellate Rules Advisory Committee. He is also an ex-officio member of the Ninth Circuit Rules Advisory Committee on Rules and Internal Operating Procedures. His other memberships and service commitments to the legal profession include: the California Academy of Appellate Lawyers; the Bar Association of San Francisco (Appellate Courts section); the American Bar Association (Appellate Judges Conference) Committee on Appellate Practice; and the Northern California Federal Bar Association, Board of Directors.

Mr. Svetcov earned his Bachelor of Arts degree, *cum laude*, from Brooklyn College in 1961 and his Juris Doctor degree from the University of California at Berkeley in 1964. He is a member of the Bars of the State of California, the U.S. Supreme Court, the Court of Appeals, Fifth, Eighth, Ninth and Eleventh Circuits, and the U.S. District Court, Northern District of California.

For two decades, he as been active as a teacher and lecturer at continuing legal education programs, including those of the ABA Appellate Practice Institutes (1990-2000); the

Ninth Circuit Federal Bar Association Appellate Practice Seminar, and the N.I.T.A. Appellate Advocacy Seminar and Fifth Circuit Bar Association Appellate Practice Seminars (1991-1999). He has served as an adjunct professor at Hastings College of Law and an instructor in Appellate Advocacy at the U.S. Attorney General's Advocacy Institute (1980-1989).

Mr. Svetcov is also active in community affairs. He has been a member of the San Francisco Jewish Community Relations Council since 1982, its president from 1991-1992, and during the years 1993-1995, he also served on the Northern California Hillel Council.

**MICHAEL J. DOWD** graduated from Fordham University, *magna cum laude*, with a Bachelor of Arts degree in History and Latin in 1981. While at Fordham, he was elected to Phi Beta Kappa. He earned his Juris Doctor degree from the University of Michigan School of Law in 1981 and entered private practice in New York that same year. He was admitted to practice in New York in 1985 and in California in 1988.

Mr. Dowd served as an Assistant U.S. Attorney in the Southern District of California from 1987-1991 and again from 1994-1998. As an Assistant U.S. Attorney, Mr. Dowd obtained extensive trial experience, including the prosecution of bank fraud, bribery, money laundering and narcotics cases. He is a recipient of the Director's Award for Superior Performance as an Assistant U.S. Attorney. Mr. Dowd has been responsible for prosecuting complex securities cases and obtaining recoveries for investors, including cases involving WorldCom, Qwest, Vesta, U.S. West, Safeskin and Bergen Brunswig. Most recently, Mr. Dowd was the lead lawyer for the Lerach Coughlin trial team in *In re AT&T Corp. Sec. Lit.*, which was tried in the District of New Jersey, and settled after two weeks of trial for $100 million. Mr. Dowd also participated in the firm's tobacco cases.

**DAVID C. WALTON** earned his Bachelor of Arts degree in Accounting from the University of Utah and his Juris Doctor degree from the University of Southern California Law Center in 1993. While there, he was a staff member of the *Southern California Law Review* and a member of the Hale Moot Court Honors Program.

Mr. Walton is a member of the Bar of California. Mr. Walton, a Certified Public Accountant (California, 1992) and Certified Fraud Examiner, who is also fluent in Spanish, focuses on class actions on behalf of defrauded investors, particularly in the area of accounting fraud. He has investigated and participated in the litigation of many large accounting scandals, including Enron, WorldCom, Informix, HealthSouth, Dynegy and Dollar General. In 2003-2004, Mr. Walton served as a member of the California Board of Accountancy which is responsible for regulating the accounting profession in California.

**RANDALL H. STEINMEYER** earned his Bachelor of Science degree from the University of Southern California in 1993, and his Juris Doctor degree, *cum laude*, from Hamline University School of Law in 1996, where he was a member of the *Hamline Law Review*. He is the author of *The Interrelationship Between NASD Arbitrations and NASD Disciplinary Proceedings*, 281 Practicing Law Institute (1998). Formerly, Mr. Steinmeyer headed the securities litigation department of Reinhardt & Anderson in St. Paul, Minnesota. Mr. Steinmeyer is a member of the Bar of Minnesota and the U.S. District Court for the District of Minnesota. Mr. Steinmeyer is a former securities broker and held a Series 7 license with the National Association of Securities Dealers.

In 2003, he was a guest lecturer at Oxford University on the impact of corporate and broker dealer fraud on the investment community. He also sits on the Board of Directors of the Hedge Fund Association. He

has authored numerous articles on the hedge fund industry and offshore financial community.

Mr. Steinmeyer focuses on class actions on behalf of defrauded investors. Mr. Steinmeyer was appointed lead counsel in several large and complex class actions which resulted in the recovery of tens of millions of dollars for aggrieved investors. Mr. Steinmeyer's reported cases include: *Ganesh LLC v. Computer Learning Ctrs.*, 1998 WL 892622 (E.D. Va. 1998); *Gart v. Electroscope*, 1998 WL 757970 (D. Minn. 1998); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn. 1998); and *In re Transcrypt Int'l Sec. Litig.*, Case No. 4:98CV3099, 1999 U.S. Dist. LEXIS 17540 (D. Neb. Nov. 4, 1999).

**JEFFREY W. LAWRENCE** received his Bachelor of Arts degree, *magna cum laude*, from Tufts University in 1976. In 1979, Mr. Lawrence graduated *magna cum laude* with a Juris Doctor degree from Boston School of Law. He was a staff member of the *Boston University Law Review* from 1977-78, and its editor from 1978-79.

From September 1979 to September 1980, Mr. Lawrence served as a law clerk to the Honorable Walter Jay Skinner, U.S. District Court, District of Massachusetts. He was admitted to the Massachusetts Bar in 1979, and to the Bar of California in 1991. He is licensed to practice before the U.S. Court of Appeals, First and Ninth Circuits, the U.S. District Court, District of Massachusetts and the Northern District of California.

From 1983-1994, Mr. Lawrence was an Assistant U.S. Attorney, Criminal Division, where he obtained extensive trial experience in white-collar crimes, ranging from money-laundering to stock fraud.

**HENRY ROSEN** obtained his Bachelor of Arts degree in 1984 from the University of California, after attending American College in Paris. In 1988, Mr. Rosen received his Juris

Doctor degree from the University of Denver, where he was Editor-in-Chief for the *University of Denver Law Review*. Mr. Rosen served as Judicial Law Clerk to the Honorable Jim R. Carrigan, U.S. District Court, District of Colorado, from 1989 to 1990. He is a member of the firm's Hiring Committee and is also a member of the firm's Technology Committee, which focuses on applications to digitally manage documents produced during litigation and internally generate research files.

Major clients include Minebea Co., Ltd., a Japanese manufacturing company, represented in a securities fraud arbitration against a U.S. investment bank. Mr. Rosen has significant experience prosecuting every aspect of securities fraud class actions and has obtained hundreds of millions of dollars on behalf of defrauded investors. Prominent cases include: *In re Storagetek Sec. Litig.*, Case No. 92-B-750 (D. Colo.); *In re Access HealthNet Sec. Litig.*, Case No. SACV-96-1250-GLT(EEx) and Case No. SACV-97-191-GLT(EEx) (C.D. Cal.); *In re Valence Sec. Litig.*, Case No. C-95-20459-JW(EAI) (N.D. Cal.); *In re J.D. Edwards Sec. Litig.*, Case No. 99-N-1744 (D. Colo.); *In re Bergen Brunswig Sec. Litig.* and *Bergen Brunswig Capital Litig.*, Case No. SACV-99-1462-AHS(ANx) (C.D. Cal.); *In re Advanced Lighting Sec. Litig.*, No. 1:99CV8936 (N.D. Ohio); and *In re Safeskin Sec. Litig.*, Case No. 99cv454-BTM(LSP) (S.D. Cal.).

Mr. Rosen is admitted to the California Bar (1991) and the Colorado Bar (1988). He is a member of the State Bar of California, the American Bar Association (Litigation Section), the Association of Trial Lawyers of America, the California Trial Lawyers of America, California Trial Lawyers Association and the San Diego Trial Lawyers Association.

**RANDALL J. BARON** was born in Albuquerque, New Mexico in 1964. Mr. Baron received his Bachelor of Arts degree from University of Colorado at Boulder in 1987, and his Juris Doctor degree, *cum laude*, from University of

San Diego School of Law in 1990. He was a member of the *San Diego Law Review* from 1988-1989. Mr. Baron was admitted to the California Bar in 1990 and the Colorado Bar in 1993. Since 1997, Mr. Baron is licensed to practice in Colorado State Court as well as the U.S. District Court for the Southern, Northern and Central Districts of California, as well as the District of Colorado.

Formerly, Mr. Baron served as a Deputy District Attorney in Los Angeles County. From 1990-1994, he was a trial deputy in numerous offices throughout Los Angeles County, where he tried over 70 felony cases. From 1990-1994, Mr. Baron was part of the Special Investigation Division of the Los Angeles District Attorneys office, where he investigated and prosecuted public corruption cases. He concentrates his practice in securities litigation and actions for breach of fiduciary duty.

**EDWARD P. DIETRICH** was born in White Plains, New York on October 14, 1961. Mr. Dietrich received his Bachelor of Arts degree from Skidmore College in 1983. He received his Juris Doctor degree from George Washington University in 1986 and was elected to Phi Beta Kappa. He was a member of the Moot Court Board. He was admitted to the New York State Bar in 1987. Mr. Dietrich is able to practice in U.S. District Court, Southern and Eastern Districts of New York, U.S. District Court, Northern District of California (1994), California and U.S. District Courts, Central District of California (1995), U.S. District Court, Southern and Eastern Districts of California, U.S. District Court, District of Arizona and U.S. Court of Appeals, Ninth Circuit (1997).

**JACK REISE** earned his Bachelor of Arts degree in History from Binghamton University. He graduated *cum laude* from University of Miami School of Law where he was an Associate Editor on the *University of Miami Inter-American Law Review* and was also the recipient of the American Jurisprudence Book Award in Contracts.

Since he began practicing law, Mr. Reise has been devoted to protecting the rights of those who have been harmed by corporate misconduct. Mr. Reise started his legal career representing individuals suffering the debilitating affects of asbestos exposure back in the 1950s and 1960s.

Mr. Reise has since concentrated his practice on class action litigation, including securities fraud, shareholder derivative actions, consumer protection, unfair and deceptive insurance practices and antitrust. Prior to joining the firm, Mr. Reise was a partner at the law firm of Cauley Geller.

A substantial portion of Mr. Reise's practice is devoted to representing shareholders in actions brought under the federal securities laws. He is currently serving as lead counsel in more than a dozen cases nationwide, including *Abrams v. Van Kampen Funds*, Case No. 01 C 7538 (N.D. Ill.) (involving a mutual fund that is charged with improperly valuating its net asset value), and *In re NewPower Holdings Sec. Litig.*, Case No. 02 Civ. 1550 (CLB) (S.D.N.Y.), which settled with several of the defendants for $26 million.

Mr. Reise has been admitted to the Florida Bar since 1995. He is also admitted to practice before United States Courts of Appeals for the First, Fourth and Eleventh Circuits, as well as the Southern and Middle District Courts of Florida.

**PAMELA M. PARKER** received her Bachelor of Arts degree in Political Science and French, with a concentration in International Politics, from the State University of New York at Binghamton, and was elected to Phi Beta Kappa. Ms. Parker received a Juris Doctor degree from Harvard Law School, *cum laude,* in 1982. While at Harvard, Ms. Parker was an Articles Editor of the *Civil Rights/Civil Liberties Law Review.* After graduation, she served as a law clerk to the Honorable Frank J. Battisti, Chief Judge of the U.S. District Court, Northern

District of Ohio. Upon leaving the clerkship, Ms. Parker worked as an associate with the New York firm of Paul Weiss Rifkind Wharton & Garrison. In 1988, Ms. Parker became associated with the New York firm of Lankenau Kovner & Bickford, concentrating her practice in representation of publications, libel defense and First Amendment law.

For 13 years, Ms. Parker's practice has included appellate matters and environmental, consumer fraud and securities fraud litigation. Ms. Parker participated in the successful prosecution of several important actions, including: *In re The Exxon Valdez*, Case No. A89-095 (D. Alaska), in which she served as a member of the trial support team, and which resulted in a $5 billion jury verdict; *Pinney v. Great Western Bank, et al.*, Case No. CV-95-2100-I(RNBx) (C.D. Cal.), in which she served as one of the principal attorneys for plaintiffs and which resulted in a settlement of $17.2 million; and *Does I, et al. v. The Gap, Inc., et al.*, Case No. 01 0031 (D. N. Mariana Islands), in which she was the lead prosecuting attorney and which resulted in a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories. In July 2003, Ms. Parker was named Trial Lawyer of the Year by the Trial Lawyers for Public Justice in recognition of her work on the case in the Northern Mariana Islands.

Ms. Parker is a member of the Appellate Practice Group of Lerach Coughlin. She has worked on a variety of appellate matters before numerous courts, including the U.S. Courts of Appeal for the Fifth, Sixth, Ninth and Tenth Circuits and the appellate courts of California, Alabama, Ohio and Tennessee. She is a Lawyer Representative to the Ninth Circuit Judicial Conference.

Ms. Parker is admitted to practice in California and New York. She has been an active member of the Federal Bar Association, the San Diego County Bar Association and the Lawyers Club of San Diego, and also holds memberships with the American Bar Association and California Women Lawyers. She sits on the Board of Directors for the Legal Aid Society of San Diego.

**STEVEN W. PEPICH** received his Bachelor of Science degree in Economics from Utah State University in 1980 and his Juris Doctor degree from De Paul University in 1983. Mr. Pepich is admitted to practice before the Courts of California and the District Court for the Southern, Central, Eastern and Northern Districts of California. Mr. Pepich has been engaged in a wide variety of civil litigation, including consumer fraud, mass tort, royalty, civil rights, human rights, ERISA and employment law actions, as well as many securities and corporate litigations. He was part of the plaintiffs' trial team in *Mynaf v. Taco Bell Corp.*, which settled after two months of trial on terms favorable to two plaintiff classes of restaurant workers, for recovery of unpaid wages. He was also a member of the plaintiffs' trial team in *Newman v. Stringfellow* where, after a nine-month trial in Riverside, California, all claims for exposure to toxic chemicals were ultimately resolved for $109 million.

Mr. Pepich has also participated in the successful prosecution of numerous securities fraud class actions, including: *Gohler v. Wood*, Case No. 92-C-181 ($17.2 million recovery); *In re Advanced Micro Devices Sec. Litig.*, Case No. C-93-20662-RPA(PVT) ($34 million recovery); *In re Catalyst Semiconductor Sec. Litig.*, Case No. C-93-2096 ($15 million recovery); *In re Gupta Corp. Sec. Litig.,* Case No. C-94-1517 ($6 million recovery); *In re Louisiana-Pacific Corp. Sec. Litig.*, Case No. C-95-707 ($65 million recovery); and *In re Boeing Sec. Litig.*, Case No. C-97-1715Z ($92 million recovery). Mr. Pepich is a member of the American Bar Association, the San Diego Bar Association and the Association of Business Trial Lawyers of San Diego. Mr. Pepich co-authored with William S. Lerach *Personal Liability Considerations of Officers*

and Directors in the Takeover Context, CEB, Business Law Institute, April 1986, and *New Diligence Considerations in the Context of the Federal Securities Laws*, CEB Fourth Annual Securities Institute, May 1986.

**LAURA ANDRACCHIO** focuses primarily on litigation under the federal securities laws. Ms. Andracchio has litigated dozens of cases against public companies in federal and state courts throughout the country, and has contributed to hundreds of millions of dollars in recoveries for injured investors. Ms. Andracchio also led the litigation team in *Brody V Hellman*, a case against Qwest and former directors of U.S. West to recover an unpaid dividend, recovering $50 million. In late 2004, Ms. Andracchio was a lead member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in district court in New Jersey, and which settled after two weeks of trial for $100 million. Prior to trial, Ms. Andracchio was responsible for managing and litigating the case, which was pending for four years. Ms. Andracchio was also the lead litigator in *In re P-Com, Inc. Securities Litigation*, which resulted in a $16 million recovery for the plaintiff class; *In re Urohealth, Inc.*, yielding a $7 million recovery, and in a case against Intel under the Williams Act , which settled for $4.5 million. In addition, Ms. Andracchio was a member of the litigation team in several other actions that have yielded substantial recoveries for investors of public companies, including Oakley, Inc. ($16 million), MTel, Inc. ($10 million) and Trimble Navigation ($7 million).

Ms. Andracchio received her Bachelor of Arts degree from Bucknell University in 1986, and her Juris Doctor degree with honors from Duquesne University School of Law in 1989. While at Duquesne, Ms. Andracchio was elected to the Order of Barristers and represented the Law School in the National Samuel J. Polsky Appellate Moot Court competition, in which she placed as a finalist, and in the regional Gourley Cup Trial Moot Court competition.

**JOHN K. GRANT** was born in Provo, Utah in 1961. Mr. Grant received his Bachelor of Arts degree from Brigham Young University in 1988 and his Juris Doctor degree from the University of Texas at Austin in 1990. Mr. Grant was admitted to the California Bar in 1994.

**KATHLEEN A. HERKENHOFF** received a Bachelor of Arts in English Literature from the University of California at Berkeley in 1989 and received a Juris Doctor degree from Pepperdine University School of Law in 1993. While at Pepperdine, she received American Jurisprudence Awards in Constitutional Law and Agency-Partnership Law. After graduation from Pepperdine, Ms. Herkenhoff was an enforcement attorney with the U.S. Securities and Exchange Commission.

Ms. Herkenhoff is a 1993 admittee to the State Bar of California and has been admitted to practice before the U.S. District Courts for the Northern, Central, Eastern and Southern Districts of California. Ms. Herkenhoff has successfully prosecuted several complex securities class actions, including obtaining a $122 million settlement against Mattel, Inc. and several of its former officers and directors.

**KIMBERLY C. EPSTEIN** is a partner with the San Francisco office of Lerach Coughlin. Having been associated with the Lerach Coughlin lawyers since 1994, Ms. Epstein's practice has focused on securities class actions in both state and federal court. She has represented shareholders of companies in industries as diverse as microchip developers, pump and valve manufacturers and golf apparel. Over the past decade, Ms. Epstein has litigated cases that have recovered tens of millions of dollars on behalf of defrauded shareholders.

Ms. Epstein obtained her Juris Doctor degree from University of San Francisco in 1993, where she was a joint J.D./MBA candidate, and her Bachelor of Science degree in Business Administration from California State University at Hayward in 1988. Prior to her employment

with the securities litigation bar, she clerked for the Honorable William J. Cahill. She is licensed to practice in the state of California and before the U.S. District Courts in Northern and Central California, Arizona and the U.S. Court of Appeals, Ninth Circuit.

**MICHELLE M. CICCARELLI** represents workers, consumers and shareholders in a broad range of complex class action litigations for securities fraud, fraudulent business practices, human rights abuses, labor and employment violations, as well as derivative litigation for breaches of fiduciary duties by corporate officers and directors. She is the Editor of Lerach Coughlin's *Corporate Governance Bulletin* and *Taking Action - Fighting Corporate Corruption*, and the author of *Improving Corporate Governance through Litigation Settlements*, Corporate Governance Review, 2003. She is a frequent lecturer on securities fraud, corporate governance, and other issues of import to institutional investors.

She participated in the successful prosecution of several important actions, including *Does I, et al. v. The Gap, Inc. et al.*, Case No. 01-0031 (D N. Mariana Islands), in which she was one of the lead litigators, spending several months on Saipan working with clients, investigating claims, and obtaining discovery. The case was successfully concluded with a $20 million settlement, including a precedent-setting Monitoring Program to monitor labor and human rights practices in Saipan garment factories.

Formerly, she practiced in Kentucky in the area of labor and employment law. She was the co-editor of the *Kentucky Employment Law Letter* (1998) and co-author of *Wage and Hour Update* (Lorman 1998). She was also a regular lecturer for the Kentucky Cabinet for Economic Development.

She was a law clerk to the Honorable Sara Walter Combs, Kentucky Court of Appeals (1994-95) after obtaining her Juris Doctor

degree from the University of Kentucky in 1993. She is a member of the California and Kentucky Bars, and is admitted to practice before the U.S. District Courts for both jurisdictions as well as the Sixth Circuit Court of Appeals.

**JAMES I. JACONETTE** was born in San Diego, California in 1967. Mr. Jaconette is one of three partners responsible for the day-to-day prosecution of *In re Enron Corp. Sec. Litig.* (S.D. Tex.) and *In re Dynegy, Inc. Sec. Litig.* (S.D. Tex.), on behalf of lead plaintiff the Regents of the University of California, and the large classes of public investors represented in those actions. Mr. Jaconette has litigated securities class actions and corporate governance/merger & acquisition-related actions since 1995. To date, cases in which Mr. Jaconette executed a primary litigating role, including *In re Informix Corp. Sec. Litig.* (N.D. Cal.), have resulted in approximately $300 million in settlements, judgments, or common funds that benefited investors.

Mr. Jaconette attended San Diego State University, receiving his Bachelor of Arts degree with honors and distinction in 1989 and his M.B.A. in 1992. In 1995, Mr. Jaconette received his Juris Doctor degree *cum laude* from Hastings College of the Law, University of California, San Francisco. Mr. Jaconette was the Mortar Board Vice President from 1988-1989, a member of the *Hastings Law Journal* from 1993-1994, and Associate Articles Editor for same from 1994-1995. Mr. Jaconette authored *The Fraud-on-the-Market Theory in State Law Securities Fraud Suits*, Hastings Law Journal, Volume 46, August, 1995. In 1993, Mr. Jaconette served as law clerk to the Honorable Barbara J. Gamer, and in 1994, as extern to the Honorable William H. Orrick, Jr., District Judge.

In 1995, Mr. Jaconette was admitted to the California Bar and licensed to practice before the U.S. District Court, Southern District of California.

**TOR GRONBORG** was born in Portland, Oregon in 1969. Mr. Gronborg received his Bachelor of Arts degree in 1991 from the University of California at Santa Barbara and was a recipient of an AFL-CIO history scholarship. In 1992, Mr. Gronborg did graduate work in international relations and strategic studies at the University of Lancaster, UK on a Rotary International Fellowship. Mr. Gronborg received his Juris Doctor degree from Boalt Hall at the University of California at Berkeley where he was a member of the Moot Court Board.

Mr. Gronborg was admitted to the California Bar in 1995, and in 1997 was licensed to practice in the courts of the Ninth Circuit and the Northern, Central and Southern Districts of California. Mr. Gronborg's practice areas at Lerach Coughlin include securities litigation, and campaign and election law.

**THOMAS E. EGLER** was born in Pittsburgh, Pennsylvania in 1967. Mr. Egler received his Bachelor of Arts degree from Northwestern University in 1989. Mr. Egler received his Juris Doctor degree in 1995 from Catholic University of America, Columbus School of Law, where he served as Associate Editor for *Catholic University Law Review* from 1994-1995. From 1995-1997, Mr. Egler was Law Clerk to the Honorable Donald E. Ziegler, Chief Judge, U.S. District Court, Western District of Pennsylvania.

Mr. Egler was admitted to the California Bar in 1995 and the Pennsylvania Bar in 1996. He is admitted to practice before the U.S. District Courts for the Western District of Pennsylvania, the Northern, Southern and Central Districts of California, and the U.S. Court of Appeals for the Third and Eleventh Circuits.

**PATRICK W. DANIELS** is a partner of the Firm and the global director of business development for Lerach Coughlin. He received his Bachelor of Arts degree from the University of California, Berkeley, *cum laude,* and his Juris Doctor degree from the University of San Diego School of Law.

Working hand in hand with the Chairman of the Firm, Bill Lerach, Mr. Daniels oversees the Firm's client outreach and development programs. He advises hundreds of public and multi-employer pension funds, fund managers, insurance companies and banks around the world on issues related to corporate fraud in the U.S. securities markets and "best practices" in the corporate governance of publicly traded companies. He has represented dozens of institutional investors in some of the largest and most significant shareholder actions in the U.S., including Enron, WorldCom, AOL Time Warner, HealthSouth and Royal Dutch Shell, to name just a few.

Mr. Daniels leads the Firm's cooperative efforts and joint ventures with outside independent advisors, including former U.S. Secretary of State Madeleine Albright's firm, The Albright Group, to provide advice and counsel to major investors in the U.S. markets. As part of these joint ventures, Mr. Daniels works very closely with political and financial leaders throughout the world to advise national and state government pension funds, central banks and fund managers in the U.S., Australia, the United Kingdom and the European Union.

In the area of advancing international standards on human rights, Mr. Daniels was a lead counsel in an international coalition of attorneys and human rights groups who won an historic settlement with major U.S. clothing retailers and manufacturers, including The Gap, Ralph Lauren, Donna Karan and Calvin Klein, on behalf of a class of over 50,000 predominantly female Chinese garment workers on the island of Saipan in an action seeking to hold the Saipan garment industry responsible for creating a system of indentured servitude and forced labor in the island's garment factories. The coalition obtained an unprecedented agreement for supervision of working conditions in the Saipan factories by an independent NGO, as well as a substantial multi-million dollar compensation award for the workers.

Mr. Daniels is based in the Firm's headquarters in San Diego but he is also a managing partner of the Firm's Manhattan office.

**ANDREW J. BROWN** was born in Northern California in 1966. He received his Bachelor of Arts degree from the University of Chicago in 1988 and received his Juris Doctor degree from the University of California, Hastings College of Law in 1992. Upon passing the Bar, Mr. Brown worked as a trial lawyer for the San Diego County Public Defender's Office. In 1997, he opened his own firm in San Diego, representing consumers and insureds in lawsuits against major insurance companies. His current practice focuses on representing consumers and shareholders in class action litigation against companies nationwide.

As a partner of Lerach Coughlin, Mr. Brown continues to change the way corporate America does business. He prosecutes complex securities fraud and shareholder derivative actions, resulting in multi-million dollar recoveries to shareholders and precedent-setting changes in corporate practices. Examples include: *In re Unumprovident Corp. Sec. Litig.*, 396 F. Supp. 2d 858 (E.D. Tenn 2005); *Does I, et al. v. The Gap, Inc., et al.*, Case No. 010031 (D. N. Mariana Islands); *Arlia v. Blankenship*, 234 F. Supp. 2d 606 (S.D. W.Va. 2002); and *In re FirstEnergy Corp. Sec. Litig.*, 316 F. Supp. 2d 581 (N.D. Ohio 2004).

Mr. Brown is admitted to the Bars of California and the U.S. District Courts for all Districts in California.

**CHRISTOPHER BURKE** earned his Juris Doctor degree from the University of Wisconsin in 1993 and his Ph.D. in 1996. His practice areas include antitrust and consumer protection. He has been part of the trial teams that successfully prosecuted the *In re Disposable Contact Lens Antitrust Litig.* ($89 million) and *Schwartz v. Visa, et al.* ($800 million).

Prior, he was an Assistant Attorney General at the Wisconsin Department of Justice. He has lectured on law-related topics including constitutional law, law and politics and civil rights at the State University of New York at Buffalo and at the University of Wisconsin. His book, *The Appearance of Equality: The Supreme Court and Racial Gerrymandering* (Greenwood, 1999), examines conflicts over voting rights and political representation within the competing rhetoric of communitarian and liberal strategies of justification.

**JONATHAN M. STEIN** earned his Bachelor of Science degree in Business Administration from the University of Florida, where he concentrated his studies in Finance. While at Florida, he was selected to join the honor society of Omicron Delta Epsilon, recognizing outstanding achievement in Economics. Mr. Stein earned his Juris Doctor degree from Nova Southeastern University, where he was the recipient of the American Jurisprudence Book Award in Federal Civil Procedure and served as Chief Justice of the Student Honor Court.

Mr. Stein began his practice of law in Fort Lauderdale as a prosecutor in the State Attorney's Office for the Seventeenth Judicial Circuit of Florida, where he handled numerous jury trials. Before concentrating his practice in class action litigation, he also practiced as a litigator with one of Florida's largest law firms, where he concentrated on fighting insurance fraud. Prior to joining Lerach Coughlin, Mr. Stein was a partner with Geller Rudman, PLLC. Mr. Stein is involved in all aspects of class action litigation, including securities fraud,

shareholder class and derivative actions, consumer fraud, products liability and antitrust.

A substantial portion of Mr. Stein's practice is dedicated to the representation of public shareholders of companies whose shares are acquired through management buyouts, leveraged buyouts, mergers, acquisitions, tender offers and other change-of-control transactions. Mr. Stein has represented clients in seeking to protect shareholders by insuring that they receive maximum compensation for their shares and also by insuring that they receive all necessary information and disclosure concerning the transactions. He has been successful in restructuring many transactions and recovering millions of dollars in additional value for shareholders.

Mr. Stein is licensed to practice law in the state courts of Florida, as well as in the United States District Courts for the Southern and Middle Districts of Florida and the District of Colorado. In addition to these courts and jurisdictions, Mr. Stein regularly works on cases with local counsel throughout the country. Mr. Stein has been or is a member of the Association of Trial Lawyers of America, the American Bar Association, the Palm Beach County Bar Association and the South Palm Beach County Bar Association.

**ROBERT M. ROTHMAN** earned his Bachelor of Arts degree in Economics from the State University of New York at Binghamton. He then earned his Juris Doctor degree, with distinction, from Hofstra University School of Law. During law school, Mr. Rothman was a member of the *Law Review* and was awarded The Dean's Academic Scholarship for completing his first year in the top one percent of his class.

After law school, Mr. Rothman practiced commercial litigation with an international law firm. Having litigated cases involving many of the nation's largest companies, Mr. Rothman has extensive experience in the areas of consumer protection, antitrust and investment fraud. Mr. Rothman also regularly tries and arbitrates cases. For example, he obtained a multi-million dollar verdict after the trial of a shareholders' derivative case, as well as multi-million dollar judgments on behalf of defrauded investors.

Prior to joining Lerach Coughlin, Mr. Rothman was a partner at Geller Rudman, PLLC, where he concentrated his practice on representing shareholders and consumers in class actions.

Mr. Rothman is admitted to practice before the courts of the State of New York, as well as the United States District Courts for the Southern and Eastern Districts of New York. Mr. Rothman is a member of the American Bar Association's Sections of Litigation and Antitrust Law.

**DANIEL DROSMAN** is a partner with Lerach Coughlin. He is a former federal prosecutor with extensive litigation experience before trial and appellate courts. His practice focuses on securities fraud litigation and other complex civil litigation. Mr. Drosman is admitted to practice in New York and California and before federal courts throughout those states.

Mr. Drosman is a native San Diegan who received his Bachelor of Arts degree in Political Science from Reed College in 1990, with honors, and was a member of Phi Beta Kappa. He received his Juris Doctor degree from Harvard Law School in 1993. Following graduation from law school, Mr. Drosman served for three years as an Assistant District Attorney for the Manhattan District Attorney's Office. While there, Mr. Drosman served in both the appellate section, where he briefed and argued over 25 cases to the New York appellate courts, and in the trial section, where he prosecuted a wide variety of street crime.

From 1996-1997, Mr. Drosman was an associate in the New York office of Weil Gotshal & Manges, where he concentrated his practice in civil litigation and white-collar criminal defense.

In 1997, Mr. Drosman returned to San Diego and became an Assistant U.S. Attorney in the Southern District of California. In the Southern District, Mr. Drosman tried cases before the U.S. District Court and briefed and argued numerous appeals before the Ninth Circuit Court of Appeals. He was a member of the border crimes unit, where he was assigned to investigate and prosecute violations of the federal narcotics and immigration laws and official corruption cases. During his tenure as an Assistant U.S. Attorney, Mr. Drosman received the Department of Justice Special Achievement Award in recognition of sustained superior performance of duty.

Mr. Drosman's practice involves representing defrauded investors in securities class actions, an area in which he has co-authored a law journal article.

**AZRA Z. MEHDI** earned her Bachelors of Arts in 1992 from the University of Illinois at Chicago, with high honors in English and German Literature. She was a member of the Honors College and spent a year at the University of Vienna in Austria. She received her Juris Doctor degree from DePaul University College of Law in Chicago in 1995. Upon graduation, Ms. Mehdi did an internship at the Austrian law firm of Ortner Poch & Foramitti. Ms. Mehdi focuses her practice on antitrust litigation and securities fraud litigation.

Ms. Mehdi is admitted to practice in New York (1996), California (2002), before the U.S. District Court for the Southern and the Eastern Districts of New York (1997), and the U.S. District Court for the Northern, Central and Southern Districts of California (2002). She is a member of the American Bar Association, the California Bar Association and the San

Francisco Bar Association. Ms. Mehdi is fluent in German and Hindi.

**KEVIN K. GREEN** is a member of the firm's Appellate Practice Group. He received his Bachelor of Arts degree in Political Economy, with honors and distinction, from the University of California at Berkeley in 1989, and his Juris Doctor degree from Notre Dame Law School in 1995. Following graduation, he served as a law clerk to the Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana, and the Honorable Barry T. Moskowitz, U.S. District Judge, Southern District of California.

In 1999, Mr. Green entered practice on behalf of defrauded consumers and investors. After handling a wide range of appellate matters, he became a Certified Appellate Specialist, State Bar of California Board of Legal Specialization.

Due to the national scope of the firm's caseload, Mr. Green has handled appeals in numerous states. Illustrative decisions include: *McKell v. Washington Mutual, Inc.*, 142 Cal. App. 4th 1457 (2006) (reversing dismissal of class claims against mortgage lender under California's Unfair Competition Law); *In re Guidant Shareholders Deriv. Litig.*, 841 N.E.2d 571 (Ind. 2006) (adopting "demand futility" standard for derivative litigation and rejecting "universal demand" standard); *Branick v. Downey Savings & Loan Ass'n.*, 39 Cal. 4th 235 (2006) (approving leave to amend to satisfy Proposition 64); *Hyams v. Halifax PLC*, No. A-1078-04T3, 2005 WL 3441230 (N.J. Super. A.D. Dec. 16, 2005) (reversing dismissal and concluding that New Jersey residents could sue British bank in United States); *Lebrilla v. Farmers Group, Inc.*, 119 Cal. App. 4th 1070 (2004) (reversing denial of class certification and ordering certification of statewide class); *West Corp. v. Superior Court*, 116 Cal. App. 4th 1167 (2004) (upholding personal jurisdiction over telemarketers sued under California law); *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979 (2004) (amicus brief on behalf of

National Association of Shareholder and Consumer Attorneys); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496 (2003) (addressing "reasonable consumer" standard under California law); and *Ritt v. Billy Blanks Enters.*, 2003 Ohio 3645 (Ohio Ct. App. 2003) (reversing denial of class certification).

In addition to briefing and arguing appeals and writs, Mr. Green is active in professional activities. He sits on the State Bar of California Committee on Appellate Courts, as well as the San Diego County Bar Association Appellate Court Committee. In connection with the firm's consumer fraud practice, he is a member of the State Bar Antitrust and Unfair Competition Law Section. He is also a longtime member of the American Constitution Society and the Federal Bar Association.

Mr. Green is the author of *The Unfair Competition Law After Proposition 64: The California Supreme Court Speaks*, Journal of Competition (Vol. 15, No. 2, Fall/Winter 2006) (published by State Bar Antitrust and Unfair Competition Law Section). While a student, he authored *A Vote Properly Cast? The Constitutionality of the National Voter Registration Act of 1993*, 22 Journal of Legislation 45 (1996) (published by Notre Dame Law School). Admitted to the State Bar of California in 1995, he is also admitted to practice before the U.S. Court of Appeals for the Ninth Circuit and all federal district courts in California.

**JONAH H. GOLDSTEIN** is a partner with Lerach Coughlin.  Formerly, Mr. Goldstein was an Assistant U.S. Attorney for the Southern District of California, where he tried 13 jury trials (including a seven-defendant 11-week trial), and briefed and argued appeals before the Ninth Circuit Court of Appeals.

In 1991, Mr. Goldstein received his Bachelor of Arts degree in Political Science from Duke University.  He received his Juris Doctor degree from the University of Denver College of Law

in 1995, where he was the Notes & Comments Editor of the *University of Denver Law Review*. Following graduation from law school, Mr. Goldstein served as a law clerk for the Honorable William H. Erickson on the Colorado Supreme Court.

Mr. Goldstein is admitted to practice in Colorado (1995) and California (1997).

**SHAWN A. WILLIAMS** earned his Bachelor of Arts degree in English from the State University of New York at Albany in 1991. He earned his Juris Doctor degree from the University of Illinois College of Law in 1995. Upon graduation from law school, he served as an Assistant District Attorney in the Manhattan District Attorney's Office (1995-2000), where he spent four years in the trial division, prosecuting all levels of street crimes, and one year conducting white-collar fraud investigations.

Mr. Williams' practice focuses on class action securities fraud matters.  He is admitted to practice in all courts of the State of New York, including the U.S. District Courts for the Southern and Eastern Districts of New York. Mr. Williams is also admitted to practice in all courts of the State of California and the United States Court of Appeals for the Ninth Circuit.

**JOSEPH D. DALEY** received his undergraduate degree from Jacksonville University and his Juris Doctor degree from the University of San Diego School of Law. Mr. Daley is a member of the firm's Appellate Practice Group, where his practice concentrates on federal appeals.

Mr. Daley edited the award-winning *Federal Bar Association Newsletter* (San Diego chapter) in the Year 2000, and served as the Year 2000 Chair of San Diego's Co-operative Federal Appellate Committees ("COFACS"). Mr. Daley co-authored *What's Brewing in Dura v. Broudo? The Plaintiffs' Attorneys Review the Supreme Court's Opinion and Its Import for Securities-Fraud Litigation*, 37 Loy. U. Chi. L.J. 1

(2005), and *The Nonretroactivity of the Private Securities Litigation Reform Act of 1995*, 25 Sec. Regulation L.J. 60 (1997), reprinted in 3 Sec. Reform Act Litig. Rep. 258 (1997) and 25 RICO L. Rep. 819 (1997).

While attending law school, Mr. Daley was a member of the USD Appellate Moot Court Board (1995-96) and received several awards for written and oral advocacy, including: Order of the Barristers, Roger J. Traynor Constitutional Law Moot Court Team (Best Advocate Award); Philip C. Jessup International Law Moot Court Team (United States National Champions, First Place Regional Team); USD Alumni Torts Moot Court Competition (First Place Overall and Best Brief); the USD Jessup International Law Moot Court Competition (First Place Overall and Best Brief); and the American Jurisprudence Award in Professional Responsibility.

Mr. Daley was admitted to the California Bar in 1996. He is admitted to practice before the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California, as well as before the Supreme Court of the United States, and the U.S. Court of Appeals for the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits.

**DOUGLAS R. BRITTON** was born in Los Angeles, California, in 1968. Mr. Britton received his Bachelor of Business Administration degree from Washburn University in Topeka, Kansas in 1991 and his Juris Doctor degree, *cum laude*, from Pepperdine University Law School in 1996. Mr. Britton was admitted to the Nevada Bar in 1996 and to the California Bar in 1997 and is admitted to practice in all of the state courts in California, as well as the U.S. District Courts for the Northern, Southern, Eastern, and Central Districts of California. Mr. Britton has been litigating securities class action lawsuits since his admission to the Bar in 1996.

**ELLEN A. GUSIKOFF STEWART** was born in New York, New York in 1964. She received her Bachelor of Arts degree in Economics from Muhlenberg College in 1986 and her Juris Doctor degree from Case Western Reserve University in 1989. Mrs. Stewart was admitted to the California Bar in 1989, and is admitted to practice before all federal courts in California, the Sixth and Ninth Circuit Courts of Appeals and the Western District of Michigan.

Mrs. Stewart currently practices in the firm's settlement department, negotiating and documenting the firm's complex securities, merger and consumer privacy class and derivative actions. Notably, these settlements include: *In re Vesta Ins. Group, Inc. Sec. Litig.*, (N.D. Ala. 2002) ($78 million recovery, to date); *In re Prison Realty Sec. Litig.*, (M.D. Tenn. 2001) (over $140 million in cash and stock); *Stanley v. Safeskin Corp.*, (S.D. Ca. 2003) ($55 million recovery); and *In re Wisconsin Energy Derivative Litig.*, (Milwaukee County Circuit Court).

**A. RICK ATWOOD, JR**. prosecutes securities class actions, merger-related class actions, and shareholder derivative suits at both the trial and appellate levels. He has successfully represented shareholders in federal and state courts in numerous jurisdictions, including Alabama, California, Colorado, Delaware, Georgia, Hawaii, Illinois, New York, New Jersey, Nevada, North Carolina, Oregon, South Dakota, Texas, Tennessee, Utah, Washington and Washington, D.C.

Mr. Atwood was born in Nashville, Tennessee in 1965. In 1987, he received a Bachelor of Arts degree with honors in Political Science from the University of Tennessee at Knoxville. He received a Bachelor of Arts degree, with great distinction, in Philosophy from the Katholieke Universiteit Leuven in Leuven, Belgium in 1988. He received his Juris Doctor degree in 1991 from Vanderbilt University Law School, where he served as Authorities Editor

on the *Vanderbilt Journal of Transnational Law*.

Mr. Atwood was admitted to the California Bar in 1991 and is licensed to practice before the United States District Courts for the Southern, Central and Northern Districts of California. Previously, Mr. Atwood was an associate in the Los Angeles office of Brobeck Phleger & Harrison LLP.

**JONATHAN E. BEHAR** was born in Los Angeles in 1968. In 1991, Mr. Behar received his Bachelor of Arts degree in English Literature from the University of California at Santa Barbara, with high honors, and his Juris Doctor degree from the University of San Diego School of Law in 1994. He is admitted to the State Bar of California (1994) and the Southern and Central Districts of California (1998 and 2000, respectively).

As a partner at Lerach Coughlin, Mr. Behar currently practices in the areas of securities, environmental and consumer litigation. Mr. Behar was actively involved in the prosecution of two of California's seminal tobacco cases, *Mangini v. R.J. Reynolds Tobacco Company*, the "Joe Camel" case, as well as *Cordova v. Liggett Group, Inc., et al.*, which alleged a 40-year conspiracy by the United States tobacco manufacturers.

**AMBER L. ECK** graduated from Pepperdine University, *magna cum laude*, with a Bachelor of Arts degree in 1990. Upon graduation, she worked for two years at a Los Angeles legal newspaper, the *Metropolitan News-Enterprise*. Ms. Eck then attended Boston University School of Law, graduating *magna cum laude* in 1995. At Boston University, Ms. Eck was a member of the Giles Sutherland Rich Intellectual Property Moot Court Team which received honors for Best Brief in the Northeast Region. In addition, she served as Case and Note Editor for the *Boston University International Law Journal*, and Chapter Justice for Phi Alpha Delta.

Ms. Eck's practice focuses on the prosecution of securities class actions and shareholder derivative suits. In addition, Ms. Eck received the Wiley W. Manuel *Pro Bono* Service Award in 1999 and the Distinguished Service Award in 2002 from the County of San Diego for pro bono service. Ms. Eck is a member of the California (1995) and Nevada (1996) Bars, and is admitted to practice before the United States District Courts for all districts in both jurisdictions. She served on the Board of Directors for the Barristers Club of San Diego (1996-1997) and is a member of the American Inns of Court, Enright Chapter.

**DENNIS J. HERMAN** is a 1992 graduate of Stanford Law School, where he received the Order of the Coif and the Urban A. Sontheimer Award for graduating second in his class. Mr. Herman concentrates his practice in securities class action litigation on behalf of defrauded investors. Mr. Herman is actively involved in the firm's ongoing prosecution of securities fraud class actions, including those now pending against VeriSign Corp. and The Coca-Cola Company, Inc. He has also participated in the successful prosecution of numerous other securities fraud claims that have resulted in substantial recoveries for investors, including actions filed against: Northwestern Corp. (recovery in excess of $40 million); Specialty Laboratories, Inc. ($12 million recovery); Electro-Scientific Industries, Inc. ($9 million); and Commtouch Software, Inc. ($15 million recovery). Mr. Herman also concluded the successful representation of the estate of a bankrupt company in lawsuits against its former officers and outside auditor seeking recovery for actions that deepened the company's insolvency before it went bankrupt.

Previously, Mr. Herman practiced for 10 years in Denver, CO, where he had a general commercial litigation practice and litigated many cases involving fraud and other tort claims, as well as a wide variety of cases involving contract claims, land use disputes,

environmental issues, inter-governmental disputes, voting rights, and intellectual property disputes. Mr. Herman is admitted to practice in both California and Colorado, and is a member of the bar of the United States Courts of Appeals for the Fifth, Eighth and Tenth Circuits as well as the bars of the United States District Courts for Colorado, and the Northern, Central and Southern Districts of California. Prior to attending law school, Mr. Herman was an investigative reporter and editor for a number of newspapers in California and Connecticut.

**NANCY M. JUDA** concentrates her practice in employee benefits law and works in the firm's Institutional Investors Department. Ms. Juda received her Juris Doctor degree from American University in 1992 and her undergraduate degree from St. Lawrence University in 1988.

Prior to joining Lerach Coughlin, Ms. Juda was employed by the United Mine Workers of America Health & Retirement Funds, where she began her practice in the area of employee benefits law. Ms. Juda was also associated with union-side labor law firms in Washington, D.C., where she represented the trustees of Taft-Hartley pension and welfare funds on qualification, compliance, fiduciary and transactional issues under ERISA and the Internal Revenue Code.

Using her extensive experience representing union pension funds, Ms. Juda advises Taft-Hartley fund trustees regarding their options for seeking redress for losses due to securities fraud. Ms. Juda currently advises trustees of funds providing benefits for members of unions affiliated with the Building and Construction Trades Department of the AFL-CIO, including funds sponsored by the Operative Plasterers and Cement Masons International Association of America and Canada, International Union of Painters and Allied Trades, United Union of Roofers, Waterproofers and Allied Workers and

International Union of Elevator Constructors. Ms. Juda also represents workers in ERISA class actions involving breach of fiduciary duty claims against corporate plan sponsors and fiduciaries.

Ms. Juda is licensed to practice in Maryland (1992) and the District of Columbia (1995). She is a member of the National Coordinating Committee for Multi-Employer Plans, the International Foundation of Employee Benefit Plans, the Employee Benefits Committee of the American Bar Association's Section of Labor and Employment Law and the AFL-CIO Lawyers' Coordinating Committee.

Ms. Juda is the Editor of the firm's quarterly newsletter, *Taking Action – Fighting Corporate Corruption*.

**JEFFREY D. LIGHT** was born in Los Angeles, California in 1964. He received his Bachelor of Science degree from San Diego State University in 1987 and his Juris Doctor degree from the University of San Diego in 1991, *cum laude*. Mr. Light was the recipient of the American Jurisprudence Award in Constitutional Law. He served as law clerk to the Honorable Louise DeCarl Adler, U.S. Bankruptcy Court, and the Honorable James Meyers, Chief Judge, Southern District of California, United States Bankruptcy Court. Mr. Light was admitted to the California Bar in 1992 and is admitted to practice before all federal courts in California.

Mr. Light is also a member of the San Diego County Bar Association and is on the Attorney Fee Arbitration Panel. Mr. Light currently practices in the firm's settlement department, negotiating, documenting and obtaining court approval of the firm's complex securities, merger, consumer and derivative actions. These settlements include: *In re AT&T Corp. Sec. Litig.* (D.N.J. 2005) ($100 million recovery); *In re Infonet Corp. Sec. Litig.* (C.D. Cal. 2004) ($18 million recovery); and *In re Ashworth, Inc. Sec. Litig.* (S.D. Cal. 2004) ($15.25 million recovery).

**CHRISTOPHER P. SEEFER** received his Bachelor of Arts degree from the University of California, Berkeley in 1984 and his Master of Business Administration degree from the University of California, Berkeley in 1990.  He received his Juris Doctor degree from the Golden Gate University School of Law in 1998.  Mr. Seefer was a Fraud Investigator with the Office of Thrift Supervision, Department of the Treasury (1990-1999) and a field examiner with the Office of Thrift Supervision (1986-1990).  Mr. Seefer is a member of the Bar of California, the United States District Court for the Northern District of California and the United States Court of Appeals for the Ninth Circuit.

**X. JAY ALVAREZ** graduated from the University of California, Berkeley, with a Bachelor of Arts degree in Political Science in 1984.  He earned his Juris Doctor degree from the University of California, Berkeley, Boalt Hall, in 1987 and entered private practice in San Diego, California that same year.

Mr. Alvarez served as an Assistant U.S. Attorney for the Southern District of California from 1991-2003.  As an Assistant U.S. Attorney, Mr. Alvarez obtained extensive trial experience, including the prosecution of bank fraud, money laundering and complex narcotics conspiracy cases.  During his tenure as an Assistant U.S. Attorney, Mr. Alvarez also briefed and argued numerous appeals before the Ninth Circuit Court of Appeals.

At Lerach Coughlin, Mr. Alvarez's practice areas include securities fraud litigation and other complex litigation.

**ANNE L. BOX** graduated from the University of Tulsa with a Bachelor of Science degree in Economics in 1985 and received a Juris Doctor degree in 1988. While in law school, she was the Articles Editor for the *Energy Law Journal* and won the Scribes Award for her article *Mississippi's Ratable-Take Rule Preempted: Transcontinental Gas Pipeline Corp. v State Oil and Gas Bd.*, 7 Energy L.J. 361 (1986).  From

1988-1991, she was an Associate Attorney in the Energy Section of Jenkins & Gilchrist, P.C. in Dallas, Texas. In 1991, she became an Assistant  District Attorney in Tarrant County, Texas where she tried over 80 felony cases to verdict.    Ms. Box was elevated to Chief Prosecutor in 1998, and along with supervising felony attorneys, her responsibilities included running the day-to-day operations of a felony district court. Ms. Box was admitted to the State Bar of Texas in 1989 and the State Bar of California in 2003.   Her practice at Lerach Coughlin focuses on securities fraud.

**WILLIAM J. DOYLE II**  earned his Bachelor of Arts degree in 1993 from the University of San Diego, majoring in Business Economics.  Mr. Doyle earned his Juris Doctor degree in 1997 from California Western School of Law.  Previously, Mr. Doyle was a civil litigator with the firm of Wingert Grebing Brubaker & Ryan, LLP in San Diego.

Mr. Doyle's practice focuses on securities fraud, antitrust and financial services class actions.  Mr. Doyle is admitted to practice before the U.S. Court of Appeal for the First Circuit, the U.S. District Courts for the Southern, Central and Northern  Districts of California, the U.S. District Court for the District of Colorado and all California State courts.  He is a member of the American Bar Association, the State Bar of California, the Association of Trial Lawyers of America, and the Association of Business Trial Lawyers.

**VALERIE L. MCLAUGHLIN** was born in Philadelphia, Pennsylvania in 1973.  Ms. McLaughlin has litigated numerous cases against public companies in federal and state courts throughout the country that have resulted in hundreds of millions of dollars in recoveries for defrauded investors. Many of these cases also resulted in these companies instituting major corporate governance changes. Ms. McLaughlin is currently litigating several multi-billion dollar accounting fraud cases, including *HealthSouth* and *Oracle*.

Before practicing in the plaintiffs' bar, Ms. McLaughlin worked at a well-respected San Diego defense firm litigating complex cases.

Ms. McLaughlin received her Bachelor of Arts degree in Political Science from California State University San Marcos in 1994 and her Juris Doctor degree from California Western School of Law in 1997.  In 1997, Ms. McLaughlin was admitted to the California Bar and is licensed to practice in all California State Courts as well as all U.S. District Courts in California. She is a member of the California Bar Association, San Diego County Bar Association, American Bar Association, and the San Diego Lawyers Club.

**MATTHEW MONTGOMERY** was born in Pontiac, Michigan in 1970. Mr. Montgomery received his Bachelor of Arts degree from Stanford University in 1992 and his Juris Doctor degree from the University of California, Berkeley in 1995. Mr. Montgomery was admitted to the California Bar in 1995 and is licensed to practice in the courts of the Ninth and Sixth Circuits, as well as the Northern, Central and Southern Districts of California.  Mr. Montgomery practices in the firm's securities litigation group.

**STEPHEN J. ODDO** graduated from Santa Clara University with a Bachelor of Arts degree in English with a Spanish minor. He received his Master of Arts degree from the Medill School of Journalism at Northwestern University before receiving his Juris Doctor degree from the University of San Diego.  Mr. Oddo was admitted to the California Bar in 1994. He specializes in securities class actions involving mergers and acquisitions.

**DAVID A. ROSENFELD** earned his Bachelor of Science degree in Accounting from Yeshiva University's Sy Syms School of Business and his Juris Doctor degree from the Benjamin N. Cardozo School of Law.

While in law school, Mr. Rosenfeld interned in the chambers of the Honorable Fredic Block in the United State District Court for the Eastern District of New York.

Mr. Rosenfeld was responsible for initiating some of the largest and most significant securities and shareholder class action lawsuits since the passage of the Private Securities Litigation Reform Act of 1995, and developed an expertise in the area of lead plaintiff jurisprudence.

In 2003, Mr. Rosenfeld joined Samuel Rudman in opening the New York office of Geller Rudman, PLLC and assisted Mr. Rudman in raising the firm's profile as one of the nation's "most active" plaintiffs' firms.

At Lerach Coughlin, Mr. Rosenfeld continues to concentrate his practice on the investigation and initiation of securities and consumer fraud class actions.  Mr. Rosenfeld also advises the firm's institutional and individual investor clients on issues related to their involvement in securities class action lawsuits.

Mr. Rosenfeld is admitted to practice in the States of New York and New Jersey and in the United States District Courts for the Southern District of New York, Eastern District of New York, District of New Jersey, District of Colorado, Eastern District of Wisconsin and the Eastern and Western Districts of Arkansas.

**SCOTT SAHAM** was born in Detroit, Michigan in 1970. Mr. Saham received a Bachelor of Arts degree in 1992 from the University of Michigan. Mr. Saham received a Juris Doctor degree from the University of Michigan Law School in 1995.

Mr. Saham is licensed to practice law in both California and Michigan. Mr. Saham's practice areas include securities and other complex litigation.  Prior to join Lerach Coughlin, Mr. Saham served as an Assistant United States Attorney in the Southern District of California.

**EX KANO SAMS II** was born in Los Angeles in 1971. In 1993, Mr. Sams received his Bachelor of Arts degree in Political Science from the University of California, Los Angeles. In 1996, Mr. Sams received his Juris Doctor degree from the University of California, Los Angeles, where he was a member of the *UCLA Law Review*.

After graduating from UCLA Law School, Mr. Sams represented plaintiffs in complex and class action civil rights litigation, including employment, housing and sexual harassment discrimination. Mr. Sams was actively involved in a number of actions against the tobacco industry and participated in a trial against numerous tobacco companies. Mr. Sams also participated in California litigation against the tobacco industry which resulted in billions of dollars in recovery to cities and counties in California.

As a partner of Lerach Coughlin, Mr. Sams continues to represent plaintiffs in securities, consumer and environmental litigation. Mr. Sams is a member of the State Bar of California and has been admitted to the United States Court of Appeals for the Ninth Circuit, the United States District Courts for Northern, Southern, Eastern and Central Districts of California and the District of Colorado.

**SUSAN GOSS TAYLOR** graduated from the Pennsylvania State University in 1994 with a double major in International Politics and Russian. She earned her Juris Doctor degree from The Catholic University of America, Columbus School of Law in 1997. While in law school she was a member of the Moot Court team, and was a student attorney in the D.C. Law Students in Court Program, where she was responsible for defending juveniles and indigent adults in criminal proceedings. Ms. Taylor was admitted to the Bar in California in 1997.

Ms. Taylor served as a Special Assistant United States Attorney for the Southern District of California where she obtained considerable trial experience prosecuting drug smuggling and alien smuggling cases.

Ms. Taylor entered private practice in 1999, initially focusing on antitrust and consumer fraud class actions. Ms. Taylor has served as counsel on the Microsoft antitrust litigation and the DRAM antitrust litigation, as well as on a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations such as General Motors, Saturn, Mercedes-Benz USA, LLC, BMG Direct Marketing, Inc., and Ameriquest Mortgage Company. As a partner with Lerach Coughlin, Ms. Taylor has been responsible for prosecuting securities fraud class actions and has obtained recoveries for investors in litigation involving WorldCom and Qwest.

Ms. Taylor is a member of the California Bar Association, the San Diego County Bar Association, the American Bar Association, Consumer Attorneys of San Diego, and Lawyer's Club. She also is an active member of the Junior League of San Diego.

**LESLEY WEAVER** focuses on securities and consumer class actions in state and federal court. Her cases have involved companies in high technology, aviation, financial services, and energy industries. Her current caseload includes pending actions against Cisco Systems, Inc., Cardinal Health, and Vicuron Pharmaceuticals (recently acquired by Pfizer, Inc.). Settlements in which Ms. Weaver participated in recent years include: *In re Boeing Sec. Litig.*, ($92 million); *In re NorthPoint Sec. Litig.* ($20 million); and *In re Commtouch Sec. Litig.* ($15 million). In 1998, Ms. Weaver participated in a trial resulting in the largest verdict awarded at that time under the Federal Tort Claims Act against U.S. Customs for the unlawful detention of a Colombia-born U.S. citizen.

Ms. Weaver received her Juris Doctor degree from the University of Virginia School of Law and her Bachelor of Arts degree, *magna cum laude*, in Social Studies from Harvard and Radcliffe College. Ms. Weaver studied Political Science at the University of Bonn and was a Rotary-sponsored student in Haderslev, Denmark.

Ms. Weaver currently co-chairs the LGBT Community Center in San Francisco and sits on the Board of Equality California. Ms. Weaver is also currently the Chair of National Advisory Board of the National Center for Lesbian Rights, as well as past Gala CoChair for the years 2002 and 2003. She previously served as Secretary to the Board of California Young Lawyers Association, a governing body of the California State Bar Association, and in 2003 became a member of the Lawyers' Committee for Civil Rights of San Francisco. Ms. Weaver also co-chaired the Board of Directors of the Bay Area Lawyers for Individual Freedom (BALIF) from 2002-2004 and served on the board from 2000-2004.

**DEBRA J. WYMAN** was born in La Mesa, California in 1967. Ms. Wyman specializes in securities litigation and has litigated numerous cases against public companies in the state and federal courts which resulted in hundreds of millions of dollars in recoveries to investors. In late 2004, Ms. Wyman was a member of the trial team in *In re AT&T Corp. Sec. Litig.*, which was tried in the District Court in New Jersey, and which settled after two weeks of trial for $100 million. Currently, Ms. Wyman is litigating the complicated accounting fraud matter against HealthSouth Corporation, one of the largest and long-running corporate frauds in history.

Ms. Wyman received her Bachelor of Arts degree from the University of California, Irvine in 1990 and her Juris Doctor degree from the University of San Diego School of Law in 1997. Ms. Wyman was admitted to the California Bar in 1997 and is licensed to practice before all the California State Courts, as well as all the U.S. District Courts in California and the Eleventh Circuit Court of Appeals. She is a member of the California Bar Association and the San Diego County Bar Association.

**JOHN J. RICE** graduated cum laude from Harvard University with a Bachelor of Arts degree in History, and received his Juris Doctor degree from the University of Virginia. After law school, he was a judicial law clerk to the late U.S. District Court Judge Judith N. Keep of the Southern District of California.

Mr. Rice brings significant trial experience to Lerach Coughlin, where he is a member of the firm's litigation team. Prior to joining the firm, he prosecuted a wide array of cases, ranging from complex white-collar to murder to Russian organized crime cases. Most recently, he worked as an Assistant U.S. Attorney in the Southern District of California, specializing in public corruption cases. He has also served stints prosecuting organized crime for the U.S. Attorney's Office in the Southern District of New York and was nominated to serve as Branch Chief in the Northern Mariana Islands, prosecuting public corruption and white-collar criminal cases.

Mr. Rice has been praised for his diligent efforts to combat graft, corruption and collusion among public and private officials in San Diego. In 2005, he spearheaded prosecution teams on behalf of the U.S. Attorney's Office that successfully convicted the acting San Diego Mayor and a well-known councilman on federal corruption charges. In May 2006, Mr. Rice again exposed and prosecuted corrupt public figures, this time unraveling an intricate plot between a former college president and a political consultant who were misappropriating public funds for campaign finance.

Mr. Rice also served as Assistant U.S. Attorney in the Southern District of New York and Assistant Attorney General in the Republic of

Palau. He was the Branch Chief at the U.S. Attorney's office for the Commonwealth of the Northern Mariana Islands. Most recently, Mr. Rice was Assistant U.S. Attorney at the U.S. Attorney's office in San Diego, California.

Mr. Rice serves as an adjunct professor at the University of San Diego School of Law and Western State University School of Law. He is also an Instructor at the Department of Justice Office of Legal Education and a frequent lecturer of trial advocacy and advanced trial advocacy.

**CHRIS COLLINS** earned his Bachelor of Arts degree in History from Sonoma State University in 1988 and his Juris Doctor degree from Thomas Jefferson School of Law. His practice areas include antitrust and consumer protection. Mr. Collins first joined the firm in 1994 and was a part of the trial teams that successfully prosecuted the tobacco industry. Mr. Collins left the firm and served as a Deputy District Attorney for the Imperial County where he was in charge of the Domestic Violence Unit. Mr. Collins is currently counsel on the California Energy Manipulation antitrust litigation, the Memberworks upsell litigation, as well as a number of consumer actions alleging false and misleading advertising and unfair business practices against major corporations.

Mr. Collins is a member of the American Bar Association, the Federal Bar Association, the California Bar Association and the Consumer Attorneys of California and San Diego.

**JAMES D. McNAMARA** earned his Juris Doctor degree from the University of San Diego School of Law in 1997 and a Bachelor of Arts degree in Political Science from the University of San Diego in 1994. Mr. McNamara was admitted to practice in California in 1997. Mr. McNamara's practice focuses primarily on consumer protection, with an emphasis on actions brought by policyholders against life, auto and other insurers for deceptive sales

practices. He has also been engaged in consumer fraud and antitrust matters in the mortgage lending, telecommunications and insurance brokerage industries.

He is a member of the San Diego County Bar Association, American Bar Association, the State Bar of California, and the Association of Trial Lawyers of America.

**DAVID W. MITCHELL** was born in Wilmington, Delaware in 1973. He graduated from the University of Richmond in 1995 with a Bachelor of Arts degree in both Economics and History and thereafter received his Juris Doctor degree from the University of San Diego School of Law in 1998.

Prior to joining the firm, Mr. Mitchell served as an Assistant United States Attorney in the Southern District of California. While at the U.S. Attorney's Office, he worked on cases involving narcotics trafficking, bank robbery, murder-for-hire, alien smuggling, and terrorism. He tried nearly 20 cases to verdict before federal criminal juries and made numerous appellate arguments before the Ninth Circuit Court of Appeals.

Mr. Mitchell's practice focuses on securities fraud and antitrust litigation. He is a member of the State Bar of California and is admitted to practice before the Southern and Central Districts of California and the Ninth Circuit Court of Appeals.

**WILLOW E. RADCLIFFE** earned her Bachelor of Arts degree from the University of California at Los Angeles in 1994 and her Juris Doctor degree from the Seton Hall University School of Law, *cum laude*, in 1998. Ms. Radcliffe clerked for the Honorable Maria-Elena James, Magistrate Judge for the United States District Court for the Northern District of California, prior to joining the firm.

Ms. Radcliffe's practice at Lerach Coughlin focuses on the prosecution of securities class

actions and derivative actions in state and federal court. She is a member of the California bar, and is admitted to practice before the United States District Court for the Northern District of California.

**DOUGLAS WILENS** earned his Bachelor of Science degree in Accounting from the University of Florida. He graduated with honors from the University of Florida College of Law where he received a "Book Award" for the highest grade in his class for Legal Drafting. Mr. Wilens is licensed to practice law in the state courts of Florida and New York, as well as in the Eleventh Circuit Court of Appeals and the United States District Courts for the Southern and Eastern Districts of New York and the Southern, Middle and Northern Districts of Florida.

Prior to joining Lerach Coughlin, Mr. Wilens was an associate in the Boca Raton office of Cauley Geller where he was involved in all aspects of class litigation, including the prosecution of claims of securities fraud, claims of breach of fiduciary duty related to change-of-control transactions, and consumer protection actions. Prior to joining Cauley Geller, Mr. Wilens was an associate in the New York office of Proskauer Rose LLP, a nationally recognized firm, where he litigated complex actions on behalf of numerous professional sports leagues, including the National Basketball Association, the National Hockey League and Major League Soccer.

Mr. Wilens is or has been a member of the American Bar Association, New York City Bar Association, Broward County Bar Association, Sports Lawyers Association and the Florida Bar Section on Entertainment and Sports Law. Mr. Wilens has also served as an adjunct professor at Florida Atlantic University and Nova Southeastern University where he has taught undergraduate and graduate level Business Law classes.

## OF COUNSEL

**ALBERT H. MEYERHOFF** has concentrated his practice for more than 30 years in labor, civil rights and environmental law. After graduating from Cornell Law School in 1972, he joined California Rural Legal Assistance representing farm workers and the rural poor. These efforts included the landmark case of *CAAP v. Regents of the University of California*, challenging the use of public research funds to promote agricultural mechanization. He also litigated a host of state and federal civil rights cases involving racial discrimination in employment, voting and public education, including *Maria P. v. Riles*, invalidating a California statute excluding undocumented children from California schools. In 1981, Mr. Meyerhoff joined the Natural Resources Defense Council (NRDC), a national environmental organization, as Director of their Public Health Program. His concentration is in litigation concerning toxic substances and occupational health has and brought successful challenges to the continued use of cancer-causing pesticides (*Les v. Reilly*), the exclusion of women of "child-bearing age" from the workplace (*Love v. Thomas*), and the California Governor's failure to comply with Proposition 65, an anti-toxics law (*AFL-CIO v. Deukmejian*). During his 17 years with NRDC, Mr. Meyerhoff testified more than 50 times before the U.S. Senate and House of Representatives.

Mr. Meyerhoff has authored numerous articles for scholarly and general publications, including the *Stanford Law Review*, *EPA Journal*, *Environmental Law Quarterly*, *The New York Times*, *The Washington Post* and *Los Angeles Times*. He has appeared regularly on such programs as CBS News 60 Minutes, ABC 20/20, NBC Dateline, Good Morning America, The Today Show and The NewsHour with Jim Lehrer, and has been an invited speaker at the Harvard Business School, the National Academy of Sciences, the American Academy of Sciences and the AFL-CIO.

Since 1998, Mr. Meyerhoff has been lead counsel in several labor and environmental cases, including *UNITE v. The Gap*, contesting the sale of garments manufactured under sweatshop conditions in the Commonwealth of the Mariana Islands, and *Public Citizen v. US DOT*, challenging cross-border trucking from Mexico to conform to NAFTA but in violation of U.S. environmental laws.

Mr. Meyerhoff was selected as "Trial Lawyer of the Year" by Trial Lawyers for Public Justice and for a lifetime achievement award from the ACLU.

**LEONARD B. SIMON** is admitted to practice in California, New York, and the District of Columbia.

Mr. Simon's practice has been devoted heavily to litigation in the federal courts, including both the prosecution and the defense of major class actions and other complex litigation in the securities and antitrust fields.  He has argued more than 20 appeals in the federal and state courts of appeal. He has also represented large, publicly traded corporations.

Mr. Simon served as plaintiffs' co-lead counsel in *In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, MDL No. 834 (D. Ariz.) (settled for $240 million), and *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.) (settled for more than one billion dollars).  He is currently in a leadership position in the private *Microsoft Antitrust Litig.*, and in the *California Utilities Antitrust Litig.*  He was centrally involved in the prosecution of *In re Wash. Public Power Supply Sys. Sec. Litig.*, MDL No. 551 (D. Ariz.), the largest securities class action ever litigated.

Mr. Simon is an Adjunct Professor of Law at Duke University, the University of San Diego, and the University of Southern California Law Schools.  He has lectured extensively on securities, antitrust and complex litigation on

programs sponsored by the ABA Section of Litigation, the Practising Law Institute, and ALI-ABA, and at UCLA Law School, University of San Diego Law School and Stanford Business School.  He is an Editor of California Federal Court Practice, and has authored a law review article on the Private Securities Litigation Reform Act of 1995.

Mr. Simon received his Bachelor of Arts degree from Union College in 1970 and his Juris Doctor degree from Duke University School of Law, Order of the Coif and with distinction, in 1973. He served as law clerk to the Honorable Irving Hill, U.S. District Judge for the Central District of California, in 1973-74.

**BYRON S. GEORGIOU** received his Bachelor of Arts degree, with great distinction, with honors in Social Thought and Institutions, in 1970 from Stanford University, attending on an Alfred P. Sloan full academic scholarship. After a year co-founding and teaching 7th and 8th graders at the Mariposa School, which has thrived for 35 years as an alternative primary through middle school in rural Mendocino County, he attended Harvard Law School, graduating *magna cum laude* in 1974.  He was admitted to the California Bar in 1974 and served for one year as law clerk to the Honorable Robert F. Peckham, Chief Judge of the U.S. District Court for the Northern District of California.  He is a member of the Bar of the U.S. Supreme Court, the U.S. Court of Appeals for the Ninth Circuit and the U.S. District Courts for the Northern, Eastern, Central and Southern Districts of California.

Mr. Georgiou served from 1975-1980 in various capacities with the California Agricultural Labor Relations Board, defending the constitutionality of the law up through the U.S. and California Supreme Courts and prosecuting unfair labor practice cases enforcing the collective bargaining rights of farmworkers, who had been excluded from coverage under the National Labor Relations Act.

From 1980-1983, Mr. Georgiou served as Legal Affairs Secretary to California Governor Edmund G. Brown Jr., responsible for litigation by and against the Governor, judicial appointments, liaison with the Attorney General, Judiciary and State Bar, legal advice to the Governor and members of his Cabinet, and exercise of the Governor's powers of extradition and clemency.

From 1983-1994, he was Managing Partner and co-founder of the San Diego law firm of Georgiou, Tosdal, Levine & Smith, engaged in a general civil practice, with emphasis on litigation, appearances before executive and legislative governmental bodies and representation of labor organizations and their members, including contract negotiations and enforcement for many California public and private sector unions.

In 1994, he co-founded and served as President of American Partners Capital Group, concentrating in serving the needs of institutional investors through capital formation programs in a variety of alternative asset categories.

In 1981 Mr. Georgiou was honored as Public Official of the Year by the California Trial Lawyers Association and served as Chair of the Governor's Task Force on Alcohol, Drugs and Traffic Safety, one of the nation's first vehicles for enacting tough drunk driver legislation sponsored by the Mothers Against Drunk Driving (MADD).

Mr. Georgiou serves as the primary liaison with a number of the firm's principal institutional clients and is actively involved in the historic litigations seeking recoveries for defrauded investors in *Enron*, *Dynegy*, *AOL Time Warner* and *WorldCom*.

**SANDRA STEIN** received her Bachelor of Science degree from the University of Pennsylvania and a Juris Doctor degree from Temple University Law School.  She is a member of the Pennsylvania and Washington, D.C. Bars.  Ms. Stein concentrates her practice in securities class action litigation, legislative law, and antitrust litigation.  She served as counsel to U.S. Senator Arlen Specter and to the U.S. Institute for Law and Economic Policy, a think tank which develops policy positions on selected issues involving the administration of justice within the American Legal System.  In addition, Ms. Stein served on the Board of Advisors of the Annenberg Institute of Public Service at the University of Pennsylvania.  Ms. Stein was the recipient of the National Federation of Republican Women's "Best of America" Award and has been honored by the White House, California State Senate, and California State Assembly for civic leadership.

In a unique partnership with her daughter, Attorney Laura Stein, the Steins serve as two of the top asset-recovery attorneys in the firm. The Steins focus on maximizing profits and minimizing losses to shareholders due to corporate fraud and breaches of fiduciary duty.  They also seek to deter future violations of federal and state securities laws by reinforcing the standards of good corporate governance.

Ms. Stein has been active in a number of organizations, including the National Association of Shareholder and Consumer Attorneys (NASCAT), National Association of State Treasurers (NAST), the AFL-CIO Lawyers Coordinating Committee, the National Coordinating Committee for multi-employer Plans (NCCMP), and the International Foundation for Employer Benefit Plans (IFEBP), among others.

Ms. Stein has addressed the National Association of Auditors, Controllers and Treasurers on the subject of corporate governance and its role as a positive force in future class action securities settlements.  She has also spoken before numerous AFL-CIO conventions and dozens of public and multi-employer pension funds.

**ELISABETH A. BOWMAN** practice areas include class action consumer protection and antitrust. In addition, Ms. Bowman oversees and assists in the preparation of Lerach Coughlin's litigation graphics.

Ms. Bowman assisted in the successful prosecution of the following trials: *Long v. Wells Fargo Company, et al.; Yourish v. California Amplifier, et al.; In re Helionetics, Inc. Securities Litigation.; Schwartz v. Visa, et al.; Douglas Shooker, et. al. v. Gary Winnick, et.al.;* and *In re AT&T Corp. Securities Litigation.*

Ms. Bowman received her Bachelor of Fine Arts degree. from the University of Alaska at Anchorage in 1986, where she majored in Fine Arts and Psychology. While a student at the U of A, she received a grant from the Ford Foundation to participate in the artists in residency program at the Visual Arts Center, Alaska. Ms. Bowman received her Juris Doctor degree from the University of San Diego in 1989. During the summer of 1987, she attended USD's Institute on International and Comparative Law in Oxford, England.

Ms. Bowman was in private practice as a criminal defense attorney for eight years, handling both trials and appeals in state and federal courts. Ms. Bowman is a member of Volunteers in Parole ("VIP"), an organization based on the Big Brothers' paradigm, in which attorneys are matched with parolees from the California Youth Authority in an effort to offer positive mentoring. She also served on VIP's local and state-wide boards.

Ms. Bowman is a member of the California Bar (1990), and is admitted to the Supreme Court of the State of California, the U.S. District Court for the Southern District of California, the U.S. Court of Appeals for the Ninth Circuit, and the Supreme Court of the United States.

**JAMES CAPUTO** has focused his practice on the prosecution of complex litigation involving securities fraud and corporate misfeasance, consumer actions, unfair business practices, contamination and toxic torts, and employment and labor law violations. He has successfully served as lead or co-lead counsel in numerous class and consumer action litigation matters, including, for example: *In re S3 Sec. Litig.*, Case No. CV770003 (Cal. Super. Ct., Santa Clara County); *Santiago v. Kia Motors Am.*, Case No. 01CC01438 (Cal. Super. Ct., Orange County); Case No. 0988 MJJ (N.D. Cal.); *In re Fleming Co. Sec. Litig.*, Case No. 5:02-CV-178 (TJW) (E.D. Tex.); *In re Capstead Mortgage Corp. Sec. Litig.*, Case No. 3:98-CV-1716 (N.D. Tex.); *In re Valence Tech. Sec. Litig.*, Case No. C95-20459 (JW)(EAI) (N.D. Cal.); *In re THQ, Inc. Sec. Litig.*, Master File No. CV-00-01783-JFW (C.D. Cal.); and *In re ICN Pharm. Corp. Sec. Litig.,* Case No. CV-98-02433 (C.D. Cal.).

Mr. Caputo was formerly a partner at Spector Roseman & Kodroff. He was one of the trial counsels in the year-long trial of *Newman v. Stringfellow*, a toxic exposure case involving nearly 4,000 plaintiffs. That case ultimately settled for approximately $110 million. He was co-trial counsel in an employment law class action against Taco Bell, which settled for $14 million.

Mr. Caputo received a Bachelor of Science degree from the University of Pittsburgh in 1970 and a Masters degree from the University of Iowa in 1975. In 1984, he received his Juris Doctor degree, *magna cum laude*, from California Western School of Law, where he served as Editor-In-Chief of the *International Law Journal*. He also clerked for Presiding Justice Daniel J. Kremer of the California Court of Appeal from 1985-1987 and to Associate Justice Don R. Work of the California Court of Appeal from 1984-1985. He has co-authored *No Single Cause: Juvenile Delinquency and the Search for Effective Treatment* (1985) and authored Comment, *Equal Right of Access in Matters of Transboundary Pollution: Its Prospects in Industrial and Developing Countries*, 14 Cal. West. Intl. L. J. 192 (1984).

Mr. Caputo has also numerous presentations to various legal and professional groups regarding complex and class action litigation.

He is admitted to practice in the State of California and the U.S. District Courts for the Southern, Central and Northern Districts of California as well as numerous other jurisdictions. Mr. Caputo is a member of the San Diego County and American Bar Associations, the Consumer Attorneys of California, and the Association of Trial Lawyers of America.

**MITCHELL D. GRAVO** concentrates his practice in lobbying and government relations. He represents clients before the Alaska Congressional delegation, the Alaska Legislature, the Alaska State Government and the Municipality of Anchorage.

Mr. Gravo attended Ohio State University as an undergraduate before attending the University of San Diego School of Law. He came to Alaska in 1977, served briefly as an intern with the Municipality of Anchorage and then clerked a year for Superior Court Judge J. Justin Ripley. After his clerkship with Judge Ripley, he went back to the work for the Municipality of Anchorage, where he first served as the executive assistant to the Municipal Manager and then as the first lobbyist for the then Mayor of Anchorage, George M. Sullivan. Mr. Gravo has been described as one of the "top lobbyists in the state" by Alaska's major daily newspaper, *The Anchorage Daily News*.

His legislative clients include the Anchorage Economic Development Corporation, the Anchorage Convention and Visitors Bureau, UST Public Affairs, Inc., the International Brotherhood of Electrical Workers, Alaska Seafood International, Distilled Spirits Council of America, RIM Architects, Anchorage Police Department Employees Association, Fred Meyer, and the Automobile Manufacturer's Association.

**JACQUI E. MOTTEK** received her Bachelor of Science degree in Government and Politics, *cum laude*, from the University of Maryland, College Park in 1979. Ms. Mottek obtained her Juris Doctor degree in 1986 from the University of San Francisco School of Law, where she was a recipient of the American Jurisprudence Award in Constitutional Law and a member of the *University of San Francisco's Law Review*.

Ms. Mottek was associated with the law firm Brobeck Phleger & Harrison from 1987-1994. In 1994, Ms. Mottek served as sole chair in a jury trial resulting in a verdict in favor of her clients of $1 million. In 1994, Ms. Mottek became a partner with the firm Lieff Cabraser Heimann & Bernstein, concentrating her practice in plaintiffs' class actions with an emphasis on consumer fraud litigation and other complex business litigation for plaintiffs. She successfully prosecuted a certified class action on behalf of physicians who provided medical services to Blue Cross of California HMO members. She is the author of *The Impact of Classwide Arbitration on Mandatory Arbitration*, Vol. 1, No. 13, Class Action Litigation Report, (October 27, 2000).

Prior to joining Lerach Coughlin in 2004, Ms. Mottek prosecuted consumer fraud class actions. She serves as co-lead counsel in several consumer class actions, including *Tenet HealthCare Cases II*, JCCP 4285, pending before the Los Angeles Superior Court, and as co-lead counsel and a member of the executive committee of the *Cellphone Termination Fees Litig.*, JCCP 4332, pending before the Superior Court of Alameda County. She is also a senior litigator in *Spielholz v. LA Cellular, Inc.*, Case No. BC186787 (resulting in the published opinion *Spielholz v. Superior Court*, 86 Cal. App. 4th 1866 (2001), granting a petition for a writ of mandamus she drafted in a question of first impression in California); in the matters coordinated before the federal court in the Northern District of Illinois, styled *In re Owen Federal Bank Mortgage Servicing Litig.*, MDL No. 1604; and as counsel in *Paton v. Cingular*

*Wireless*, Case No. CGC-04-428855, in the Superior Court of San Francisco.

**L. THOMAS GALLOWAY** received a Bachelor of Arts degree in History/Latin from Florida State University and received his Juris Doctor degree from the University of Virginia Law School in 1972, where he was a member of the Editorial Board of the *University of Virginia Law Review*.

Mr. Galloway is the founding partner of Galloway & Associates, a law firm that concentrates in the representation of institutional investors – namely, public and multi-employer pension funds.

Mr. Galloway has authored several books and articles, including: *The American Response to Revolutionary Change: A Study of Diplomatic Recognition* (AEI Institute 1978); *America's Energy: Reports from the Nation* (Pantheon 1980); Contributor, *Coal Treatise* (Matthew Bender 1981); Contributor, *Mining and the Environment: A Comparative Analysis of Surface Mining in Germany, Great Britain, Australia, and the United States*, 4 Harv. Envtl. L. Rev. 261 (Spring 1980); *A Miner's Bill of Rights*, 80 W. Va. L. Rev. 397 (1978); and Contributor, *Golden Dreams, Poisoned Streams* (Mineral Policy Center Washington D.C. 1997).

Mr. Galloway represents and/or provides consulting services for the following: National Wildlife Federation, Sierra Club, Friends of the Earth, United Mine Workers of America, Trout Unlimited, National Audubon Society, Natural Resources Defense Council, German Marshal Fund, Northern Cheyenne Indian Tribe and Council of Energy Resource Tribes. He is a member of the District of Columbia and Colorado State Bars.

**JERRILYN HARDAWAY**, in the Houston Enron Trial office, is a seventh-generation Texan who grew up in Greenville and graduated from Texas A&M with three undergraduate degrees-English, Psychology and Applied Mathematics. She was a Fulbright Scholar, studying Italian architecture and writing a prize-winning article on international trade relations. Despite her primarily liberal arts education, she was really only interested in computers, focusing on software development for vertically integrated markets, which led to an interest in antitrust law. She graduated in 1993 from the University of Houston Law Center, where she was a member of the *Houston Journal of International Law*. She worked alongside renowned class-action attorney Charles Kipple for the next eight years, assisting as lead counsel or co-lead counsel in several complex anti-trust cases through 1999, including *In re Lease Oil Antitrust Litig.*, MDL No. 1206, in the Southern District of Texas, Corpus Christi Division. After traveling and living abroad for three years, she returned to Houston and, in March 2002, was asked to "build a simple database, probably won't take longer than the summer." Now, more than two years later, her Enron databases manage more than 100 million documents and she supervises two teams of litigation support. Mrs. Hardaway is a frequent speaker and author on electronic discovery and developing issues in technology and the law. She speaks several languages, which helps because she very much enjoys traveling.

**ERAN RUBINSTEIN** practices in the area of securities litigation with a special emphasis on international institutional investor clientele. He is resident in the firm's Manhattan office.

While Mr. Rubinstein acquired his earlier experience defending class action cases, working with some of the largest firms in San Francisco and Philadelphia, he has spent recent years focused exclusively on the prosecution of such cases, including The Relafen Class Action Litigation (following in the footsteps of the Israeli company Teva's Relafen patent litigation), the Initial Public Offering Securities Litigation, and the AOL Time Warner Merger Litigation.

During college, Mr. Rubinstein studied in London and Kenya. He received his Bachelor of Arts degree in International Relations from California Polytechnic State University, San Luis Obispo in 1998 and his Juris Doctor degree from Widener University School of Law in 2001. During law school, where he achieved Dean's Honors List, Mr. Rubinstein was both a regional finalist and a coach in the ABA Negotiation Competition. He also argued at the Jessup International Law Moot Court Competition.

Mr. Rubinstein holds the following Bar affiliations: Bar of the Supreme Court of Pennsylvania (2001); Bar of the Eastern District of Pennsylvania (2003); American Bar Association; and Pennsylvania Bar Association.

**SUSAN BOLTZ RUBINSTEIN** practices in the area of securities litigation with a special emphasis on international institutional investor clientele. She is resident in the firm's Manhattan office.

Prior to entering private practice, she was an Assistant District Attorney. She then acquired her initial class action litigation experience, working on the defense side, with some of the largest defense firms. Ms. Boltz Rubinstein then became associated with a preeminent white-collar criminal defense firm. Among other clients, she represented the Delaware Insurance Commissioner in her efforts to recover millions of dollars looted from policy holders. The case represents the nation's largest insolvency due to fraud and involved money laundering through foreign, including Israeli, banks.

Ms. Boltz Rubinstein has spent recent years focused exclusively on the prosecution of class actions. These cases have included the Relafen Class Action Litigation, the Initial Public Offering Securities Litigation, and the AOL Time Warner Merger Litigation.

Ms. Boltz Rubinstein received her Bachelor of Arts degree in English/Modern European Studies from La Salle University in 1986, where she was a member of the Honors Program. She received her Juris Doctor degree from Dickinson School of Law in 1994. She graduated from college with high distinction and was a Molyneaux Scholarship recipient. During law school she was an Associate Editor/Member of the *Dickinson Journal of International Law*. She successfully completed comparative law courses at the following law schools: University of Florence (Co-Recipient of DiNicola Scholarship; achieved highest grade in International Family Law seminar); University of Strasbourg; and the University of Vienna.

Ms. Boltz Rubinstein holds the following Bar affiliations: Bar of the State of New York (2004); Bar of the Eastern District of Pennsylvania (2003); Bar of the Supreme Court of Pennsylvania (1996); American Bar Association; Pennsylvania Bar Association; and New York Bar Association.

## SPECIAL COUNSEL

**THE HONORABLE LAWRENCE IRVING** joined Lerach Coughlin in 2006 as special counsel to the firm, advising the firm's institutional investor clients regarding securities matters, including litigation and settlements, and acting as the firm's liaison with the Regents of the University of California – the lead plaintiff in the *Enron* securities class action. Previously, Judge Irving was appointed by Judge Barbara Lynn as *Guardian ad Litem* for the investor class in the *Halliburton* securities case, to review and report to the court on the fairness of the proposed settlement.

Judge Irving received his B.S. in Business Administration and his L.L.B from the University of Southern California. For many years, Judge Irving was a leading trial lawyer in San Diego. He was elected a Fellow in the prestigious American College of Trial Lawyers and was President of the San Diego Chapter of the American Board of Trial Advocates. He was appointed to the Federal Bench in San Diego

in 1982, having received an Exceptionally Well Qualified rating by the American Bar Association. He presided over numerous high-profile criminal and civil trials, including a five-month jury trial in the *Nucorp* securities class action.

Judge Irving resigned from the Federal Bench in 1990 because of his stance against Federal Sentencing Guidelines and Minimum Mandatory Sentencing laws. He received numerous awards for his judicial service, including awards from such diverse groups as the FBI and ACLU.

Judge Irving has mediated many high profile cases since 1991, including numerous large class action securities cases. According to the *Los Angeles Daily Journal*, Judge Irving is one of the most sought after mediators/arbitrators in California. Judge Irving successfully mediated the resolution of actions against the following companies: Lincoln Savings & Loan (U.S.D.C. Ariz.); Coeur d'Alene (U.S.D.C. Colo.); Morrison Knudsen (U.S.D.C. Idaho & Del.); Sensormatic (U.S.D.C. Fla.); ADM Archer Daniels Midland (U.S.D.C. Ill.); Hollywood Park, LA Gear, Occidental, Lockheed, Clothestime, Great Western Savings, Pacific Enterprises, Toyota, Venture Entertainment and Ascend (U.S.D.C. C.D. Cal.); Pioneer Mortgage, National Health Labs and Proxima (U.S.D.C. S.D. Cal.); Ross Systems, Resound, Insignia Solutions, IMP, Informix and Leasing Solutions (U.S.D.C. N.D. Cal.); Salomon Bros., Woolworth Corporation and Standard Microsystems (U.S.D.C. N.Y.); and Washington Mutual, Foodmaker, Mercer Ind., Price Costco, Gensia and Midcom Communications (U.S.D.C. Wash.). In addition, Judge Irving also mediated the $2.2 billion settlement in the *Enron* securities litigation with defendant J.P. Morgan (U.S.D.C. S.D. Tex.).

Judge Irving has served as chair and a member of numerous Judicial Selection Committees, including as Chair of former California Governor Pete Wilson's San Diego Superior Courts Committee, Chair of Senator Barbara Boxer's Southern California Federal Judicial and U.S. Attorneys Selection Committee, Chair of several San Diego U.S. Magistrate Judicial Selection committees, and currently serves on President Bush's Southern California Federal Judicial and U.S. Attorney Selection Committee.

Judge Irving has received several awards, including the following: 1990 Trial Judge of the Year – San Diego Trial Lawyers, 1990 Annual Award of San Diego Defense Lawyers (Civil), 1990 Criminal Defense Lawyers' Club of San Diego, "Extraordinary Abilities as a Federal District Judge," 1990 San Diego Press Club – Headliner Law and Justice, 2001 Witkin Award, and 2002 San Diego Bar Association Outstanding Service Award. Judge Irving is also a member of many Professional Associations including: Fellow, American College of Trial Lawyers; Fellow, American Bar Foundation; American Board of Trial Advocates (President San Diego Chapter 1972); San Diego County Bar Association (Board of Directors 1972-1975, Vice President 1975, Treasurer 1974 and Chair Magistrate Judge Selection Panel 1999-2001).

Judge Irving will continue to serve as mediator in certain cases and will continue his *pro bono* activities on behalf of significant causes.

**SUSAN K. ALEXANDER** graduated with honors from Stanford University in 1983 and earned her Juris Doctor degree from the University of California, Los Angeles in 1986. Ms. Alexander joined the Appellate Practice Group at Lerach Coughlin in 2000, focusing on federal and state appeals of securities fraud class actions. Ms. Alexander has argued on behalf of defrauded investors in the Fifth, Ninth, and Tenth Circuits. Representative results include *Pirraglia v. Novell, Inc.*, 339 F.3d 1182 (10th Cir. 2003) (reversal of district court dismissal of securities fraud complaint), and *Barrie v. Intervoice-Brite, Inc.*, 397 F.3d 249 (5th Cir. 2005) (reversal of district court dismissal of securities fraud complaint).

Ms. Alexander's prior appellate work was with the California Appellate Project ("CAP"), where she prepared appeals and petitions for writs of *habeas corpus* on behalf of individuals sentenced to death, as well as supervising private attorneys in their preparation of appeals and *habeas corpus* petitions. At CAP, and subsequently in private practice, Ms. Alexander litigated and consulted on death penalty direct and collateral appeals for 10 years. Representative results include *In re Brown*, 17 Cal. 4th 873 (1998) (reversal of first degree murder conviction, special circumstance finding, and death penalty), and *Odle v. Woodford*, 238 F.3d 1084 (9th Cir. 2001) (remand of death penalty conviction for retrospective competency hearing). Ms. Alexander was previously associated with Bronson, Bronson & McKinnon, where she litigated professional malpractice and product liability cases on behalf of attorneys, doctors, and automobile manufacturers, including defense verdicts in two jury trials.

Ms. Alexander is a member of the Bars of the State of California, the U.S. Supreme Court, the Court of Appeals, Fifth, Ninth, and Tenth Circuits, and the U.S. District Court, Northern, Central, Eastern, and Southern Districts of California. Ms. Alexander is also a member of the Federal Bar Association, Appellate Division and the Appellate Practice Section of the Bar Association of San Francisco.

Ms. Alexander is married with three teenage children.

## FORENSIC ACCOUNTANTS

**ANDREW J. RUDOLPH** is a Certified Fraud Examiner and a Certified Public Accountant licensed to practice in California. He is an active member of the American Institute of Certified Public Accountants, California's Society of Certified Public Accountants, and the Association of Certified Fraud Examiners. His 20 years of public accounting, consulting and forensic accounting experience includes financial fraud investigation, auditor malpractice, auditing of public and private companies, business litigation consulting, due diligence investigations and taxation. Mr. Rudolph is the National Director of Lerach Coughlin's Forensic Accounting Department, which provides the firm with in-house forensic accounting expertise in connection with securities fraud litigation against national and foreign companies. Mr. Rudolph is the Director of Forensic Accounting at the firm, and has given numerous lectures and assisted with articles on forensic investigations and financial statement fraud. Mr. Rudolph has directed hundreds of financial statement fraud investigations which were instrumental in the recovered billions of dollars for defrauded investors. Prominent cases include *Qwest*, *HealthSouth*, *WorldCom*, *Boeing*, *Honeywell*, *Vivendi*, *Aurora Foods*, *Informix* and *Platinum Software*.

**CHRISTOPHER YURCEK** is one of the firm's senior forensic accountants and provides in-house forensic accounting and litigation expertise in connection with major securities fraud litigation. Mr. Yurcek is a Certified Public Accountant with 19 years of accounting, forensic examination and consulting experience in areas including financial statement audit, fraud investigation, auditor malpractice, turn-around consulting, business litigation, and business valuation. Mr. Yurcek is currently responsible for overseeing the firm's forensic accounting investigation in *In re Enron Corp. Sec. Litig*. Mr. Yurcek provides the firm with in-house forensic accounting expertise and directs accounting investigations in connection with well-publicized securities fraud litigation, including cases such as *Enron*, *Vesta*, *Informix*, *Mattel*, *Coca Cola Company* and *Media Vision*. Mr. Yurcek's experience included providing forensic accounting expertise to bankruptcy trustees and audit and accounting services at a national CPA firm. Mr. Yurcek speaks at professional accounting seminars on topics such as financial statement fraud and fraud prevention and has co-

authored articles on these subjects. Mr. Yurcek is a member of the American Institute of Certified Public Accountants and the California Society of CPAs.

**R. STEVEN ARONICA** is a Certified Public Accountant licensed in the States of New York and Georgia and is a member of the American Institute of Certified Public Accountants, the Institute of Internal Auditors and the Association of Certified Fraud Examiners. He has been employed in the practice of accounting for 25 years, including: (1) public accounting where he was responsible for providing clients with a wide range of accounting and auditing services; (2) private accounting with Drexel Burnham Lambert, Inc., where he held positions with accounting and financial reporting responsibilities as a Vice President; and (3) various positions with the United States Securities and Exchange Commission ("SEC"). Mr. Aronica has extensive experience in securities regulation and litigation. At the SEC, Mr. Aronica reviewed and analyzed financial statements and related financial disclosures contained in public filings for compliance with generally accepted accounting principles, generally accepted auditing standards, and the accounting and auditing rules, regulations and policies of the SEC. Mr. Aronica was also an Enforcement Division Branch Chief, responsible for managing a group of investigators and accountants who initiated, developed and executed numerous investigations involving financial fraud, accounting improprieties and audit failures. Mr. Aronica has been instrumental in the prosecution of numerous financial and accounting fraud civil litigation claims against companies which include Lucent Technologies, Oxford Health Plans, Computer Associates, Aetna, WorldCom, Tyco, Vivendi, AOL Time Warner, Ikon, Thomas & Betts, InaCom and Royal Ahold. In addition, Mr. Aronica helped prosecute numerous claims against each of the major U.S. public accounting firms.

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND, et al., Individually and On Behalf of All Others Similarly Situated, ) ) ) ) ) ) | Civil No. 1:07-cv-00102-RBW  CLASS ACTION |
| Plaintiffs, ) ) | |
| vs. ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., ) ) | |
| Defendants. ) ) ) | |
| FIRST NEW YORK SECURITIES, L.L.C., Individually and On Behalf of All Others Similarly Situated, ) ) ) ) | Civil No. 1:07-cv-00294-RBW  CLASS ACTION |
| Plaintiff, ) ) | |
| vs. ) ) | |
| SUNRISE SENIOR LIVING, INC., et al., ) ) | |
| Defendants. ) ) ) | |

[PROPOSED] ORDER CONSOLIDATING RELATED ACTIONS, APPOINTING UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 880 – RETAIL FOOD EMPLOYERS JOINT PENSION FUND AND UNITED FOOD AND COMMERCIAL WORKERS UNION-EMPLOYER PENSION FUND AS LEAD PLAINTIFF AND APPROVING SELECTION OF LEAD AND LIAISON COUNSEL

Having considered United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel (the "Motion"), and good cause appearing therefor, the Court ORDERS as follows:

1.    The Motion is GRANTED;

2.    Pursuant to Federal Rule of Civil Procedure 42(a), the related actions are consolidated; and

3.    Pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934, 15 U.S.C. §78u-4(a)(3)(B), United Food and Commercial Workers Union Local 880 – Retail Food Employers Joint Pension Fund and United Food and Commercial Workers Union-Employer Pension Fund are appointed lead plaintiff for the class and lead plaintiff's choice of lead and liaison counsel is approved. Pursuant to §21D(a)(3)(B)(v), Lerach Coughlin Stoia Geller Rudman & Robbins LLP is approved as lead counsel and Cuneo, Gilbert & LaDuca, LLP is approved as liaison counsel

IT IS SO ORDERED.


DATED: _____    _____
                                THE HONORABLE REGGIE B. WALTON
                                UNITED STATES DISTRICT COURT JUDGE

S:\CasesSD\Sunrise Senior\ORD00040147-LP.doc